# EXHIBIT A

# Rights, Rules, Responsibilities 2019

University-wide Regulations          Students and the University

The University and the Community          EOP          Index

PRINCETON UNIVERSITY

# Rights, Rules, Responsibilities 2019



*Rights, Rules, Responsibilities* is intended to provide a concise reference and guide for all members of the Princeton University community.

Included here are brief statements of University policies most likely to be applicable to and of interest to all University constituencies. For further information on particular aspects of policies and procedures — or their application to particular situations — consult <u>Section 2 "Students and the University"</u>

< /students>

or the policy manuals available from the <u>Office of the Dean of the Faculty</u>

< https://dof.princeton.edu/policies-procedure>

and the <u>Office of Human Resources</u>

# Rights, Rules, Responsibilities 2019

# 1. University-wide Regulations

- 1.1 University Principles of General Conduct and Regulations
- 1.2 University-wide Conduct Regulations
- 1.3 Sex Discrimination and Sexual Misconduct
- 1.4 The University, the Law, and Property Rights
- 1.5 Guidelines Relating to the Tax-Exempt Status of the University and Political Activities
- 1.6 Health and Safety Policies
- 1.7 Resolution of Complaints against Members of the University Community
- 1.8 The Council of the Princeton University Community (CPUC)
- 1.9 The Judicial Committee of the Council of the Princeton University Community

## 1.1 University Principles of General Conduct and Regulations

### 1.1.1 Introduction

The central purposes of a university are the pursuit of truth, the discovery of new knowledge through scholarship and research, the teaching and general development of students, and the transmission of knowledge and learning to society at large. Free inquiry and free expression within the academic community are indispensable to the achievement of these goals. The freedom to teach and to learn depends upon the creation of appropriate conditions and opportunities on the campus as a whole as well as in classrooms and lecture halls. All members of the academic community share the responsibility for securing and sustaining the general conditions conducive to this freedom.

The primary purposes of regulations and discipline in a university are to protect the well-being of the community and to advance its educational mission by defining and establishing certain norms of behavior. At Princeton, disciplinary proceedings have a role that is subordinate to positive guidance, rational admonition, and reasonable

appeal to members of the University to observe its stated norms. The disciplinary system establishes procedures for a fair hearing, including advising individuals fully of the charges against them, affording them ample opportunity to speak on their behalf, and requiring a clear explanation of their rights of appeal. Disciplinary proceedings are instituted only for violations of standards of conduct defined in advance and published, or for actions that can be reasonably deduced as violations in light of those specifically defined as such. Regulations governing the conduct of members of the University community will be revised only after deliberations in which representatives of the appropriate groups are invited to participate.

Since rigid codification and relentless administration of rules and regulations are not appropriate to an academic community, the rules and policy statements that follow serve mainly to clarify commonly accepted standards of conduct within the University.

## 1.1.2 Academic Integrity

The ability of the University to achieve its purposes depends upon the quality and integrity of the academic work that its faculty, staff, and students perform. Academic freedom can flourish only in a community of scholars which recognizes that intellectual integrity, with its accompanying rights and responsibilities, lies at the heart of its mission. Observing basic honesty in one's work, words, ideas, and actions is a principle to which all members of the community are required to subscribe. (See sections under 2.3

< ../students#comp23>

regarding the Honor Code and other academic regulations.)

## 1.1.3 Statement on Freedom of Expression

Because the University is committed to free and open inquiry in all matters, it guarantees all members of the University community the broadest possible latitude to speak, write, listen, challenge, and learn. Except insofar as limitations on that freedom are necessary to the functioning of the University, Princeton University fully respects and supports the freedom of all members of the University community "to discuss any problem that presents itself."

Of course, the ideas of different members of the University community will often and quite naturally conflict. But it is not the proper role of the University to attempt to shield individuals from ideas and opinions they find unwelcome, disagreeable, or even deeply offensive. Although the University greatly values civility, and although all members of the University community share in the responsibility for maintaining a climate of mutual respect, concerns about civility and mutual respect can never be used as a

justification for closing off discussion of ideas, however offensive or disagreeable those ideas may be to some members of our community.

The freedom to debate and discuss the merits of competing ideas does not, of course, mean that individuals may say whatever they wish, wherever they wish. The University may restrict expression that violates the law, that falsely defames a specific individual, that constitutes a genuine threat or harassment, that unjustifiably invades substantial privacy or confidentiality interests, or that is otherwise directly incompatible with the functioning of the University. In addition, the University may reasonably regulate the time, place, and manner of expression to ensure that it does not disrupt the ordinary activities of the University. But these are narrow exceptions to the general principle of freedom of expression, and it is vitally important that these exceptions never be used in a manner that is inconsistent with the University's commitment to a completely free and open discussion of ideas.

In a word, the University's fundamental commitment is to the principle that debate or deliberation may not be suppressed because the ideas put forth are thought by some or even by most members of the University community to be offensive, unwise, immoral, or wrong-headed. It is for the individual members of the University community, not for the University as an institution, to make those judgments for themselves, and to act on those judgments not by seeking to suppress speech, but by openly and vigorously contesting the ideas that they oppose. Indeed, fostering the ability of members of the University community to engage in such debate and deliberation in an effective and responsible manner is an essential part of the University's educational mission.

As a corollary to the University's commitment to protect and promote free expression, members of the University community must also act in conformity with the principle of free expression. Although members of the University community are free to criticize and contest the views expressed on campus, and to criticize and contest speakers who are invited to express their views on campus, they may not obstruct or otherwise interfere with the freedom of others to express views they reject or even loathe. To this end, the University has a solemn responsibility not only to promote a lively and fearless freedom of debate and deliberation, but also to protect that freedom when others attempt to restrict it.

*This statement was originally drafted and adopted by the University of Chicago and was adopted by the Faculty of Princeton University at its meeting of April 6, 2015.*

## 1.1.4 Statement on Diversity and Community

Princeton University is a community devoted to learning. We actively seek students, faculty, and staff of exceptional ability and promise who share in our commitment to

excellence in teaching and scholarship, and who will bring a diversity of viewpoints and cultures. By incorporating a broad range of human experiences and a rich variety of human perspectives, we enlarge our capacity for learning, enrich the quality and texture of campus life, and better prepare for life and leadership in a pluralistic society.

As a community, we respect the dignity, individuality, and freedom of each member. At the same time, we strive to be a place where individuals and groups learn with and from each other. We aim to foster a sense of shared experience and common purpose, along with a collective responsibility for each other's well-being and for the well-being of the University as a whole.

Although we acknowledge the difficulties inherent in creating a community of individuals who are different from each other, we remain unwavering in our commitment to both diversity and community in a context of academic excellence. We seek to enable all members of this community to pursue their educational, scholarly, and career interests in an environment that recognizes both the distinctiveness of each person's experience and the common humanity that unites us all, and permits us to take full educational advantage of the variety of talents, backgrounds, and perspectives of those who live and work here.

## 1.1.5 Honesty and Cooperation in University Matters

All members of the University community are expected to be honest and straightforward in their official dealings with University processes, policies, activities, and personnel. This obligation includes honoring contracts and agreements and providing accurate information on official forms and documents as well as to official University personnel, offices, and committees. Deliberate violations of this provision will be considered serious offenses; subsequent violations, or systematic violations in the first instance, will be considered extremely serious.

Members of the University community are expected to cooperate fully in the disciplinary process, and anyone (whether a party or a witness) who refuses to cooperate may be subject to discipline. Failing to respond to multiple attempts by an administrator to contact or meet with a member of the University community may be considered a refusal to cooperate.

## 1.1.6 Confidentiality of Records

The University's Information Security Policy (**www.princeton.edu/oit/it-policies/it-security-policy**
< http://www.princeton.edu/oit/it-policies/it-security-policy/>
) provides the general framework for protecting the confidentiality, integrity, and availability of information owned by or entrusted to Princeton University. Any willful

violation of the provisions of the Privacy Rights, which appear under section 2.7
< ../students#comp27>
"Student Privacy Rights under Federal Law," or the Information Security Policy, will be
regarded as an extremely serious offense.

## 1.1.7 Range of Penalties

For violations of University-wide rules of conduct, members of the community are
subject to several kinds of penalties. The applicability and exact nature of each penalty
vary for faculty, academic professionals, staff and students.

For more information, faculty and academic professionals should consult:

- https://dof.princeton.edu/rules-and-procedures-faculty-princeton-university-and-
  other-provisions-concern-faculty/chapter-iv
  < https://dof.princeton.edu/rules-and-procedures-faculty-princeton-university-and-other-provisions-
  concern-faculty/chapter-iv>

- https://dof.princeton.edu/rules-and-procedures-professional-library-staff-
  princeton-university-and-other-provisions-concern-45
  < https://dof.princeton.edu/rules-and-procedures-professional-library-staff-princeton-university-and-
  other-provisions-concern-45>

- https://dof.princeton.edu/rules-and-procedures-professional-researchers-and-
  professional-specialists-princeton-university-21
  < https://dof.princeton.edu/rules-and-procedures-professional-researchers-and-professional-
  specialists-princeton-university-21>

Staff should consult Human Resources policies:

Disciplinary Procedure

- https://hr.princeton.edu/myhr/policies/disciplinary-procedure
  < https://hr.princeton.edu/myhr/policies/disciplinary-procedure>

Termination for Failure to Comply with University Policy (Misconduct/Cause)

- https://hr.princeton.edu/myhr/policies/termination-failure-comply-university-
  policy-misconductcause
  < https://hr.princeton.edu/myhr/policies/termination-failure-comply-university-policy-
  misconductcause>

The penalties for students are listed below.

### Informal Sanctions

Minor violations of rules of conduct may be met with informal responses.

**1. Dean's Warning.** An admonition that does not become part of an individual's permanent record, but that may be taken into account in judging the seriousness of any future violation.

