## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JOHN DOE,

                                Plaintiff,

            v.

PRINCETON UNIVERSITY,

                                Defendant.

Case No. 3:20-cv-4352-BRM-TJB

**ORAL ARGUMENT REQUESTED**

**Return Date:  July 6, 2020**

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

On the Brief:

Stephen J. Kastenberg, Esq. (026001993)
Christopher J. Kelly, Esq. (024972008)
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002-1163
Telephone:  856.761.3400
Facsimile:  856.761.1020

*Attorneys for Defendant,*
*Princeton University*

i

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ........................................................................... 1

II.   ARGUMENT................................................................................... 2

    A.    Neither the Third Circuit's Decision in *USciences*, Nor the New Title IX Guidance, Remedies Doe's Failure to Allege Gender Bias. ........................................................................................... 2

        1.    *USciences* Confirms Doe's Allegations of External Pressure Alone Cannot State a Sex Discrimination Claim........ 4

        2.    Unlike the Plaintiff in *USciences*, Doe Cannot Allege Sex-Motivated Investigation and Enforcement................................. 5

    B.    Doe Cannot Use A Contract Claim to Impose Due Process Requirements on a Private University.................................................. 7

        1.    The Policy Is Fundamentally Fair Under New Jersey Law ....... 9

        2.    Princeton Followed Its Policy.................................................. 12

        3.    The Panel's Decision Was Supported by Extensive Evidence................................................................................... 14

    C.    Doe Cannot State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing............................................................. 14

    D.    Doe Cannot Maintain a Common Law Due Process Claim. ............. 15

III.  CONCLUSION............................................................................. 16

DMEAST #41527149 v1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*ABC Capital Invs., LLC v. CAN Fin. Corp.*,
  Civil Action No. 16-CV-4943, 2017 U.S. Dist. LEXIS 95433 (E.D.
  Pa. June 21, 2017) .......................................................................................12, 13

*B.S. v. Noor-Ul-Iman School*,
  Docket No. A-4905-13T2, 2016 N.J. Super. Unpub. LEXIS 1847
  (N.J. App. Div. Aug. 5, 2016) ........................................................................9, 10

*Baraka v. McGreevey*,
  481 F.3d 187 (3d Cir. 2007) .............................................................................12

*Behne v. Union Cnty. Coll.*,
  Civil Action No. 14-6929 (JMV) (MF), 2018 U.S. Dist. LEXIS
  12994 (D.N.J. January 26, 2018) ..........................................................................9

*Collick v. Williams Paterson Univ.*,
  Civ. No. 16-471 (KM) (JBC), 2016 U.S. Dist. LEXIS 160359
  (D.N.J. Nov. 17, 2016)........................................................................................14

*Doe v. Allee*,
  30 Cal. App. 5th 1036 (Cal. Ct. App. 2019) ....................................................11

*Doe v. Baum*,
  903 F.3d 575 (6th Cir. 2018) ..............................................................................6

*Doe v. Brandeis Univ.*,
  177 F. Supp. 3d 561 (D. Mass. 2016) ........................................................10, 11

*Doe v. Princeton Univ.*,
  Civil Action No.: 17-cv-1614 (PGS), 2018 U.S. Dist. LEXIS
  88027 (D.N.J. Feb. 5, 2018) ................................................................................8

*Doe v. Princeton Univ.*,
  No. 18-16539, 2019 U.S. Dist. LEXIS 4449 (D.N.J. Jan. 9, 2019) ..............7, 12

*Doe v. Princeton Univ.*,
  379 F. App'x 379 (3d Cir. 2019) ......................................................................11

ii

*Doe v. Rider Univ.*,
    Civil Action No. 3:16-cv-4882-BRM-DEA, 2018 U.S. Dist.
    LEXIS 7592 (D.N.J. Jan. 17, 2018) ....................................................15

*Doe v. Univ. of Notre Dame*,
    3:17CV298-PPS/MGG, 2017 U.S. Dist. LEXIS 69645 (N.D. Ind.
    May 8, 2017) ........................................................................................11