**2. Reprimand.** Reprimand is a stronger admonition than a dean's warning, intended to signal that the student has committed a minor infraction, conveying that the student must be vigilant against future infractions, and providing a disincentive against future infractions in that a reprimand will not become part of the student's permanent record unless there is a subsequent infraction, at which point the reprimand will be formally recorded on the student's permanent record.

Both a dean's warning and a reprimand may be taken into account in judging the seriousness of any future violation.

## Formal Sanctions

More serious violations may be met with the following formal responses which are recorded on the student's permanent record.

**1. Disciplinary Probation.** A more serious admonition assigned for a definite amount of time. It implies that any future violation, *of whatever kind,* especially but not exclusively during that time, may be grounds for suspension, suspension with conditions, or in especially serious cases, expulsion from the University. Disciplinary probation will be taken into account in judging the seriousness of any subsequent infraction even if the probationary period has expired.

Disciplinary probation appears on an individual's permanent record at the University (but not on the transcript) and may be disclosed by the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

**2. Withholding of Degree.** In cases involving seniors or graduate students, the University may withhold a student's Princeton degree for a specified period of time. This penalty is imposed instead of suspension at the end of an undergraduate's senior year or at the end of a graduate student's program length where all other degree requirements have been met. A withheld degree is recorded on a student's transcript. Relevant information remains on the student's permanent record at the University and may be disclosed by the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

**3. Suspension.** Removal from membership in the University for a specified period of time. A suspension is recorded on a student's transcript. Relevant information remains on the student's permanent record at the University and may be disclosed by the Office

of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

**4. Suspension with Conditions.** Removal from membership in the University for at least the period of time specified by the suspension, with the suspension to continue until certain conditions, stipulated by the appropriate body applying this sanction, have been fulfilled. These conditions may include, but are not limited to, restitution of damages, formal apology, or counseling. A suspension with conditions is recorded on a student's transcript. Relevant information remains on the student's permanent record at the University and may be disclosed by the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

**5. Expulsion.** Permanent removal from membership in the University, without hope of readmission to the community. Expulsion is recorded on a student's transcript. Relevant information remains on the student's permanent record at the University and may be disclosed by the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

The following may accompany any of the preceding penalties:

**Censure.** University censure can be added to any of the other penalties listed above, except dean's warning and reprimand. Censure indicates the University's desire to underscore the seriousness of the violation and the absence of mitigating circumstances, and to convey that seriousness in response to future authorized inquiries about the given individual's conduct.

**Campus Service.** Campus service up to 10 hours per week may be added to a reprimand or disciplinary probation. This penalty may be particularly appropriate in cases involving vandalism, disorderly conduct, and alcohol-related infractions.

**University Housing.** When appropriate to the infraction, particularly in instances involving antisocial behavior having a serious impact on the residential community, removal from University housing or relocation within University housing may be added to any of the other penalties listed above, except warning and reprimand. In the case of a first-year or sophomore, removal from housing is not an option as all underclass students must reside in a residential college. Relocation within residential colleges will be imposed only after consultation with the head of the student's residential college.

**Access to Space, Resources, and Activities.** When appropriate in cases involving behavioral misconduct between members of the community, restrictions may be placed on access to space and/or resources or on participation in activities so as to limit opportunities for contact among the parties.

**Educational Refresher Programs.** In addition to any of the penalties listed above, a student may be required to participate in educational refresher programs appropriate to the infraction.

**Restitution.** The penalty for willful or reckless damage or vandalism will ordinarily include restitution for replacement or repair.

## 1.1.8 Circumstances Affecting Health or Safety

In circumstances seriously affecting the health or well-being of any person, or where physical safety is seriously threatened, or where the ability of the University to carry out its essential operations is seriously threatened or impaired, the president or a representative, authorized by the president, may summarily suspend, dismiss, or bar any person from the University. In all such cases, actions taken will be reviewed promptly, typically within one week, by the appropriate University authority.

# 1.2 University-wide Conduct Regulations

## 1.2.1 Respect for Others

Respect for the rights, privileges, and sensibilities of each other is essential in preserving the spirit of community at Princeton. Actions which make the atmosphere intimidating, threatening, or hostile to individuals are therefore regarded as serious offenses. Abusive or harassing behavior, verbal or physical, which demeans, intimidates, threatens, or injures another because of personal characteristics or beliefs or their expression, is subject to University disciplinary sanctions as described above. Examples of personal characteristics or beliefs include but are not limited to sex, sexual orientation, gender identity, race, ethnicity, national origin, religion, and disability. Making tolerance of such behavior or submission to it a condition of employment, evaluation, compensation, or advancement is an especially serious offense. Procedures for resolving complaints or grievances on such matters are discussed under section 1.3
and section 1.7
.

Princeton University strives to be an intellectual and residential community in which all members can participate fully and equally, in an atmosphere free from all manifestations of bias and from all forms of discrimination, harassment, exploitation, or intimidation. As an intellectual community, it attaches great value to freedom of expression and vigorous debate, but it also attaches great importance to mutual respect, and it deplores expressions of hatred directed against any individual or group.

The University seeks to promote the full inclusion of all members and groups in every aspect of University life.

Mutual respect requires special sensitivity to issues of bias based on personal characteristics. Expressions of bias directed at individuals or groups undermine the civility and sense of community on which the well-being of the University depends. They devalue the distinctive contributions of the individuals affected and impair their ability to contribute their views and talents to the community and to benefit fully from participating in it. By alienating those individuals, they harm the whole community. The University calls on all its members to display the appropriate sensitivity and to challenge expressions of bias based on personal characteristics whenever they encounter them.

## 1.2.2 Discrimination or Harassment (Based on a Protected Characteristic)

Princeton University is committed to creating and maintaining an educational, working, and living environment free from discrimination and harassment based on a protected characteristic. Princeton University's Policy on Discrimination and/or Harassment prohibits such discrimination and harassment and applies to all members of the University community.

When the University becomes aware that a member of the University community may have been subjected to or affected by discriminatory and/or harassing behavior based on a protected characteristic, the University will take prompt action, including conducting a review of the matter and, if necessary, an investigation and appropriate action to stop the discrimination and/or harassment. The action taken by the University, including any remedial measures, will depend on the particular facts and circumstances involved.

**Protected characteristics** are those personal traits, characteristics and/or beliefs that are defined by applicable law as protected from discrimination and/or harassment. They include race, creed, color, sex, gender identity or expression, pregnancy, age, national origin, ancestry, religion, physical or mental disability, genetic information, veteran status, marital or domestic partnership status, affectional or sexual orientation, and/or other characteristics protected by applicable law.

**Discrimination** is adverse treatment of an individual based on a protected characteristic, rather than individual merit. Examples of conduct that can constitute discrimination if based on an individual's protected characteristic include but are not limited to:

- Singling out or targeting an individual for different or less favorable treatment (e.g., more severe discipline, lower salary increase) because of their protected characteristic.

- Failing or refusing to hire or admit an individual because of their protected characteristic.
- Terminating an individual from employment or an educational program based on their protected characteristic.

**Harassment** is unwelcome verbal or physical behavior which is directed at a person based on a protected characteristic, when these behaviors are sufficiently severe and/or pervasive to have the effect of unreasonably interfering with an individual's educational experience, working conditions or living conditions by creating an intimidating, hostile, or offensive environment. Examples of conduct that can constitute harassment if based on an individual's protected characteristic include but are not limited to:

- Unwelcome jokes or comments about a legally protected characteristic (e.g., racial or ethnic jokes).
- Disparaging remarks to a person about a legally protected characteristic (e.g., negative or offensive remarks or jokes about a person's religion or religious garments).
- Displaying negative or offensive posters or pictures about a legally protected characteristic.
- All communications, including those conveyed electronically, such as by e-mail, telephone or voicemail, text messaging, social media or other internet use, that violate this policy.

Retaliation is prohibited against any individual or group of individuals involved in filing a complaint or report under the Policy on Discrimination and/or Harassment, filing an external complaint, participating in a disciplinary process, or opposing in a reasonable manner an action believed to constitute a violation of the policy.

The full text of the Policy on Discrimination and/or Harassment, including examples of prohibited conduct, resources, and options for addressing concerns, can be viewed online at: **http://inclusive.princeton.edu/addressing-concerns/policies/policy-discrimination-andor-harassment**
< http://inclusive.princeton.edu/addressing-concerns/policies/policy-discrimination-andor-harassment>
and in an accompanying set of Frequently Asked Questions:
**http://inclusive.princeton.edu/addressing-concerns/faqs**
< http://inclusive.princeton.edu/addressing-concerns/faqs>
. Members of the University community are expected to be familiar with and adhere to the regulations set forth in the policy.

## 1.2.3 Peaceful Dissent, Protests, and Demonstrations

Free speech and peaceable assembly are basic requirements of the University as a center for free inquiry and the search for knowledge and insight. These rights involve a concurrent obligation on the part of all members of the University, guests, and visitors to maintain on the campus an atmosphere conducive to scholarly pursuits and to respect the rights of all individuals.

In view of Princeton's obligation to promote the free expression of all views, the campus is open to any speaker whom students or members of the faculty have invited and for whom official arrangements to speak have been made with the University. The right of free speech in a university also includes the right to acts of peaceful dissent, protests in peaceable assembly, and orderly demonstrations which include picketing and the distribution of leaflets. These are permitted on the Princeton campus, subject to approval as to schedule and location, unless, or until, they disrupt regular and essential operations of the University or significantly infringe on the rights of others, particularly the right to listen to a speech or lecture.

All individuals and groups planning to engage in activities of the sort described in the previous paragraph should seek approval from the Office of the Dean of Undergraduate Students. Locations generally approved for these activities include the following:

- the area adjacent to Chancellor Green Center (on the Firestone Library side);
- the area in front of Frist Campus Center on the north side, by the Frist "gateway";
- the areas to the west and south of Alexander Hall, and to the east of Alexander Hall, between Stanhope Hall and Morrison Hall;
- the area in the vicinity of the east entrance to the University Store;
- the area between Whig and Clio halls;
- the cobblestone area between Firestone Library and Washington Road;
- the area in the vicinity of the arch near the entrance to McCosh Hall, Room 50;
- Scudder Plaza at Robertson Hall;
- the area adjacent to Shapiro Walk between the Department of Computer Science and Mudd Manuscript Library;
- the walkway in front of Nassau Hall;
- the area in the vicinity of the north entrance to Jadwin Gymnasium.