*Doe v. Univ. of the Scis.*,
    No. 19-2966, 2020 U.S. App. LEXIS 17123 (3d Cir. May 29,
    2020) ........................................................................................*passim.*

*Hernandez v. Don Bosco Preparatory High*,
    730 A.2d 365 (N.J. Super. Ct. App. Div. 1999) ...................8, 9, 10, 14

*Horatio Wash. Depot Techs. LLC v. Tomlmar, Inc.*,
    Civil Action No. 17-1086-LPS, 2018 U.S. Dist. LEXIS 187074 (D.
    Del. Nov. 1, 2018) ...............................................................................14

*Mittra v. Univ. of Med. & Dentistry of N.J.*,
    719 A.2d 693 (N.J. Super. Ct. App. Div. 1998) ....................................9

*Moe v. Seton Hall Univ.*,
    Civil Action No.: 2:09-01424, 2010 U.S. Dist. LEXIS 3861
    (D.N.J. Apr. 20, 2010) ...............................................................8, 9, 15

*Napolitano v. Trustees of Princeton Univ.*,
    452 A.2d 263 (N.J. Super. App. Div. 1982) .........................................7

*Romeo v. Seton Hall Univ.*,
    875 A.2d 1043 (N.J. Super. App. Div. 2005) ........................................8

*Weiss v. Rutgers Univ.*,
    Civil Action No.: 12-6834, 2014 U.S. Dist. LEXIS 80397 (D.N.J.
    June 10, 2014) .....................................................................................15

DMEAST #41527149 v1

## I.    INTRODUCTION

After conducting a thorough investigation of the claims against both Doe and Roe, a Title IX investigatory panel at Princeton issued a thoughtful, detailed decision finding Doe responsible for multiple acts of intimate relationship violence under University Policy.[1]  In accordance with the Policy, prior to the finding of responsibility, Doe had the opportunity to meet with the investigatory panel; make counterclaims that the panel investigated; identify witnesses for interview; submit cross-examination questions; respond in writing to the panel after reviewing all evidence; and receive assistance from an adviser and then counsel. Only after this detailed investigation and finding of responsibility did a second, separate panel of administrators review the findings and decide to expel Doe in light of the serious, repeated nature of the offenses.  Doe then availed himself of the Policy's additional procedural protection to pursue an appeal before a third, independent panel of senior administrators.  He now asserts Title IX sex discrimination and contract claims against Princeton.  These claims fail on their face, as the Court recognized in its prior Opinion, accepting all of the Complaint's factual averments as true.

In opposing dismissal, Doe relies heavily on a recent Third Circuit opinion addressing Title IX and Pennsylvania contract law, and newly published DoE

---

[1]    Capitalized terms are defined as in the University's Opening Brief.

regulations.  But the Third Circuit decision confirms Doe's failure to show that he suffered discrimination on the basis of sex under Title IX and is irrelevant to the conclusion that the University's Policy, complied with here, afforded him a fundamentally fair process under New Jersey contract law.  Nor do the DoE's new regulations—which become effective on August 14, 2020 on a going-forward basis only—affect the question of whether the investigation of Doe, whose appeal was completed in ████ met New Jersey's requirements of fundamental fairness.  The outsized emphasis Doe places on the two unavailing developments reflects a failed effort to differentiate the Court's careful analysis of Doe's claims in the Opinion when that analysis, applying the standards applicable to a Rule 12(b)(6) motion, also should result in the dismissal of his Complaint as a matter of law.

## II.   ARGUMENT

### A.   Neither the Third Circuit's Decision in *USciences*, Nor the New Title IX Guidance, Remedies Doe's Failure to Allege Gender Bias.

Doe fails to state a Title IX claim because he does not, and cannot, plausibly allege that the University discriminated against him on the basis of sex.  In his Opposition, Doe stresses two developments since the University filed its Motion to Dismiss: the Third Circuit's decision in *Doe v. University of the Sciences* ("*USciences*") and the DoE's publication of new Title IX Rules.  2020 U.S. App. LEXIS 17123 (3d Cir. May 29, 2020); Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 FR

2

30026 (May 19, 2020) (to be codified at 34 CFR pt. 106). Neither development affords Doe a viable claim.  In *USciences*, the Third Circuit affirmed that, to state a Title IX claim, "the alleged facts, if true, must support a plausible inference that a federally funded college or university discriminated against a person on the basis of sex." *Id.* at *12.  As the University argued in its Opening Brief, Doe fails to meet this standard because he cannot show the essential element of gender discrimination.[2]  The new Title IX rules cannot save Doe's claim.  As Doe recognizes, the Rules do not apply retroactively to his investigation. Opp. Br. 24.