In asking groups and individuals to seek prior approval for schedule and location, the University's goal is not to restrict free speech or peaceable assembly. Rather, it is to give the University the opportunity to provide space that accommodates the reasonable needs of both the University community and those engaged in acts of speech or protest. The University reserves the right to determine the time, place, and manner of all such activities.

Whenever appropriate, the Office of the Dean of Undergraduate Students, with assistance from and in consultation with the Department of Public Safety, will designate clearly marked areas for protests and demonstrations from among the list that appears above. In addition to those on this list, other locations may be designated because of particular circumstances associated with a protest or demonstration (for example, to schedule a protest in the vicinity of a campus public lecture held in a location not near those on the list). To the extent practicable, the marked areas will be within reasonable sight and sound of the speaker's and the audience's ingress to and egress from the location of the event. The University reserves the right to refuse permission to use a particular area for protests or demonstrations, including those on the designated area list. When such a decision is reached, the University will provide reasons when asked.

It is a violation of these policies whenever any individual prevents, or willfully attempts to prevent, the orderly conduct of a University function or activity, such as lectures, meetings, interviews, ceremonies, and public events; or blocks, or willfully attempts to block, the legitimate activities of any person on the campus or in any University building or facility.

Whenever a member of the University community, that is a member of the faculty, staff, or student body, violates these policies, that individual may be subject to University-imposed sanctions, including being barred from campus and/or arrest. Whenever a nonmember of the University community violates these policies, that individual may be barred from campus and/or arrest. Decisions to invoke University disciplinary action or arrest in the course of a protest or demonstration will be made after due warning and, wherever possible, such decisions will be made by officers of the University (see the *Bylaws* of the Board of Trustees).

All members of the press and media, both those affiliated with the University and those with no affiliation to the University, are fully subject to these provisions unless special arrangements for press coverage have been authorized by the University's Office of Communications. Ordinarily, arrangements of some kind to permit press coverage will be made when circumstances allow, and will be administered by the Office of Communications.

More detailed information about University policies and practices pertaining to Peaceful Dissent, Protests, and Demonstrations can be found on the website https://odus.princeton.edu/protests

< https://odus.princeton.edu/protests>

.

## 1.2.4 Distribution of Written Materials by Members of the University Community

Free inquiry, free expression, and civility within this academic community are indispensable to the University's objectives. Inclusion of the name, telephone number, and/or e-mail address of the University sponsoring organization or individual member of the University community on material resembling petitions, posters, leaflets distributed on campus, including materials disseminated using campus information technology resources or University Internet access is encouraged, since such attribution promotes and facilitates civility as well as vigorous debate in the academic community. Anonymous public postings without sponsorship of a registered University organization or individual shall be removed or deleted if a complaint by a member of the University is lodged with the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School.

**Posting of Notices**

Posters or notices of any kind may be affixed only to bulletin boards in dormitory entryways, food service units, academic and administration buildings, and outdoor kiosks, lampposts, and bulletin boards. Individuals are encouraged to remove outdated material from kiosks and bulletin boards rather than postering over existing notices.

## 1.2.5 Personal Safety

Actions that threaten or endanger in any way the personal safety or security of others will be regarded as serious offenses.

The following offenses will be regarded as extremely serious:

1. Deliberate participation in a riot or general disturbance that threatens the safety, or seriously threatens the property, of either University members or members of the local community.

2. Intimidation by violence, by a threat of violence, or by property damage, which seeks to interfere with the free expression of ideas, or attempts to punish such free expression.

3. The possession, storing, or use on campus (including in any University housing) of (a) firearms (including antique firearms and imitation firearms); (b) any guns that shoot projectiles (including paintball, BB, air); (c) ammunition for any firearm; or (d) any explosive or incendiary device (including firecrackers and other fireworks). The use of prop guns in theatrical productions and the like requires advance written permission from the Office of the Dean of Undergraduate Students. (Easily identifiable toys, such as brightly colored or clear water guns, are not covered by this provision.)

4. The possession of weapons or the use or threatened use of weapons or objects capable of being used as weapons. (Students may possess small pocket-knives or kitchen implements and may use them for their intended purposes only.)

5. Any physical assault committed in the course of any University function or activity, or on the premises of the University or in the local vicinity, especially when unprovoked and/or when injury results.

6. Any other act that seriously endangers human life, or threatens serious physical or psychological injury.

## 1.2.6 Programs Involving Minors

The University is dedicated to the welfare and safety of all individuals who participate in its programs and activities, with particular concern for minors, who are defined as individuals who are under the age of 18 years old and are not a matriculated college student at Princeton University or elsewhere. Members of the University community who interact with minors are expected to be acquainted with and abide by the University's Policy for Programs Involving Minors. For more information about this policy, see the following website: **https://minorsoncampus.princeton.edu**

< https://minorsoncampus.princeton.edu>

.

## 1.2.7 Quiet

Activities that take place in the vicinity of University residences, classrooms, the library, the chapel, and similar facilities must be conducted in such a way as to respect the necessity for maintaining a reasonable degree of quiet in such areas. (See "Noise" under **section 2.2.1**

< ../students#comp221>

for more information.)

## 1.2.8 TigerCards (ID Cards) and Other Identification

TigerCards are issued to eligible members of the University community and are intended for campus use only. Members of the community are asked to carry their cards while on campus. TigerCards are non-transferable and must be presented on request to authorized University representatives. TigerCards should not be lent or given to others even for short periods of time.

Possession, manufacture, sale, or transfer of false identification of any sort is a violation of the law and of University policy.

# 1.3 Sex Discrimination and Sexual Misconduct

Princeton University does not tolerate sex or gender discrimination, including sexual misconduct such as sexual harassment and sexual assault, stalking, and intimate partner violence. These behaviors are harmful to the well-being of our community members, the learning/working environment, and collegial relationships among our students, faculty, and staff. All forms of prohibited conduct under this policy are regarded as serious University offenses, and violations will result in discipline, including the possibility of separation from the University. State and federal laws also address conduct that may meet the University's definitions of prohibited conduct, and criminal prosecution may take place independently of any disciplinary action instituted by the University.

Title IX of the Education Amendments of 1972 prohibits discrimination on the basis of sex or gender in the University's programs and activities. The University will respond to complaints or reports about prohibited conduct with measures designed to stop the behavior, eliminate any such gender discrimination, prevent the recurrence of the prohibited conduct, and remediate any adverse effects of such conduct on campus or in University-related programs or activities.

The University has an obligation to make reasonable efforts to investigate and address complaints or reports of sex or gender discrimination, including sexual misconduct, whenever it becomes aware of such a complaint or report. Lack of a formal complaint does not diminish the University's obligation to respond to information suggestive of sex discrimination or sexual misconduct. If the complainant (i.e., an individual who has been subjected to prohibited conduct, according to the complaint or report) requests that the University not investigate, the University will consider the complainant's articulated concerns, the best interests of the University community, fair treatment of all individuals involved, and the University's obligations under Title IX. All individuals have access to Confidential Resources that they may use for support and guidance without initiating University action.

Retaliation against anyone involved in filing an internal complaint under this policy, filing an external complaint, participating in the internal disciplinary process, or opposing in a reasonable manner an act believed to constitute a violation of this policy, is prohibited and will not be tolerated.

In light of these commitments, the University has adopted this policy, which includes investigation and disciplinary procedures that will be followed in response to allegations of sex or gender discrimination, including sexual misconduct such as sexual harassment and sexual assault, intimate partner violence, stalking, and related retaliation. In a case of alleged sex or gender discrimination or sexual misconduct, this policy supersedes policies and procedures for other forms of misconduct.

## 1.3.1 The University's Title IX Coordinator

The Vice Provost for Institutional Equity and Diversity serves as the Title IX Coordinator and coordinates the University's compliance with Title IX.

The Title IX Coordinator will be informed of all complaints or reports of violations of this policy, and oversees the University's centralized response to ensure compliance with Title IX and the 2013 Amendments to the Violence Against Women Act (VAWA). The Title IX Coordinator's activities include (but are not limited to):

- Communicating with all members of the University community regarding Title IX and VAWA, and providing information about how individuals may access their rights;
- Reviewing applicable University policies to ensure institutional compliance with Title IX and VAWA;
- Monitoring the University's administration of its own applicable policies, including record keeping, timeframes, and other procedural requirements;
- Conducting training regarding Title IX, VAWA, and prohibited conduct defined in this policy; and
- Responding to any complaint or report regarding conduct that violates this policy. In this capacity, the Title IX Coordinator oversees the investigation and resolution of such alleged misconduct, directs the provision of any remedial measures, and monitors the administration of any related appeal.

The Title IX Coordinator may delegate responsibilities under this policy to designated administrators, who will be appropriately trained.

The University Title IX Coordinator's contact information is as follows:

Michele Minter
Vice Provost for Institutional Equity and Diversity
205 Nassau Hall
Princeton, New Jersey 08544
mminter@princeton.edu
< mailto:mminter@princeton.edu>

609-258-6110

## 1.3.2 Scope of This Policy

This policy governs the conduct of: University students, regardless of enrollment status; faculty; staff; and third parties (i.e., non-members of the University community, such as vendors, alumni/ae, visitors, or local residents).

Third parties are both protected by and subject to this policy. A third party may make a complaint or report of a violation of this policy committed by a member of the

University community. A third party may also be permanently barred from the University or subject to other restrictions for failing to comply with this policy.