Although the *USciences* decision clarifies the landscape for Title IX claims in the Third Circuit, it does not remedy Doe's failure to state one.  In *USciences*, the Third Circuit reversed the dismissal of Title IX claims, finding the plaintiff there had made "plausible allegations supporting the reasonable inference that *USciences* discriminated against [plaintiff] on account of his sex."  2020 U.S. App. LEXIS 17123, at *12.  These allegations were of two types: first, the plaintiff alleged *USciences* yielded to external pressure when implementing and enforcing its policies; second, he alleged "sex was a motivating factor in *USciences's*

---

[2]      Doe asserts that his Complaint, the Court's prior Opinion, and the University's Motion to Dismiss are based on "the now supercilious standards of 'erroneous outcome' and 'selective enforcement.'"  Opp. Br. 14 n.4. The University's argument that Doe's Title IX claims fail because he cannot show gender bias remains dispositive of his claims under *USciences*.

3

investigation and decision to impose discipline." *Id.* The Third Circuit confirmed existing law, applied by this Court in its prior Opinion, that "allegations about pressure from DoE[] and the 2011 Dear Colleague Letter cannot alone support a plausible claim of Title IX sex discrimination," *id.* at *13, but instead must be accompanied by plausible allegations of gender bias, i.e. "sex-motivated investigation and enforcement." *Id.* at *16. The plaintiff pled gender bias, alleging "*USciences* was improperly motivated by sex when it investigated him but chose not to investigate three female students who allegedly violated the Policy." *Id.* at *14. Here, the University investigated Roe. Rather than supporting Doe, *USciences* affirms his failure to state a claim.

> ### 1. *USciences* Confirms Doe's Allegations of External Pressure Alone Cannot State a Sex Discrimination Claim.

Doe contends in his Opposition that "Princeton faced considerable criticism and pressure from its student body, the federal government, and the media over its perceived mishandling of sexual assault cases brought by female students[.]" Opp. Br. 19. He cites protests calling for the dismissal of Ms. Crotty and Ms. Minter. *Id.* at 20. Neither was on any of the three panels that adjudicated Doe's complaint, decided his disciplinary sanction, or heard his appeal. And in his Opposition, Doe acknowledges what *USciences* requires: that pressure over a university's handling of Title IX claims generally supports a sex discrimination claim only "***when combined with other circumstantial evidence of bias in [Plaintiff]'s specific***

4

*proceeding*[.]" Opp. Br. 20 (emphasis in original) (citation omitted).  Because Doe fails to allege gender bias in his specific proceeding, his Title IX claim fails.

### 2. Unlike the Plaintiff in *USciences*, Doe Cannot Allege Sex-Motivated Investigation and Enforcement.

This Court should reject Doe's attempt to equate his allegations to those of the plaintiff in *USciences,* who alleged that *USciences* chose to investigate him, but not three female students, despite having notice they also violated its Policy.  *Id.* at *14.  Doe argues that his claims are comparable to those in *USciences*, notwithstanding Princeton's full investigation of Roe, because "Princeton was on notice that Jane may have violated the Policy, but did not investigate her" in ██████████████ Opp. Br. 18.  Doe alleges that in ████████████ he emailed Mr. Meggs—a Director of Student Life, not a Title IX administrator—to report an ex-girlfriend spreading false information about him.[3]  Compl. ¶ 34.  The University did not open an investigation because this did not appear to violate the Policy, which prohibits sexual harassment and stalking but not rumor-spreading.  *Id.* at Ex. A.  Also, Doe did not file (and is not alleged to have filed) a university complaint. *Id.* at ¶ 34.  Conversely, Roe visited the University's Title IX coordinator several