This policy applies to conduct that occurs on University property (i.e., on campus) and in the local vicinity. All actions by a member of the University community that involve the use of the University's computing and network resources from a remote location, including but not limited to accessing email accounts, will be deemed to have occurred on campus. This policy also applies to conduct that occurs off University property (i.e., off campus) when the conduct is associated with a University-sponsored program or activity, such as travel, research, or internship programs or when such conduct may pose a safety risk on campus, have a continuing adverse effect or could create a hostile environment on campus. Judgments about these matters will depend on the facts of an individual case.

## 1.3.3 Prohibited Conduct

In determining whether alleged conduct violates this policy, the University will consider the totality of the facts and circumstances involved in the incident, including the nature of the alleged conduct and the context in which it occurred. Any of the prohibited conduct defined in this policy can be committed by individuals of any gender, and it can occur between individuals of the same gender or different genders. It can occur between strangers or acquaintances, as well as people involved in intimate or sexual relationships.

### 1. Sex Discrimination

Sex discrimination is adverse treatment of an individual based on sex or gender, rather than individual merit. Sex discrimination encompasses sexual misconduct but also includes other discriminatory behavior that does not constitute sexual misconduct. Examples of conduct that can constitute sex discrimination because of sex, gender identity, or gender expression include but are not limited to:

- Singling out or targeting an individual for different or adverse treatment (e.g., more severe discipline, lower salary increase);
- Failing or refusing to hire or allow participation by an individual in a University activity; or
- Terminating or removing an individual from employment or an educational program.

### 2. Sexual Misconduct

The following behaviors constitute sexual misconduct and are prohibited under this policy. All forms of sexual misconduct are serious offenses and will result in University

disciplinary consequences. Sexual misconduct involving force, duress, or inducement of incapacitation, or where the perpetrator has deliberately taken advantage of another person's state of incapacitation, will be deemed especially egregious and may result in expulsion, or termination of employment. The consumption of alcohol or the use of illegal substances does not constitute a mitigating circumstance when it contributes to a violation regarding sexual misconduct.

**Non-Consensual Sexual Penetration (commonly referred to as rape).** Any act of vaginal or anal penetration by a person's penis, finger, other body part, or an object, or oral penetration by a penis, without consent.

**Non-Consensual Sexual Contact (commonly referred to as sexual assault).** Any sexual touching other than non-consensual sexual penetration without consent. Examples of non-consensual sexual contact may include: genital-genital or oral-genital contact not involving penetration; contact with breasts, buttocks, or genital area, including over clothing; removing the clothing of another person; and kissing.

**Sexual Exploitation.** Any act whereby one person violates the sexual privacy of another or takes unjust or abusive sexual advantage of another who has not provided consent, and that does not constitute non-consensual sexual penetration or non-consensual sexual contact. Examples may include: recording, photographing, transmitting, viewing, or distributing intimate or sexual images or sexual information without the knowledge and consent of all parties involved; voyeurism (i.e., spying on others who are in intimate or sexual situations).

**Sexual Harassment.** Unwelcome verbal or physical behavior which is directed at a person based on sex, gender identity or gender expression, when these behaviors are sufficiently severe and/or pervasive to have the effect of unreasonably interfering with an individual's educational experience, working conditions, or living conditions by creating an intimidating, hostile, or offensive environment. Examples of conduct that can constitute sexual harassment if based on an individual's sex, gender identity or gender expression include but are not limited to:

- Unwelcome jokes or comments (e.g., sexist jokes);
- Disparaging remarks about sex, gender identity, or gender expression (e.g., negative or offensive remarks or jokes about a person's self-presentation)
- Displaying negative or offensive posters or pictures about sex, gender, or gender expression;
- All communications, including those conveyed electronically, such as by e-mail, telephone or voicemail, text messaging, social media or other internet use, that violate this policy.

Sexual Harassment is deemed especially serious when submission to or rejection of such conduct is made implicitly or explicitly a term or condition of instruction,

employment, or participation in any University activity or benefit; or submission to or rejection of these behaviors by an individual is used as a basis for evaluation in making academic or personnel decisions.

**Inappropriate Conduct Related to Sex, Gender Identity, or Gender Expression.**
Unwelcome or inappropriate conduct that does not fall under other forms of sexual misconduct, but that is sexual and/or gender-based in nature. Examples may include public sex acts or flashing.

### 3. Other Prohibited Behaviors

The following behaviors are also prohibited under this policy.

**Intimate Relationship Violence (also known as dating violence or intimate partner violence).** Acts of violence, threat or intimidation that harm or injure a partner in a current or former intimate relationship (defined below). These acts may be physical, emotional/psychological, sexual, or economic in nature. Intimate relationship violence can be a single act or pattern of behavior.

**Domestic Violence in the Context of Intimate Relationships.** A particular type of intimate relationship violence that occurs when partners in a current or former intimate relationship are or have been cohabiting in the same space.

**Stalking.** A course of conduct (i.e., more than one act) that would cause a reasonable person to feel fear, to experience emotional distress, or to fear for the safety of a third person. Acts that together constitute stalking may be direct actions or may be communicated by a third party, and can include, but are not limited to: threats of harm to self or others; pursuing or following; non-consensual (unwanted) communication by any means; unwanted gifts; trespassing; and surveillance or other types of observation.

**Retaliation.** Any attempt to seek retribution against an individual or group of individuals involved in filing a complaint or report under this policy, filing an external complaint, participating in a disciplinary process, or opposing in a reasonable manner an action or policy believed to constitute a violation of this policy. Retaliation can take many forms, including abuse or violence, threats, and intimidation. Actions in response to a good faith report or response under this policy are considered retaliatory if they have a materially adverse effect on the working, academic or University-controlled living environment of an individual; or if they hinder or prevent the individual from effectively carrying out their University responsibilities. Any individual or group of individuals can engage in retaliation and will be held accountable under this policy.

### 4. Terminology

The following definitions clarify key terminology as used throughout the policy.

**Intimate Relationship.** An intimate relationship is a short- or long-term relationship between persons of any gender that provides romantic and/or physical intimacy or emotional dependence. Intimate relationships may include (but are not limited to) marriages, civil unions, dating relationships, "hook-up" relationships, relationships in which partners are characterized as "girlfriends" or "boyfriends," and relationships between persons with a child in common.

**Consent and Incapacitation.** In reviewing possible violations of sexual misconduct, the University considers consent as the voluntary, informed, un-coerced agreement through words and actions freely given, which a reasonable person would interpret as a willingness to participate in mutually agreed-upon sexual acts. Consensual sexual activity happens when each partner willingly and affirmatively chooses to participate.

Indications that consent is not present include: when physical force is used or there is a reasonable belief of the threat of physical force; when duress is present; when one person overcomes the physical limitations of another person; and when a person is incapable of making an intentional decision to participate in a sexual act, which could include instances in which the person is in a state of incapacitation.

Important points regarding consent include:

- Consent to one act does not constitute consent to another act.
- Consent on a prior occasion does not constitute consent on a subsequent occasion.
- The existence of a prior or current relationship does not, in itself, constitute consent.
- Consent can be withdrawn or modified at any time.
- Consent is not implicit in a person's manner of dress.
- Accepting a meal, a gift, or an invitation for a date does not imply or constitute consent.
- Silence, passivity, or lack of resistance does not necessarily constitute consent.
- Initiation by someone who a reasonable person knows or should have known to be deemed incapacitated is not consent.

In the context of this policy, incapacitation is the state in which a person's perception or judgment is so impaired that the person lacks the cognitive capacity to make or act on conscious decisions. The use of drugs or alcohol can cause incapacitation. An individual who is incapacitated is unable to consent to a sexual activity. Engaging in sexual activity with an individual who is incapacitated (and therefore unable to consent), where a person knows or ought reasonably to have understood that the individual is incapacitated, constitutes sexual misconduct.

The term **complainant** refers to the individual(s) who has been the subject of prohibited conduct, regardless of whether that individual makes a complaint or seeks disciplinary action.

The term **respondent** refers to the individual(s) who has been accused of prohibited conduct.

The term **third party** refers to any individual who is not a University student, a faculty member, or a staff member (e.g., vendors, alumni/ae, or local residents).

## 1.3.4 Relationships between Individuals of Different University Status

A sexual or romantic relationship involving individuals of different University status is not, in and of itself, sexual misconduct as defined by this policy and will not be investigated or adjudicated under this policy. Such an interaction may be a violation of another University policy and subject to separate disciplinary procedures.

A sexual or romantic relationship between students and teachers, supervisors or mentors (faculty members, staff members, or other students) violates both University and professional standards (including the University's Consensual Relations with Students Policy), and potentially violates state and federal anti-discrimination laws. The University prohibits all sexual and romantic relationships between faculty members and students (both undergraduate and graduate students). See **www.princeton.edu/dof/policies/publ/fac/rules_toc/chapter5/**

< http://www.princeton.edu/dof/policies/publ/fac/rules_toc/chapter5/>

for more information.

A conflict of interest also exists if there is a consensual romantic or sexual relationship in the context of employment supervision or evaluation. Therefore, a supervisor may not influence, directly or indirectly, salary, promotion, performance appraisals, work assignments or other working conditions for an employee with whom such a relationship exists. Such actions violate the University's Nepotism and Personal Relationships in the Workplace Policy. See **www.princeton.edu/hr/policies/conditions/5.2/5.2.2/**

< http://www.princeton.edu/hr/policies/conditions/5.2/5.2.2/>

.

## 1.3.5 Confidentiality, Privacy, and Related Responsibilities

Issues of privacy and confidentiality play important roles in this policy, and may affect individuals differently. Privacy and confidentiality are related but distinct terms that are defined below.

In some circumstances, the reporting responsibilities of University employees, or the University's responsibility to investigate, may conflict with the preferences of the complainant and/or respondent with regard to privacy and confidentiality. Therefore, all individuals are encouraged to familiarize themselves with their options and responsibilities, and make use of Confidential Resources, if applicable, in determining their preferred course of action.

Requests for confidentiality or use of anonymous reporting may limit the University's ability to conduct an investigation.