---

[3]  In his Opposition, Doe agues he reported "Jane was harassing and stalking him" but in his Complaint he actually alleged that he reported "he was being harassed" by his ex-girlfriend.  Compl. ¶ 34; Opp. Br. 17-18, n. 17.  Stalking is not mentioned.

times to report that she had been the victim of intimate relationship violence,
which is expressly prohibited.  *Id.* at ¶ 39, Ex. A.  Even so, the University did not
open an investigation into Doe until Roe filed a university complaint, ███████████
██████  *Id.* at ¶ 42.  In ██████████████ when Doe reported that Roe perpetrated
intimate relationship violence and notified the panel that he wanted to file
counterclaims, Princeton opened an investigation into Roe.  *Id.* at ¶ 51.

Doe also fails to allege that he was treated differently due to his sex during
the investigation.  In *USciences*, the Third Circuit found the plaintiff's "allegations
of sex-motivated investigation and enforcement were like the plausible allegations
in *Baum*," which supported the inference that the university discredited all males
and credited all females because of sex bias.  2020 U.S. App. LEXIS 17123, at *16
(citing *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018)).  The investigation here
was decidedly not sex-motivated.  When each student notified the University that
they wished to pursue claims, the University opened an investigation.  The same
procedure was used for both Doe and Roe.  Each was able to review the case file,
submit cross-examination questions, and respond in writing to the allegations.
Crotty MTD Cert. Exs. B, C & D.  The investigatory panel interviewed each party,
as well as 16 other witnesses.  Crotty MTD Cert Ex. D (Panel Report) at pp. 2-3.
Though the panel found Doe not credible and Roe very credible, the panel found
all the other witnesses, male and female, generally credible, unlike in *Baum*.  *Id.* p.

6

19.  For example, the panel credited the testimony of a male student who reported that Roe told him Doe hurt her and had photo evidence, and it found the account of another male student "contradicted [Doe's] account." *Id.* pp. 13, 24.

The DoE's new Title IX rules do not apply to Doe's claims.  In November 2018, the DoE issued proposed new Title IX rules but did not issue final rules until May 2020, effective August 2020.[4] The Rules are not retroactive.  85 FR 30026, 30061.  Doe intimates that Princeton was obligated to conform its Policy to the 2018 proposed rules. Opp. Br. 24.  But, the District of New Jersey in 2019—when the Rules were proposed but not adopted—found Princeton's Policy did not "violate[] current binding DOE regulations[.]"  *Doe v. Princeton Univ.*, 2019 U.S. Dist. LEXIS 4449, at *24 (D.N.J. Jan. 9, 2019).

### B.  Doe Cannot Use A Contract Claim to Impose Due Process Requirements on a Private University.

Doe cannot assert a viable contract claim against Princeton under New Jersey law.  In New Jersey, the relationship between student and university "cannot be described … in pure contractual … terms." *Napolitano v. Trustees of Princeton Univ.*, 452 A.2d 263, 272 (N.J. Super. App. Div. 1982).  This is true even outside

---

[4]    Doe's argument that "Princeton was and continues to be, out of compliance with official OCR regulations" is plainly incorrect.  Opp. Br. 6.

the academic context.[5]  *See, Doe v. Princeton Univ.*, 2018 U.S. Dist. LEXIS 88027,

at *21 (D.N.J. Feb. 5, 2018) (so holding in context of contract claim by student

expelled following a Title IX investigation); *Romeo v. Seton Hall Univ.*, 875 A.2d

1043, 1050 (N.J. Super. App. Div. 2005).

Any claim by Doe challenging his disciplinary proceeding fails because the

University followed a fundamentally fair policy and relied on substantial evidence

in making its decision.  Under New Jersey law, "a student in a private university

contesting disciplinary proceedings, including expulsion, will not prevail if the

university adhered to its own rules… the procedures followed were fundamentally

fair… and the decision was based on 'sufficient' evidence."  *Moe v. Seton Hall*

*Univ.*, 2010 U.S. Dist. LEXIS 3861, at *13 (D.N.J. Apr. 20, 2010) (citing

*Hernandez v. Don Bosco Preparatory High*, 730 A.2d 365, 375 (N.J. Super. Ct.