## 1. Confidentiality and Confidential Resources

The term "confidentiality" refers to the circumstances under which information will or will not be disclosed to others.

Several campus professionals are designated Confidential Resources. Confidential resources are not obligated to report information that is provided to them. This allows individuals to explore their options in a non-pressured environment while they make informed decisions. There may be exceptions in cases involving child abuse, imminent risk of serious harm, emergent hospitalization, or a court order. In addition, non-identifying information about violations of the Sex Discrimination and Sexual Misconduct policy may be submitted to the Department of Public Safety for purposes of the anonymous statistical reporting under the Clery Act.

An individual who is not prepared to make a report, or who may be unsure how to label what happened, but still seeks information and support, is strongly encouraged to contact a Confidential Resource. See section 1.3.6
#2 for a complete list of Confidential Resources on campus.

In particular, any individual who may have been subjected to a violation of this policy, or who is considering making a report under this policy, is encouraged to contact the University's Sexual Harassment/Assault Advising, Resources, and Education (SHARE) office. SHARE is a Confidential Resource that offers support and advocacy services, and provides information about the roles and reporting obligations of other offices at the University in order to empower persons to make informed decisions about their options.

In light of the University's obligation to make reasonable efforts to investigate and address conduct prohibited by this policy, University community members who are not designated Confidential Resources may be required to notify the Title IX Coordinator or the Department of Public Safety of suspected violations, and cannot guarantee the confidentiality of a complaint or report under this policy. See also section 1.3.5
#4.

## 2. Confidentiality Rights of Complainants and Respondents

Individuals involved in investigations or disciplinary proceedings under this policy are encouraged to exercise discretion in sharing information in order to safeguard the integrity of the process and to avoid the appearance of retaliation. While discretion regarding the process is important, complainants and respondents are not restricted from discussing and sharing information with others who may support or assist them in presenting their case.

Medical and counseling records are privileged and confidential documents that parties will not be required to disclose.

## 3. Privacy

The term "privacy" refers to the discretion that will be exercised by the University in the course of any investigation or disciplinary processes under this policy and, as detailed in section 1.3.12
, the parties will be informed of information relevant to the investigation or disciplinary processes.

The University has an obligation to make reasonable efforts to investigate and address complaints or reports of violations of this policy. In all such proceedings, the University will take into consideration the privacy of the parties to the extent possible.

In cases involving students, the Title IX Coordinator may notify residential college staff and other University employees of the existence of the complaint for the purpose of overseeing compliance with this policy and addressing any concerns related to educational and residential life. While not bound by confidentiality, these individuals will be discreet and will respect the privacy of those involved in the process.

Any additional disclosure of information related to the complaint or report may be made if consistent with the Family Educational Rights and Privacy Act (FERPA), or the Title IX requirements. In addition, the National Science Foundation mandates certain reporting related to sexual misconduct involving NSF-funded principal investigators (PI) or co-PIs. See Implementation of NSF's Notification Requirements Regarding Harassment and Sexual Assault
< https://orpa.princeton.edu/resources/policies-and-procedures/requirements-regarding-harassment-and-sexual-assault>
.

## 4. Responsibility to Report

All members of the University community are encouraged to report any suspected violation of this policy (after consulting a Confidential Resource as appropriate).

In emergency situations, if there is a suspected crime in progress, or imminent or serious threats to the safety of anyone, faculty and staff members must immediately contact the Department of Public Safety by dialing 911.

In non-emergency situations, faculty and staff members who are not Confidential Resources must promptly report suspected violations to the Title IX Coordinator. Some students with special responsibilities, including Residential College Advisers, must promptly report alleged violations of this policy to their Directors of Student Life, who will then consult with the Title IX Coordinator.

A complainant may choose not to make a complaint or report in their own case, even if the complainant otherwise has reporting obligations by virtue of being a faculty member, staff member, or Residential College Adviser.

### 5. Anonymity

For more information regarding the implications of anonymity in the context of reporting a policy violation, see section 1.3.8 #1. For information about how to make an anonymous report, see section 1.3.6 #3.

### 6. Release of Information

If the Department of Public Safety becomes aware of a serious and continuing threat to the campus community, the Department of Public Safety will issue a timely notification to protect the health or safety of the community. The Department of Public Safety may also be required to publicly disclose a reported incident of sexual misconduct in the daily crime log or annual security report. In addition, the University may also share non-identifying information, including data about outcomes and penalties, in aggregate form. At no time will the University release the name or other personally identifiable information of the complainant to the general public without the express consent of the complainant or as otherwise permitted or required by law.

## 1.3.6 Support Resources

A complainant or witness has many options, including counseling with a Confidential Resource, filing an internal complaint, and/or filing a criminal complaint. The University recognizes that deciding among these options can be difficult. Complainants and witnesses are encouraged to seek assistance from a Confidential Resource before deciding how to proceed.

The following resources are available to provide support and/or receive complaints or reports.

## 1. Emergency Resources and Law Enforcement

Emergency medical assistance and campus safety/law enforcement assistance are available both on and off campus. Individuals are encouraged to contact law enforcement and seek medical treatment as soon as possible following an incident that poses a threat to safety or physical well-being or following a potential criminal offense. For more information about filing a criminal complaint, see section 1.3.11 .

**Princeton Municipal Police**
911 or 609-921-2100

**Princeton University Department of Public Safety**
911

## 2. Confidential Resources

Information shared with Confidential Resources (including information about whether an individual has received services) will only be disclosed to the Title IX Coordinator or any other person with the individual's express written permission, unless there is an imminent threat of serious harm to the individual or to others, or a legal obligation to reveal such information (e.g., if there is suspected abuse or neglect of a minor). For more information about confidentiality and Confidential Resources, see section 1.3.5 .

The University's Sexual Harassment/Assault Advising, Resources, and Education (SHARE) office is a Confidential Resource offering support and advocacy services. Individuals are encouraged to access support services and learn about their options by contacting SHARE. The SHARE office can provide information about the roles and reporting obligations of other offices at the University in order to empower individuals to make informed decisions about their options.

Campus Confidential Resources include:

**SHARE Office**
217 McCosh Health Center
Washington Road, Princeton, NJ 08544
609-258-3310
share@princeton.edu
< mailto:share@princeton.edu>

https://share.princeton.edu
< https://share.princeton.edu>

**Counseling and Psychological Services (CPS)**
McCosh Health Center, Third Floor

609-258-3141

**https://uhs.princeton.edu/counseling-psychological-services**

< https://uhs.princeton.edu/counseling-psychological-services>

**Medical Services at University Health Services (UHS)**

McCosh Health Center

609-258-3141

**https://uhs.princeton.edu**

< https://uhs.princeton.edu>

**Ombuds Office**

179 Nassau Street - Suite D

Princeton, NJ 08544

609-258-1775

**ombuds@princeton.edu**

< mailto:ombuds@princeton.edu>

**https://ombuds.princeton.edu**

< https://ombuds.princeton.edu>

**Office of Religious Life chaplains**

Murray-Dodge Hall

Princeton, NJ 08544

609-258-3047

**orl@princeton.edu**

< mailto:orl@princeton.edu>

**https://religiouslife.princeton.edu**

< https://religiouslife.princeton.edu>

**Carebridge (Faculty & Staff Assistance Program)**

On initial visit to the site, please enter the Princeton client code **TW8AE** to access the Carebridge Library.

800-437-0911

**clientservice@carebridge.com**

< mailto:clientservice@carebridge.com>

**https://hr.princeton.edu/thrive/well-being-resources/employee-assistance-program-eap**

< https://hr.princeton.edu/thrive/well-being-resources/employee-assistance-program-eap>

## 3. EthicsPoint Anonymous Hotline

Any individual may make an anonymous report concerning a violation of this policy through the University's EthicsPoint hotline, an independent third-party reporting service. An EthicsPoint report can be made without disclosing the reporting person's own name, identifying the respondent, or requesting any action. However, if the reporter provides limited information, the University may be limited in its ability to take action. EthicsPoint is not a Confidential Resource and making a report to EthicsPoint may result in a University review or investigation.

**EthicsPoint Hotline**
866-478-9804
[https://secure.ethicspoint.com/domain/media/en/gui/27291/index.html](https://secure.ethicspoint.com/domain/media/en/gui/27291/index.html)
< https://secure.ethicspoint.com/domain/media/en/gui/27291/index.html>


### Other Available Resources

Any individual may also access resources located in the local community. These organizations can provide crisis intervention services, counseling, medical attention and assistance in dealing with the criminal justice system. If accessing these resources, individuals are encouraged to clarify whether the resources are confidential.

**Mercer County Sexual Assault Response Team (SART)**
*Evidence collection and preventative medicine*
Can be activated by contacting:

- Womanspace: 609-394-9000
- Princeton Police: 609-921-2100 (calls will likely result in police involvement)
- Department of Public Safety: 911 (calls will likely result in police involvement)

Or going to an emergency room:

- Penn Medicine Princeton Medical Center
- Capital Health Medical Center in Hopewell
- Robert Wood Johnson University Hospital

**Womanspace, Inc.**
*Services for domestic and sexual violence victims/survivors (of all genders)*
609-394-9000 (24-hour hotline) /609-394-0136 (office)
1530 Brunswick Avenue, Lawrenceville, New Jersey 08648
Monday-Friday, 9:00 a.m. - 5:00 p.m. (walk-in hours)


## 1.3.7 Options for Complainants and Other Reporting Parties

The University encourages all individuals to report any alleged or suspected violation of this policy to the Title IX Coordinator, and to report potential criminal conduct to law

enforcement. After consulting a Confidential Resource as appropriate, anyone who seeks to make a complaint or report may:

- Request interim measures from the Title IX Coordinator (see section 1.3.9 );
- File a complaint or report with the Title IX Coordinator, thereby invoking the University's internal disciplinary process (see section 1.3.8 );
- Contact the Department of Public Safety for assistance in filing a criminal complaint and preserving physical evidence (see section 1.3.6 ); and/or
- Contact local law enforcement to file a criminal complaint (see section 1.3.6 ).