App. Div. 1999)).[6]  Princeton meets these requirements, negating Doe's contract

claim.

---

[5]     Typical of his brief's supercharged rhetoric, Doe cites *Moe v. Seton Hall* to
       declare that Princeton advances a "baseless" argument.  Opp. Br. 35 n.17.
       But Moe "entered into a written Agreement with the University" which the
       court found "may be enforced quite apart from any provisions of the student
       manual."  2010 U.S. Dist. LEXIS 3861, at *16.

[6]     Doe argues *Hernandez* recognized that courts protect the rights of a private
       university student more aggressively than those of a private high school
       student. Opp. Br. 27 n.10. But the only additional requirement *Hernandez*
       placed on universities was that "a private university may expel a student
       only upon a showing of sufficient evidence," 730 A.2d at 375. In addition to

8

### 1.     The Policy Is Fundamentally Fair Under New Jersey Law.

The University's Policy fulfills the requirements of fundamental fairness as well defined under New Jersey law.  Whether a process is fundamentally fair "will depend on the circumstances" and focuses on whether the school had basic procedural protections in place.  *Hernandez*, 730 A.2d at 376.  Relevant factors are whether the policy gives the student notice of the allegations and opportunities to examine the evidence and present a case.  *Behne v. Union Cnty. Coll.*, 2018 U.S. Dist. LEXIS 12994, at *21 (D.N.J. January 26, 2018) (quoting *Mittra v. Univ. of Med. & Dentistry of N.J.*, 719 A.2d 693, 698 (N.J. Super. Ct. App. Div. 1998)).[7] The University's Policy provides each of these protections, and Doe does not allege otherwise.  In ███████████ Doe was notified of the claims against him, and he was given the investigation case file.  Crotty MTD Cert. Ex. D p. 3.  Under the Policy, Doe had the opportunity to meet with panel, and to submit proposed cross-examination questions, additional evidence, and multiple written responses to the investigatory panel.  Compl. ¶ 53; Crotty MTD Cert. Ex. D p. 3.

---

*Moe*, above, Doe relies on *Hernandez* and *B.S. v. Noor-Ul-Iman School*, both involving private high schools. 2016 N.J. Super. Unpub. LEXIS 1847 (N.J. App. Div. Aug. 5, 2016).

[7]     Though *Mittra* addressed academic misconduct, New Jersey courts have looked at similar factors in assessing the fundamental fairness of school policies outside of the academic context. *E.g.*, *Hernandez*, 730 A.2d at 376.

9

New Jersey court decisions regarding school disciplinary policies show that Princeton's Policy is fundamentally fair.  Doe cites *Hernandez v. Don Bosco Preparatory High*, where the court found a school procedure was "fundamentally fair" when, as here, "plaintiff was notified of the charges," "took the opportunity to appeal," and "had the opportunity to defend the charges," though ***not*** by live hearing.  730 A.2d at 368, 376.  Conversely, in *B.S. v. Noor-Ul-Iman School*, the policy was "fundamentally unfair" when the student "was not provided a fair opportunity to respond to the charges," including the school "refus[ing] to disclose the source of the allegations . . . . the exact nature of the violations, and the manner in which it conducted its investigation."  2016 N.J. Super. Unpub. LEXIS 1847, at *10, *16, *17.  Princeton, per its Policy, gave Doe notice of the allegations against him and the opportunity to defend those charges.

Contrary to Doe's Opposition, fundamental fairness is not equivalent to due process under New Jersey law.  Opp. Br. 29-30.  Neither *Noor-Ul-Iman* nor *Hernandez*, cited by Doe, support this proposition.  Even Doe's parentheticals for both cases make clear that processes are fundamentally fair when a student has the opportunity to defend the charges, as the Policy here undeniably did.  *Id.* at 30.  The other out-of-state cases cited by Doe are inapplicable.  *USciences* was decided under "well-worn" principles of ***Pennsylvania*** law.  2020 U.S. App. LEXIS 17123, at *23. Similarly, the court in *Doe v. Brandeis University* interpreted a contractual

10

relationship with a student "under Massachusetts law[.]" 177 F. Supp. 3d 561, 600

(D. Mass. 2016).[8] Those cases are also factually distinguishable. In *Brandeis*, the

university did not provide the student with a full account of the charges or access

to evidence, nor did it provide the student with the report until the proceeding,

including appeal, was concluded. *Id.* at 603-06; *see also Doe v. Univ. of Notre

Dame*, 2017 U.S. Dist. LEXIS 69645, at *27 (failing to give student meaningful

notice of allegations).