An individual may pursue some or all of these steps at the same time (e.g., one may simultaneously pursue an internal complaint and a criminal complaint). When initiating any of the above, an individual does not need to know whether they wish to request any particular course of action, nor how to label what happened. Before or during this decision-making process, complainants and other reporting persons are encouraged to consult a Confidential Resource.

## 1.3.8 Filing a Complaint or Report with the Title IX Coordinator

Individuals are encouraged to report any alleged violation of this policy directly to the Title IX Coordinator. In order to do so, individuals may use the sex discrimination and sexual misconduct complaint form
< http://sexualmisconduct.princeton.edu/complaint>
, or schedule an appointment with the Title IX Coordinator.

### 1. Anonymous Reporting

If a complainant self-identifies but asks to remain anonymous during the investigation, the Title IX Coordinator will consider how to proceed, taking into account the complainant's articulated concerns; the best interests of the University community; fair treatment of all individuals involved, including the respondent's right to have specific notice of the allegations if the University were to take action that affects the respondent; and the University's obligations under Title IX.

### 2. Amnesty

In order to encourage reports of conduct that is prohibited under this policy, the University may offer leniency with respect to other violations which may come to light as a result of such reports, depending on the circumstances involved.

### 3. Timeliness of Report

Complainants and other reporting individuals are encouraged to report any violation of this policy as soon as possible in order to maximize the University's ability to respond promptly and effectively. Complaints and reports may be made at any time without regard to how much time has elapsed since the incident(s) in question.

If the respondent is no longer a student or employee at the time of the complaint or report, the University may not be able to take disciplinary action against the respondent, but it will still seek to meet its Title IX obligations by providing support for the complainant and taking steps to end the prohibited behavior, prevent its recurrence, and address its effects.

## 1.3.9 Interim Measures

Upon receipt of a complaint or report of a violation of this policy, the University will provide reasonable and appropriate interim measures designed to preserve the complainant's educational experience, the safety of all parties and the broader University community, maintain the integrity of the investigative and/or resolution process, and deter retaliation. The University may provide interim measures regardless of whether the complainant seeks formal disciplinary action.

Interim measures may include:

- Access to counseling services and assistance in arranging an initial appointment;
- Rescheduling of exams and assignments;
- Change in class schedule, including the ability to transfer course sections or withdraw from a course;
- Change in work schedule or job assignment;
- Change in campus housing;
- Providing medical services;
- Imposition of an on-campus "no contact order," an administrative remedy designed to curtail contact and communications between two or more individuals; and/or
- Any other measure that can be used to achieve the goals of this policy.

Any interim measures will not disproportionately impact the complainant. Requests for interim measures may be made by or on behalf of the complainant to any University official, including the Title IX Coordinator. The Title IX Coordinator is responsible for ensuring the implementation of interim measures and coordinating the University's response with the appropriate offices on campus.

All individuals are encouraged to report concerns about the failure of another to abide by any restrictions imposed by an interim measure. The University will take immediate

action to enforce a previously implemented measure and disciplinary penalties can be imposed for failing to abide by a University-imposed measure.

## 1.3.10 Investigations and Disciplinary Procedures in General for This Policy

The University is committed to providing a prompt and impartial investigation of all alleged violations of this policy. During the disciplinary process, both parties (complainant and respondent) have equivalent rights, including the opportunity to present evidence, to identify individuals who may possess relevant information and request that such individuals be interviewed, to be accompanied by an adviser of their choice, and to appeal. The University will concurrently provide both parties with written notification of the outcome of the process and any appeal.

### 1. Responsibility to Investigate

In order to protect the safety of the campus community, the Title IX Coordinator may investigate allegations of violations of this policy even absent the filing of a formal complaint or report, or if a complaint or report has been withdrawn. The Title IX Coordinator may need to proceed with an investigation even if a complainant specifically requests that the matter not be pursued. In such a circumstance, the Title IX Coordinator will take into account the complainant's articulated concerns, the best interests of the University community, fair treatment of all individuals involved, and the University's obligations under Title IX. This policy differs from New Jersey criminal law. Proceedings under this policy may be carried out prior to, simultaneously with, or following civil or criminal proceedings off campus. Neither a decision by law enforcement regarding prosecution nor the outcome of any criminal proceeding will be considered determinative of whether a violation of this policy has occurred.

### 2. Initial Assessment of Complaints

The investigative process is initiated when the Title IX Coordinator receives a complaint or report of a violation of this policy. Upon receipt of such a report, the Title IX Coordinator will respond to any immediate health or safety concerns raised by the report. The Title IX Coordinator will conduct an initial assessment. Following the initial assessment, the Title IX Coordinator may take any of the following actions:

- If the Title IX Coordinator determines that the complaint, even if substantiated, would not rise to the level of a policy violation; the nature and circumstances of the report do not make it appropriate for an investigation; or, after consultation with the complainant about the complainant's preferences regarding participation, the Title IX Coordinator determines that there will be insufficient information to investigate the matter, the Title IX Coordinator may dismiss the complaint.

- If the Title IX Coordinator determines that the complaint is outside the scope of this policy and/or most appropriately handled by another office, the Title IX Coordinator may refer the complaint to another office for review.
- If the Title IX Coordinator determines that the complaint or report would, if substantiated, constitute a violation of this policy, the Title IX Coordinator will determine appropriate interim measures and initiate an investigation.

### 3. Timing of Investigations and Any Related Disciplinary Proceedings

The Title IX Coordinator will seek to complete the investigation and any resulting disciplinary process and provide notice of the outcome within 60 calendar days after the investigative panel's first interview of the complainant. The University will seek to complete any appeal within 20 calendar days after receipt of the appeal.

There may be circumstances that require the extension of timeframes for good cause, including extension beyond 60 calendar days. Timeframes may be extended to ensure the integrity and completeness of the investigation, comply with a request by external law enforcement, accommodate the availability of witnesses, or accommodate delays by the parties; or for other legitimate reasons, including the complexity of the investigation and the severity and extent of the alleged misconduct. The University will notify the parties in writing of any extension of the timeframes for good cause, and the reason for the extension.

Although cooperation with law enforcement may require the University to temporarily suspend the fact-finding aspect of a Title IX investigation, the University will promptly resume its Title IX investigation as soon as it is notified by the law enforcement agency that the agency has completed the evidence gathering process. The University will not, however, wait for the conclusion of a criminal proceeding to begin its own investigation and, if needed, will take immediate steps to provide interim measures for the complainant.

Investigations will proceed according to the aforementioned timeframes during the summer and at other times when the University is not in session. The Title IX Coordinator will work with the parties to balance the need for promptness and the preference for in-person meetings regarding the investigation.

Timeframes for all phases of the disciplinary process, including the investigation, any related disciplinary proceedings, and any related appeal, apply equally to both complainant and respondent.

### 4. Cooperation with Investigation and Disciplinary Procedures

Princeton University expects all members of the University community to cooperate fully with the investigation and disciplinary procedures. The University recognizes that

an individual may be reluctant to participate in the process; nevertheless, any student or member of the faculty or staff who refuses to cooperate in an investigation may be subject to discipline. Refusal to cooperate includes delaying or failing to acknowledge requests from University officials for information, and delaying or failing to make oneself available for meetings with University officials.

It is understood that there may be circumstances in which a complainant wishes to limit their participation. The complainant retains this right and will not be subject to discipline, although the University may be obligated to conduct an investigation.

If a respondent chooses not to answer any or all questions in an investigation for any reason, the University process will continue, findings will be reached with respect to the alleged conduct, and the University will issue any penalties, as appropriate. The University will not, however, draw any adverse inference from a respondent's silence.

## 5. Sexual History

The sexual history of the complainant and/or the respondent will generally not be used in determining whether a violation of this policy has occurred. However, in certain circumstances, the sexual history between parties may have limited relevance. For example, if consent is at issue, the sexual history between the parties may be relevant to determining whether consent was sought and given during the incident in question, although it must be remembered that even in the context of a relationship, consent to one sexual act does not constitute consent to another sexual act, and consent on one occasion does not constitute consent on a subsequent occasion. In addition, under very limited circumstances, sexual history may be relevant to explain injury, to provide proof of a pattern, or for another specific question raised by an allegation.

## 6. Consolidation of Investigation

The Title IX Coordinator has the discretion to consolidate multiple complaints or reports into a single investigation if evidence relevant to one incident might be relevant to the others.

## 7. Violations of University Policy Unrelated to Sexual Misconduct

In the situation when an initial assessment or investigation under this policy identifies additional related possible violations of University policy (other than violations of the Sex Discrimination and Sexual Misconduct policy) by the same party(ies) that would normally be handled by another disciplinary authority, the Title IX Coordinator, with the approval of that disciplinary authority, may direct an investigative panel to investigate and adjudicate such other possible violations. In such a situation, the Title IX Coordinator and other disciplinary authorities will determine the procedures to be followed on consideration of the nature of the alleged violation(s) and other relevant

factors. The standard of evidence applied to each violation will not be altered: the preponderance of the evidence standard will be applied as appropriate and the clear and persuasive evidence standard will be applied as appropriate.

### 8. Circumstances Relating to Misconduct Affecting Health or Safety

In connection with this policy, in circumstances seriously affecting the health or well-being of any person, or where physical safety is seriously threatened, or where the ability of the University to carry out its essential operations is seriously threatened or impaired, the president or an authorized representative may summarily suspend, dismiss, or bar any person from the University. In all such cases, actions taken will be reviewed promptly, typically within one week, by the appropriate University authority.

## 1.3.11 Making a Criminal Complaint to Law Enforcement

At the complainant's request, the University will assist the complainant in contacting local law enforcement and will cooperate with law enforcement agencies if a complainant decides to pursue the criminal process. See section 1.3.6 #1 for contact information related to law enforcement.