This Court should reject Doe's attempt to use a contract claim to impose due

process requirements on a private university. Contrary to Doe's arguments, Opp.

Br. 31-33, no New Jersey court has ever held that fundamental fairness in student

disciplinary proceedings requires live cross-examination or a bifurcated

investigation and adjudication processes. In essence, Doe wants the Court to

impose not only due process requirements but also, retroactively, the new DoE

Title IX rules. Yet the University's Policy was acceptable to DoE under the former

Title IX rules and has never, despite challenges from disappointed student

respondents, been found not to meet fundamental fairness. *See, e.g Doe v.

Princeton Univ.,* 379 F. App'x 379, 385-86 (3d Cir. 2019) (rejecting breach of

---

[8]     *Doe v. Allee* is a California state court case, decided on a writ of administrative
mandamus, that, like *Doe v. University of Notre Dame*, has never been cited
by any court in New Jersey or the Third Circuit. 30 Cal. App. 5th 1036 (Cal.
Ct. App. 2019); 2017 U.S. Dist. LEXIS 69645 (N.D. Ind. May 8, 2017).

11

contract claims in Title IX investigation); *Doe v. Princeton Univ.*, 2019 U.S. Dist. LEXIS 4449, at *24 ("Plaintiff has alleged no facts establishing that the RRR Policy in its present form violates current binding DOE regulations"). These new rules are not retroactive, and due process is not required of Princeton as a private institution. *Id.* at *22.  The University's Policy provides the procedural protections required for fundamental fairness under New Jersey law.

### 2.    Princeton Followed Its Policy.

Princeton complied with its Policy during every step of the process—from investigating and finding Doe responsible while Roe not responsible, to imposing a disciplinary sanction, and hearing Doe's appeal.  In his Opposition, Doe concedes that "Princeton may have technically complied with the letter of the RRR policy[.]"  Opp. Br. 39-40.  That should end the inquiry.

None of Doe's arguments (which contradict his own concession) that the University violated its Policy have merit.  Besides his mistaken reliance on *USciences'* application of Pennsylvania law, Opp. Br. 36, Doe also argues the University failed to apply the preponderance of evidence standard, but this bald assertion—contradicted by the Panel Memorandum—need not be credited.  *See Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (courts "not compelled to accept unsupported conclusions" on a motion to dismiss); *see also ABC Capital Invs., LLC v. CAN Fin. Corp.*, 2017 U.S. Dist. LEXIS 95433, at *14 (E.D. Pa. June

12

21, 2017) (dismissing conclusory argument "unsupported by … documents properly before the Court that are integral and relied on in the Amended Complaint").  Doe argues that his initial adviser—his Director of Student life, Mr. Meggs—was conflicted.[9]  Meggs is not conflicted by virtue of being a University employee, and Doe cannot allege that Meggs was responsible for his investigation, adjudication, or appeal.  And Doe has been advised since ███████ — well before the conclusion of the investigation — by the same law firm representing him here.  Crotty MTD Cert. Ex. D p. 3; Compl. ¶ 63.  Doe argues the University breached its Policy by denying his request for an extension, but the University *granted* Doe's request for an extension—just not one as lengthy as Doe would have liked.  Compl. ¶ 62.  Finally, Doe argues the University violated its Policy when the separate panel tasked with considering a disciplinary sanction expelled him.  Doe alleged, "expulsion was the penalty in cases involving more egregious violations, unlike here, such as rape and/or repeated offenders." *Id.* ¶ 127.  Doe was found responsible for multiple acts of intimate relationship violence in

---

[9]     Doe alleges, "Princeton assigned as his adviser Mr. Meggs" but his counsel conceded at argument on Doe's injunction motion that "plaintiff asked [Meggs] to be" his adviser.  Compl. ¶ 112; Tr. 18:5-8.  Given this, Doe's counsel cannot continue to allege Princeton assigned his adviser, and should be required to amend the complaint accordingly.  Fed. R. Civ. P. 11(b)(3) (attorneys certify to the best of their knowledge that factual contentions in pleadings filed by them have evidentiary support).

violation of the Policy, including an instance of severe choking, during which Roe

thought "it was a possibility that [she] would have died."  Crotty MTD Cert. Ex. D

p. 6.  None of Doe's assertions show Princeton failed to follow its Policy.