## 1.3.12 Investigation, Disciplinary, and Appeal Procedures for Cases When the Respondent Is a Student

### 1. Investigation and Adjudication

When the Title IX Coordinator receives a complaint or report alleging that a student violated this policy, the Title IX Coordinator will appoint a three-person investigative panel of University administrators and/or investigators. The investigative panel will conduct an inquiry and determine, by a preponderance of the evidence, whether this policy was violated. All panelists will have training in investigating and evaluating conduct prohibited under the policy. The panelists will also be impartial and unbiased.

The panel will collect information from each party. If parties are interviewed, they will be interviewed separately. Each party may select an adviser of their choice who may accompany them to any meeting or related proceeding, but the adviser may not actively participate in the interview process. All three members of the panel will participate in interviews with the complainant and the respondent. The panel will interview witnesses as necessary and may, at its discretion, delegate witness interviews to one or two of the panelists. Witnesses may not bring advisers. In all meetings, there will be a designated note taker (either a member of the panel or an additional note take designated by the Title IX Coordinator). At the conclusion of each interview, the notes will be reviewed with the interviewee.

The panel will prepare a case file of all interview summaries, witness statements, and other documents. The file, redacted of personally identifiable information as necessary, will be shared with the complainant and the respondent. The panel will describe in writing for the parties the allegations that will be adjudicated.

After reviewing the file, each party will have an opportunity (1) to meet again with the panel, (2) to respond in writing, (3) to request the collection of other information by the panel, and (4) to identify individuals who may possess relevant information (and request that such individuals be interviewed). If the panel believes that further response by the parties is necessary for purposes of reaching an outcome, the panel will offer each party the opportunity to further respond to the materials collected. The panel will designate reasonably prompt time frames to ensure a timely completion of the process but also an adequate opportunity for both sides to respond thoroughly to the information gathered in the investigation.

Following the investigation, the panel will meet to determine, by a majority decision, whether the respondent, based on the preponderance of evidence standard, violated University policy. The panel will prepare a report, which will include findings of fact, findings of responsibility, and the panel's rationale. All members of the panel must endorse the report as a record of their deliberations and rationale.

## 2. Penalties

If a student is found responsible for violating University policy, the entire case file will be forwarded to the dean of undergraduate students and the deputy dean for academic affairs of the Graduate School, who will jointly determine the penalty. In the event of their unavailability, an appropriately trained administrator will serve as the substitute. Penalties will be determined based on the seriousness of the misconduct as compared to like cases in the past, and the student's previous disciplinary history (if any). Remedial measures will be determined based on the need to afford the parties an educational environment free from discrimination under Title IX. The findings regarding fact and responsibility, as well as the decision regarding the penalty in cases where violations of University policy have occurred, will be conveyed to the parties at the same time in writing. The notification will include the parties' appeal rights.

If a student is found responsible for violating University policy, the Office of the Dean of Undergraduate Students or of the Graduate School will record the penalty and retain records in accordance with protocols for all other disciplinary cases. In all cases, the case file will also be archived by the Title IX Coordinator.

## 3. Rights of Appeal

Both parties, the complainant and the respondent, have equal rights to an impartial appeal and to participate equally in the appeal process, even if the party is not the

appealing party.

The appellate body has the following five members: the dean of the college, the dean of the Graduate School, the vice president for campus life, the chair of the Judicial Committee of the Council of the Princeton University Community, and another faculty member appointed by the president. All members will have training regarding Title IX and prohibited conduct defined under this policy. The members will be impartial and unbiased. One member will be appointed by the president to serve as its chair.

Each appeal will be heard by three members of the appellate body (i.e., appeal panel). The chair will assign the appeal panel for each case. All decisions shall be made by a majority of the appeal panel.

A complainant or respondent may file a written appeal on the grounds that: (1) there is substantial relevant information that was not presented, and reasonably could not have been presented during the investigation; (2) the imposed penalty does not fall within the range of penalties imposed for similar misconduct, or (3) there was procedural unfairness during the disciplinary process.

The purpose of an appeal is not to initiate a review of substantive issues of fact or a new determination of whether a violation of University rules has occurred. (In considering an appeal, the appeal panel may communicate with the parties, the investigative panel, and/or disciplinary authority.) The appeal panel may decide to uphold the original decision of the investigative panel and/or the deans; to alter the imposed penalty; or to return the case to the investigative panel for additional proceedings or other action. The deadline for filing an appeal is five business days from the date the parties are notified of the decision. If either party files an appeal, the associate secretary of the University will notify the other party in writing. The associate secretary of the University will serve as secretary for all appeals and will have primary responsibility for interactions with the parties, for the gathering of information needed for the appeal, and for notifying both parties in writing of the outcome of any appeal.

## 4. Expedited Process in Limited Cases

An expedited investigation and adjudication process may be implemented at the sole discretion of the Title IX Coordinator in those cases where: (a) a student is alleged to have violated this policy; (b) based on precedents and the respondent's prior disciplinary history, the penalty for the alleged violation will not interrupt the student's academic career, and (c) the parties to the matter agree to the expedited process. If during the course of the matter the Title IX Coordinator determines that the expedited process is not appropriate, the Title IX Coordinator will re-institute the standard procedures described in section 1.3.12.

The expedited process is identical to the standard procedures described in section 1.3.12 in all respects, except for the following:

- The expedited process will utilize a two-person investigative panel.

- If a student is found responsible for violating this policy, penalties will be determined by an associate dean of undergraduate students for an undergraduate respondent or by an associate dean of the Graduate School for a graduate student respondent.

- Appeals in which the respondent is an undergraduate student will be reviewed by the dean of undergraduate students, and appeals in which the respondent is a graduate student will be reviewed by an associate dean of the Graduate School. If either party files an appeal, the associate secretary of the University or their designee will notify the other party in writing, and that individual will have primary responsibility for interactions with the parties, for the gathering of information needed for the appeal, and for notifying both parties in writing of the outcome of any appeal.

## 5. Student Enrollment and Residence Status

Pending action by the panel and/or the deans on the charges or pending an appeal, the respondent may be permitted to remain in residence on campus, attend classes, and make use of some or all University facilities, except for circumstances relating to the physical or emotional safety or well-being of a member (or members) of the University community, or the ability of the University to carry out its essential functions. Certain restrictions may be imposed by the deans on the respondent in order to provide the complainant with an educational environment free from discrimination under Title IX.

The respondent should understand that if the decision of the panel and/or the deans proves adverse, and if an appeal proves unsuccessful, the penalty will normally be considered effective as of the date of the original adjudicated decision. In cases adjudicated prior to the last day of classes, if the final decision is a separation from the University (i.e., suspension, suspension with conditions, or expulsion), the respondent will normally not earn credit for the semester in which the infraction occurred. If the case is adjudicated during reading or exam period or if the respondent has successfully completed course requirements while awaiting the final disposition of the matter, obtaining credit for the semester will be at the discretion of the deans.

Pending an investigation and adjudication or the respondent's decision about whether to appeal a separation from the University or the withholding of the degree, and/or while an appeal is in process, an administrative hold will be placed on the respondent's University transcript. Should the respondent decide not to appeal a separation or the withholding of the degree, or should an appeal not result in an alteration of the dean's

decision to dismiss the respondent or withhold the degree, the registrar will record the fact of the penalty on the respondent's transcript.

## 1.3.13 Investigation, Disciplinary, and Appeal Procedures for Cases When the Respondent Is a Faculty or Staff Member

### 1. Investigation and Adjudication

When the Title IX Coordinator receives a complaint or report alleging that a member of the faculty or staff violated this policy, the Title IX Coordinator will appoint an investigative panel of at least two University administrators and/or investigators.

When either of the parties is a faculty member, one panelist will represent the Office of the Dean of the Faculty. If either of the parties is a staff member, one panelist will represent Human Resources. When the complainant is a student alleging a violation of this policy by a member of the faculty or staff, the panel will have three members, and will include a representative of the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School, as appropriate.

The investigative panel will conduct an inquiry and determine, by a preponderance of the evidence, whether this policy was violated. All panelists will have training in investigating and evaluating conduct prohibited under this policy. The panelists will also be impartial and unbiased and will describe in writing for the parties, the allegations that will be adjudicated.

The panel will collect information from each party. If the parties are interviewed, they will be interviewed separately. Each party may select an adviser of their choice who may accompany them to any meeting or related proceeding, but the adviser may not actively participate in the interview process. All members of the panel will participate in interviews with the complainant and the respondent. The panel will interview witnesses as necessary and may, at its discretion, delegate witness interviews to one or two of the panelists. Witnesses may not bring advisers. In all meetings, there will be a designated note taker (either a member of the panel or an additional note take designated by the Title IX Coordinator). At the conclusion of each interview, the notes will be reviewed with the interviewee.

In the circumstance when the complaint is made by a member of the faculty or staff alleging a violation of this policy by another member of the faculty or staff, the panel will prepare a case file of all interview summaries, witness statements, and other documents. The panel will present both parties with a summary of the case file, after which each party will have an opportunity (1) to meet again with the panel, (2) to provide additional written information to the panel, (3) to request the collection of other information by the panel, and (4) to identify individuals who may possess relevant

information (and request that such individuals be interviewed). If the panel believes that further response by the parties is necessary for purposes of reaching an outcome, the panel will offer each party the opportunity to further respond to the materials collected. The panel will designate reasonably prompt time frames to ensure a timely completion of the process but also an adequate opportunity for both sides to provide thorough information in the investigation.

In the circumstance when the complaint is made by a student alleging a violation of this policy by a member of the faculty or staff, the panel will prepare a case file of all interview summaries, witness statements, and other documents. The file, redacted of personally identifiable information as necessary, will be shared with the complainant and the respondent. After reviewing the file, each party will have an opportunity (1) to meet again with the panel, (2) to respond in writing, (3) to request the collection of other information, and (4) to identify individuals who may possess relevant information (and request that such individuals be interviewed). If any additional information is gathered, it will be shared with both parties and each will have the opportunity for further response. The panel will designate reasonably prompt time frames to ensure both a timely completion of the process but also an adequate opportunity for both sides to respond thoroughly to the information gathered in the investigation.