### 3. The Panel's Decision Was Supported by Extensive Evidence.

New Jersey law provides that a student contesting a private university

disciplinary proceeding will not prevail if the decision was based on sufficient

evidence.  *Hernandez*, 730 A.2d at 375.  As Doe did not argue that the University's

decision was not based on sufficient evidence, he has waived the argument.  *See*

*Horatio Wash. Depot Techs. LLC v. Tomlmar, Inc.*, 2018 U.S. Dist. LEXIS

187074, at *22 n.4 (D. Del. Nov. 1, 2018).  The investigatory panel's finding of

responsibility was based on copious evidence, including two interviews of both

Doe and Roe, 16 other interviews, photographs, video footage, expert forensic

analysis, and messages.  Crotty MTD Cert. Ex. D p. 3, 5 n.4.  The overwhelming

evidence contrasts with *Collick v. Williams Paterson University,* cited by Doe,

where the university never "spoke to potential witnesses."  2016 U.S. Dist. LEXIS

160359, at *70 (D.N.J. Nov. 17, 2016).

### C. Doe Cannot State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

In his Opposition, Doe, acknowledging that this claim requires him to allege

the University acted in bad faith, argues that the University acted "in bad faith and

with ill motives" by subjecting him to "to a biased process[.]"  Opp. Br. 40.  This

argument is not supported by any citation to the Complaint where Doe alleges that the University acted in bad faith.  Regardless, Doe's argument fails because Doe cannot demonstrate any actual bad faith or gender bias.[10]  *Cf.  Doe v. Rider Univ.*, 2018 U.S. Dist. LEXIS 7592, at *40-*41 (D.N.J. Jan. 17, 2018) (allowing claim where university official told plaintiff he was "'going against' him," which was "sufficient to demonstrate Defendant's ill motives").

### D.   Doe Cannot Maintain a Common Law Due Process Claim.

In his Opposition, Doe makes no effort to defend his claim for "Common Law Due Process: Fundamental Fairness in School Disciplinary Proceedings," implicitly conceding that it is not recognized under New Jersey law.  In *Moe .v Seton Hall University*, the District of New Jersey found "no support in . . . . New Jersey law for the proposition that the New Jersey Supreme Court would validate a free-standing fundamental fairness claim[.]"  2010 U.S. Dist. LEXIS 38621, at *13 (dismissing stand-alone common law due process claim) (citation omitted).  Doe's claim here should never have been brought, and should likewise be dismissed.

---

[10]   As argued in the University's Opening Brief, this claim also fails because Doe does not allege an enforceable contract. *See Weiss v. Rutgers Univ.*, 2014 U.S. Dist. LEXIS 80397, at *19 (D.N.J. June 10, 2014) ("In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing.").

15

## III.    CONCLUSION

For the reasons stated above, as well as those in its opening brief, the Court

should dismiss Plaintiff's Complaint in its entirety and with prejudice.

Respectfully submitted,

Dated:  June 29, 2020

*/s/ Stephen J. Kastenberg*
Stephen J. Kastenberg, Esq. (026001993)
Christopher J. Kelly, Esq. (024972008)

BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002-1163
Telephone:  856.761.3400
Facsimile: 856.761.1020

1735 Market Street
Philadelphia, PA 19103

*Attorneys for Princeton University*

DMEAST #41527149 v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 29, 2020, true and correct copies of the

forgoing were filed and served upon all parties to this action via email and the

Court's CM/ECF system.

*/s/ Stephen J. Kastenberg*

Stephen J. Kastenberg