Following the investigation, the panel will meet to determine whether the respondent, based on the preponderance of evidence standard, violated University policy. The panel will prepare a report, which will include findings of fact, findings of responsibility and the panel's rationale. All members of the panel must endorse the report as a record of their deliberations and rationale.

## 2. Penalties

The appropriate disciplinary authority based on the role of the respondent is as follows:

- If a faculty member is found responsible, the panel's report will be forwarded to the dean of the faculty who will determine the appropriate penalty.
- If a staff member is found responsible, the panel's report will be forwarded to the vice president for human resources, whose office will provide guidance to the staff member's manager to determine the appropriate penalty.

Penalties will be determined based on the seriousness of the misconduct as compared to like cases in the past, and on the individual's previous disciplinary history (if any). The findings regarding fact and responsibility as well as the decision regarding the penalty in cases where violations of University regulations have occurred will be conveyed to the parties at the same time in writing. The notification will include the parties' appeal rights. In all cases involving sex discrimination or sexual misconduct, the case file will be archived by the Title IX coordinator.

### 3. Rights of Appeal

Both parties, the complainant and the respondent, have equal rights to an impartial appeal and to participate equally in the appeal process, even if the party is not the appealing party. A complainant or respondent may file a written appeal on the grounds that (1) there is substantial relevant information that was not presented, and reasonably could not have been presented during the investigation; or (2) there was procedural unfairness.

- In a case where the respondent is a **faculty member,** written appeal should be filed with the Committee on Conference and Faculty Appeal. In addition to the two grounds above, either party may raise on appeal "any question of unfair treatment in relation to the appointment, reappointment, or academic duties or privileges."

- In a case where the respondent is an **academic professional** (professional researchers and specialists, professional library staff), a written appeal should be filed with the provost.

- In a case where the respondent is a **non-unionized staff member,** a written appeal should be filed with the executive vice president.

- In a case where the respondent is a **unionized staff member,** in accordance with the grievance procedure under the applicable collective bargaining agreement, a written appeal should be filed with the executive vice president and/or the labor relations representative in Human Resources.

The purpose of an appeal is not to initiate a review of substantive issues of fact or a new determination of whether a violation of University rules has occurred. (In considering an appeal, the appeal panel may communicate with the parties, the investigative panel, and/or disciplinary authority.) The appellate authority may decide to uphold the original decision of the panel and/or disciplinary authority; to alter the imposed penalty; or to return the case to the panel for additional proceedings or other action. The appellate authority will have training regarding Title IX and prohibited conduct defined under this policy and will be impartial and unbiased.

The deadline for filing an appeal is one week from the date the parties are notified of the decision by the dean of the faculty or vice president for human resources or a designee. If either party files an appeal, the other party will be notified. Both parties will be notified in writing of the outcome of the appeal.

## 1.3.14 Disciplinary Procedures Where One Party Is a Member of the University Community and the Other Party Is a Non-Member of the University Community

When a third party, (i.e., a non-member of our University community) is involved as a complainant or a respondent, the University will use disciplinary procedures that are

generally consistent with the disciplinary procedures stated in sections 1.3.8 through 1.3.13
, appropriately modified based on the particular circumstances involved and taking into account privacy requirements and the like. In no case will a member of our community (i.e., current student, faculty member or staff member) be afforded lesser rights or lesser opportunities to participate in the disciplinary proceeding than the non-member of the University community.

## 1.3.15 Other Investigation and Resolution Procedures

If a complaint or report of conduct prohibited by this policy is made against multiple individuals, an office, or the University in general, the Title IX Coordinator will review the matter and take appropriate action, in accordance with this policy. The Title IX Coordinator may conduct an investigation, using investigative and disciplinary procedures that are generally consistent with those stated in this policy, appropriately modified based on the particular circumstances involved. The Title IX Coordinator also has the discretion to conduct a climate review, after which the University may implement appropriate remedial action.

## 1.3.16 Range of Penalties under This Policy and Disciplinary Procedures

Members of the University community may be subject to disciplinary penalties for violating this policy.

### 1. Additional Accommodations

If a respondent is found responsible for violating this policy, the complainant may request accommodations not already in place. The University will implement the accommodation as appropriate. In no circumstance will the burden of the accommodation be placed on the complainant. The accommodation shall be effective even if the respondent files an appeal or if such an appeal is pending.

### 2. Penalties Applicable to Students

The penalties for students are listed below.

### Informal Sanctions

Minor violations of rules of conduct may be met with informal responses.

**1. Dean's Warning.** An admonition that does not become part of an individual's permanent record, but that may be taken into account in judging the seriousness of any future violation.

Case 3:20-cv-04352-BRM-TJB Document 1-2 Filed 04/15/20 Page 43 of 45 PageID: 104

**2. Reprimand.** Reprimand is a stronger admonition than a dean's warning, intended to signal that the student has committed a minor infraction, conveying that the student must be vigilant against future infractions, and providing a disincentive against future infractions in that a reprimand will not become part of the student's permanent record unless there is a subsequent infraction, at which point the reprimand will be formally recorded on the student's permanent record.

Both a dean's warning and a reprimand may be taken into account in judging the seriousness of any future violation.

## Formal Sanctions

More serious violations may be met with the following formal responses which are recorded on the student's permanent record.

**1. Disciplinary Probation.** A more serious admonition assigned for a definite amount of time. It implies that any future violation, of whatever kind, during that time, may be grounds for suspension, suspension with conditions, or in especially serious cases, expulsion from the University. Disciplinary probation will be taken into account in judging the seriousness of any subsequent infraction even if the probationary period has expired.

Disciplinary probation appears on an individual's permanent record at the University (but not on the transcript) and may be disclosed by the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

**2. Withholding of Degree.** In cases involving seniors or graduate students in their final semester, the University may withhold a student's Princeton degree for a specified period of time. This penalty is imposed instead of suspension at the end of senior year or final year of graduate study when all other degree requirements have been met. A withheld degree is recorded on a student's transcript. Relevant information remains on the student's permanent record at the University and may be disclosed by the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

**3. Suspension.** Removal from membership in the University for a specified period of time. A suspension is recorded on a student's transcript. Relevant information remains on the student's permanent record at the University and may be disclosed by the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

**4. Suspension with Conditions.** Removal from membership in the University for at least the period of time specified by the suspension, with the suspension to continue until certain conditions, stipulated by the appropriate body applying this penalty, have been fulfilled. These conditions may include, but are not limited to, restitution of damages, formal apology, or counseling. A suspension with conditions is recorded on a student's transcript. Relevant information remains on the student's permanent record at the University and may be disclosed by the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

**5. Expulsion.** Permanent removal from membership in the University, without any opportunity for readmission to the community. Expulsion is recorded on a student's transcript. Relevant information remains on the student's permanent record at the University and may be disclosed by the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

The following may accompany the preceding penalties, as appropriate:

**Censure.** University censure can be added to any of the other penalties listed above, except dean's warning and reprimand. Censure indicates the University's desire to underscore the seriousness of the violation and the absence of mitigating circumstances, and to convey that seriousness in response to future authorized inquiries about the given individual's conduct.

**Campus Service.** Campus service up to 10 hours per week may be added to a reprimand or disciplinary probation. This penalty may be particularly appropriate in cases involving vandalism, disorderly conduct, and alcohol-related infractions.

**University Housing.** When appropriate to the infraction, particularly in instances involving antisocial behavior having a serious impact on the residential community, removal from University housing or relocation within University housing may be added to any of the other penalties listed above, except warning and reprimand. In the case of a first-year or sophomore, removal from housing is not an option as all underclass students must reside in a residential college. Relocation within residential colleges will be imposed only after consultation with the head of the student's residential college.

**Restriction of Access to Space, Resources, and Activities.** When appropriate in cases involving behavioral misconduct between members of the community, restrictions may be placed on access to space and/or resources or on participation in activities so as to limit opportunities for contact among the parties.

**Educational Refresher Programs.** In addition to any of the penalties listed above, a student may be required to participate in educational refresher programs appropriate to the infraction.

Case 3:20-cv-04352-BRM-TJB Document 1-2 Filed 04/15/20 Page 45 of 45 PageID: 106

**Restitution.** The penalty for willful or reckless damage or vandalism will ordinarily include restitution for replacement or repair.

### 3. Penalties Applicable to Faculty and Staff Members

For violations of this policy by faculty or staff members, disciplinary penalties may include (in accordance with the employment policies governing the employee in question) counseling or training, written warning, financial penalty, unpaid leave of absence, suspension, demotion or termination in accordance with the employment policies governing the specific employee.

### 4. Penalties Applicable to Non-Members of the University Community

For violations of this policy by non-members of the University community, disciplinary penalties may include being temporarily or permanently barred from the University or subject to other restrictions.

# 1.4 The University, the Law, and Property Rights

Members of the University community are expected to act with respect for the safety, personal rights, and property of individuals and groups both within and outside the University, and in accordance with local, state, and federal laws. Some laws, such as those governing equal opportunity and nondiscrimination, underlie fundamental University policy and have been discussed previously in this document. Principles and laws of particular importance to our academic community are discussed below.

## 1.4.1 On-Campus Misconduct and the Law

On-campus misconduct by members of the University will normally result in internal disciplinary action, although in some instances the University may deem it necessary to call upon external authorities and to file charges or claims in the courts. In particular, misconduct by members of the University or others that inflicts or threatens to inflict personal injury or serious damage to property, that severely impairs essential functions of the University, or that cannot be adequately handled by the University Department of Public Safety, may require the intervention of outside authorities. Outside authorities typically will be called only by a senior officer of the University or a specifically designated representative. In addition to the president and the provost, authorized senior officers include the dean of the faculty, the dean of the Graduate School, the dean of the college, the vice president for campus life, the executive vice president, the executive director of the Department of Public Safety, and the general counsel.