**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN DOE, | CIVIL ACTION NUMBER: |
|     **Plaintiffs,** | 3:20-cv-04352 |
|     **v.** | ORAL ARGUMENT |
| PRINCETON UNIVERSITY, | (REDACTED) |
|     **Defendants.** | |

COURT HELD VIA VIDEOCONFERENCE
April 21, 2020
Commencing at 12:30 p.m.

**B E F O R E:**          THE HONORABLE BRIAN R. MARTINOTTI,
                              UNITED STATES DISTRICT JUDGE

**A P P E A R A N C E S:**

    KASOWITZ BENSON TORRES
    BY:  DANIEL J. FETTERMAN, ESQUIRE
        CHRISTIAN T. BECKER, ESQUIRE
    163 Broadway
    New York, NY  10019
    For the Plaintiff

    BALLARD SPAHR, LLP
    BY:  STEPHEN J. KASTENBERG, ESQUIRE
    1735 Market Street, 51st Floor
    Philadelphia, PA 19103
    For the Defendant

    BALLARD SPAHR, LLP
    BY:  CHRISTOPHER J. KELLY, ESQUIRE
    210 Lake Drive East
    Cherry Hill, NJ  08002
    For the Defendant

Megan McKay-Soule, Official Court Reporter
megansoule430@gmail.com
(215) 779-6437

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

```
 1          (PROCEEDINGS held via video conference before The

 2   Honorable BRIAN R. MARTINOTTI, United States District Judge,

 3   on April 21, 2020, at 12:30 p.m.)

 4          THE COURT:  Counsel, are all your colleagues on and

 5   is the plaintiff on?

 6          MR. BECKER:  Your Honor, it's Christian Becker for

 7   the plaintiff.  Kasowitz Benson Torres.  I expect for the

 8   plaintiff, John Doe, I expect him to be dialing in.  I don't

 9   think he's on the line yet, but he will be.

10          THE COURT:  Okay.

11          MR. BECKER:  Mr. Fetterman is going to be doing the

12   argument on behalf of plaintiff.

13          THE COURT:  All right.  You still got a minute so.

14   We'll start at 12:30.

15          MR. BECKER:  There he is.

16          THE COURT:  Good afternoon.

17          MR. DOE:  John Doe on.

18          THE COURT:  Okay.  Before we get started, this matter

19   is being conducted by telephone in response to the current

20   state of affairs; particularly, the COVID-19 pandemic and

21   various governmental responses and court standing orders

22   entered in response thereto.

23          Just a few ground rules.  No speaker phones, please,

24   and all microphones should be muted, unless you are talking.

25   So with that, can I have the appearances of counsel that are
```

1    going to be arguing, please.

2         MR. FETTERMAN:  Yes, Your Honor.  Daniel Fetterman

3    and possibly Christian Becker on behalf of John Doe.

4         THE COURT:  Okay.

5         MR. KASTENBERG:  Stephen Kastenberg from Ballard

6    Spahr.  I will be arguing for Princeton University.  Chris

7    Elliot is with me and may also speak.

8         THE COURT:  Okay.  So just let us know who's talking

9    when you do address the Court.

10        That being said, I've reviewed the papers.  I

11   understand the issue.  I'll give each side 15 minutes to

12   highlight whatever you think you need to bring before the

13   Court.  This is the plaintiff's application, so I will hear

14   you first.

15        MR. FETTERMAN:  Thank you, Your Honor.  It's Dan

16   Fetterman on behalf of John Doe.  We appreciate the

17   opportunity to be heard today on behalf of John Doe, who is

18   quite an extraordinary young man.  ███████████████████

19   ████████████████████████ with an unblemished

20   disciplinary record to date, you know, current circumstances

21   excluded, and an outstanding academic record, whose life has

22   been turned upside down and who is about to face severe

23   lifetime irreparable harm as a result of Princeton's clearly

24   gender-biased treatment of plaintiff, and Jane Roe and its

25   callous arguments, specious arguments concerning the

1   irreparable harm that he will suffer.  And while I will

2   address what we believe is plaintiff's overwhelming likelihood

3   of success on the merits, with the Court's permission, I would

4   like to begin where this Court began and ended last hearing.

5   And that is that there is a reasonable, practical TRO solution

6   to mitigate some of the irreparable harm that plaintiff will

7   suffer.  And plaintiff reached out to Princeton on Friday

8   evening, before they filed their papers.  Princeton refused to

9   even consider or engage in dialogue about that resolution --

10  that solution.

11          Contrary to Princeton's assertions in its papers,

12  plaintiff can complete his coarse work -- without interacting

13  with other students -- by reviewing classes after they occur

14  that are recorded or by showing up on Zoom as an anonymous

15  student.  And --

16          MR. KASTENBERG:  Objection.

17          THE COURT:  Let me ask Princeton, there is a note in

18  the brief that the classes are recorded.  Are they recorded

19  forever or are they deleted at some point after a certain

20  time, 24 hours, 48 hours?  Do we know, Princeton?

21          MR. KASTENBERG:  Your Honor, Stephen Kastenberg.  So

22  what I understand -- and my understanding was updated over the

23  weekend and Monday -- is that Mr. Doe was taking five courses

24  before his expulsion.  Three of those five were consistently

25  recorded.  One of those five was sometimes recorded, sometimes

```
 1   not recorded, and one was not recorded.  It was up to the

 2   individual professor how to proceed.

 3           THE COURT:  Okay.

 4           MR. KASTENBERG:  I do not know how far back, Your

 5   Honor, those recordings are maintained.  I'm sorry.

 6           THE COURT:  Is there a mechanism?  And maybe you

 7   don't know the answer to this now and maybe you can find out

 8   from someone as the hearing progresses.  Is there a mechanism

 9   that the classes can be recorded and maintained, pending a

10   final resolution of this litigation?

11           MR. KASTENBERG:  I would believe that is -- that

12   could be done, and I will confirm and report back to the Court

13   as soon as possible.

14           THE COURT:  Okay.  I'll hear back from plaintiff's

15   counsel.

16           MR. FETTERMAN:  Thank you, Your Honor.  It's Dan

17   Fetterman continuing.

18   ████████████████████████████████████████████████

19   ████████████████████████████████████████████████

20   █████████████████

21           Overwhelmingly, Your Honor, as we cited, courts have

22   held that denying and delaying education is irreparable harm.

23   In Haney v. West Chester University, which we cite in our

24   papers, the Court held that where a student is denied the

25   benefits of education at his chosen school and his academic
```

1    and professional reputation will be damaged, there's

2    irreparable harm.

3         The Southern District of New York recently -- I guess

4    not that recently -- but held that there's clear irreparable

5    harm when a student is required to repeat the courses that he

6    is currently taking after his suspension because it forever

7    denies him the benefit of the work he has already performed

8    this semester and would necessarily delay the ultimate goal of

9    his requirements for a degree.  And --

10        THE COURT:  If I were to enter an order saying that

11   Princeton shall maintain all the classes that have been

12   recorded that the plaintiff has not participated in, and

13   moving forward all of the classes that the plaintiff would

14   have taken, had he participated, but he can't view them until

15   after this litigation is decided on the merits, doesn't that

16   preserve the status quo, in effect?

17        MR. FETTERMAN:  Your Honor, thank you.  It's a great

18   question, and I don't think so.  Let me tell you two reasons

19   why.  A.  Like so many of us, I'm one of those people, we all

20   to a greater or lesser extent have bathtub brain, right?

21   These are very complicated classes and materials, and he's

22   been, you know, his head is in the game, so to speak, right?

23   He's up to speed.  He can finish this work.  But if it's six

24   months from now or nine months from now, allowing him to see,

25   you know, six recorded classes and then take exams is not the

1   same thing.  It's not.  So that's the first concern.

2        The second concern is that what if one of the

3   professors leaves?  I was going to ask that the Court order

4   him to be provisionally reinstated to watch these classes,

5   wherever possible, after the fact on a recorded basis or to

6   show up as an anonymous student, if that's necessary because

7   they're not going to record.  Although, I believe the Court

8   can easily order Princeton to record, as you just suggested,

9   all the classes so he can view them after class so that he

10  doesn't have to -- no one has to know that he's reviewing

11  them, and then allow him to take his exams now, provisionally,

12  have them be graded and put into a sealed envelope with the

13  grades, a pass/fail.  Professor has to read them and say pass

14  or fail because the second concern is who knows if the

15  professor may decide to move on from Princeton and not show up

16  or take a sabbatical.  And then, you know, how does that get

17  dealt with?

18        Right now he's capable of just finishing the work and

19  taking the exams ███████████████████████  And then they

20  can take that completed work and put it all into a sealed

21  envelope.  And then it's just up or down.  If we prevail, he

22  gets his degree.  He moves on with his life.  Nothing more has

23  to happen.  I'm assuming he passes.  And if he doesn't, then,

24  you know, no harm, no foul.  They can throw the sealed

25  envelopes away.

```
 1          THE COURT:  Okay.

 2          MR. FETTERMAN:  If the Court would like, I can

 3   continue with the argument.  I'm happy to address any

 4   additional questions.  Your Honor, would you like me to

 5   proceed?  Your Honor?

 6          MR. BECKER:  Dan, this is Christian Becker.  I heard

 7   what sounded like a call drop at sort of, you know, like an

 8   electronic beep.  That could have indicated somehow the Court

 9   lost connection.  I don't hear anything other than you talking

10   right now.

11          THE COURT:  It's Judge Martinotti.  I just got kicked

12   off about three minutes ago.  I apologize.  Where you were,

13   counsel, I think you were talking about sealed envelope, no

14   harm, no foul.

15          MR. FETTERMAN:  I hope you heard that.  That would be

16   our request.  We think that's the best way to proceed.  And

17   then I was just going to say, unless the Court had more

18   questions about, you know, our concern about the question that

19   Your Honor asked, I could proceed with argument.

20          THE COURT:  Go ahead.

21          MR. FETTERMAN:  So, first, Princeton argues that the

22   28-day delay undermines irreparable harm.  I think it's

23   shocking that during this time of national crisis, Princeton

24   would elect to make that argument.  Courts have been closed.

25   The lawyers on this team, we're dealing with fallout.  They
```

1   elected to expel him effectively during the Coronavirus.  We

2   are all dealing with Coronavirus and literally displaced from

3   our offices and homes.  And as Princeton knows, plaintiff made

4   every effort to resolve this amicably.  And we filed this

5   litigation within one week of Princeton denying plaintiff's

6   request for some version of the relief that we now seek.  So

7   we think that that argument is totally without merit.

8       More importantly, Your Honor, the balance of equities

9   weighs heavily in favor of plaintiff here.  Plaintiff has been

10  disciplined and expelled for conduct that he denies, that was

11  adjudicated through a highly biased -- gender-biased process

12  ██████████████████████████  And as we just discussed, he

13  can still complete all of the work that he put into the

14  semester, have it graded and put into a sealed envelope.  And

15  if he prevails, ███████████████████████████████████

16  ██████  Having to repeat a semester ████████████████████

17  ████████████████████████████████  is extremely burdensome.  ██████

18  ████████████████████████████████████████████████████████████████

19  ███████████████████  Against this real world harm, Princeton

20  has essentially argued that the optics of the TRO would be bad

21  for it.

22      THE COURT:  Well, talk to me about your likelihood of

23  success on the merits.  Talk to me about that.  Because there

24  was a complaint, a counterclaim.  There was a footnote about

25  the opportunity to cross-examine, but that had occurred after

1   counsel was appointed or was retained.  Talk to me about that.

2           MR. FETTERMAN:  That would be great.  Thank you, Your

3   Honor.

4       So in order to -- we believe we have an overwhelming

5   likelihood of success.  We have to show one of two things.

6   That there were evidentiary or procedural deficiencies that

7   cast doubt on the outcome that were motivated by gender bias

8   or that there was selective enforcement motivated by gender

9   bias.  That's under Title 9.  And then we can show we have a

10  likelihood of success on the merits for breach of contract.

11  And we believe that in each of those categories we have a

12  likelihood of success on the merits.  And I'd like to just

13  walk the Court through that quickly.

14      So the Rollins case that we cited, an erroneous outcome

15  can be found where universities report excused inconsistent

16  statements made by the complainant.  Here, Princeton literally

17  bent over backwards to find Jane very credible.

18          THE COURT:  Why do you say that?  How do you say

19  that?

20          MR. FETTERMAN:  Well, so, for example, Jane lied, and

21  the record is clear, about the fact she told the investigator

22  that she broke up with plaintiff because of his alleged abuse,

23  when in truth and in fact -- and there are tapes that were in

24  the record and we transcribed excerpts from them -- he broke

25  up with her because she had cheated on him.  And after he

1    broke up with her -- after he broke up with her, she was upset

2    and she was harassing him and she was making false claims

3    about him, and he reported them.

4              THE COURT:  ███████████████████████████████

5    ██████

6              MR. FETTERMAN:  ████████████████████████████████

7    ████████

8              THE COURT:  Okay.  Aren't you getting into

9    credibility issues and even perhaps a motion to dismiss stage

10   of the pleadings?  Aren't you getting into the merits of the

11   case and issues that need to be decided after some discovery

12   is exchanged?

13             MR. FETTERMAN:  Well, Your Honor, but there is -- but

14   they had a record that they ignored.  That's exactly the --

15   that's exactly the procedural deficiency.  This is evidence in

16   the record that they ignored.  That they chose to ignore.

17   They find her, quote, very credible, despite the fact that she

18   lied about one of the most material facts in the case, that

19   she had a clear motive to lie.  And they didn't provide him

20   with any meaningful cross-examination.  I mean, I can walk

21   through -- and I will with, you know, with respect to applying

22   the preponderance standard.  But yet you have -- so quickly

23   turning to the selective enforcement because I think it makes

24   this point as well.  You have a perfect comparator.  Jane was

25   in an intense relationship with plaintiff.  There were

1   allegations in both directions of violations of university

2   policies.  He reported her first.  We know how they treated

3   him.  They said, yeah, maybe you should go get some counseling

4   to deal with the breakup.  At every turn, Princeton treated

5   her more favorably.  And when they were applying the

6   preponderance standard -- so the evidence against Jane was

7   really strong, Your Honor.  There's a photo of plaintiff with

8   a black eye.  The mother testified that she saw him with a

9   black eye during the relevant time period.  We have testimony

10  of a student who saw the defendant with scratches after one of

11  the incidents in question alleged against her, and he asked

12  plaintiff what happened and plaintiff said, Jane got really

13  crazy.  And then there was contemporaneous texts from

14  plaintiff to her roommate in which he said that the

15  complainant was scratching and hitting him.

16      So they -- they find none of that sufficient for

17  probable cause.  Your Honor, I was a federal prosecutor.  I

18  would have gotten an indictment returned on that evidence

19  every day of the week by application of the preponderance

20  standard.

21      Conversely, you have a witness who lied, and that's the

22  complainant.  A witness who lied about the most fundamental

23  facts possible.  That is, who broke up with whom, you know,

24  she alleged because of abuse.  A witness who had a motive to

25  lie.  She was revengeful and vindictive, and that's

1  demonstrated in texts, in emails, and in his report to the

2  university.  A witness with drug and alcohol abuse problems,

3  including browning and blacking out during some of the events

4  in question.  A witness who lied about where and how the

5  photos were taken.  A witness who concealed or omitted to tell

6  the investigators that she was engaging in consensual choking

7  sex, the very kind of abuse that she was alleging until after

8  our client raised it in his interview.  And then they cite to

9  that -- her concealing that material fact as evidence that

10  she's credible.  A witness who posted social media saying she

11  -- after he's expelled, ███████████████████████████

12  ████████████████████████████████████████████████████

13  And a witness who sent texts saying that there were bad people

14  in ██████████████ and plaintiff was not one of them.

15       They find her very credible, and in every -- in every

16  single specification where they find him guilty or they find

17  her not guilty, they cite the very credible witness Jane and

18  the very not credible witness Doe.

19       THE COURT:  In what ways do I look at those

20  determinations at this point?

21       MR. FETTERMAN:  You look at it through the factual

22  record that they didn't consider these things.  You know what

23  else is really significant, Your Honor?  I think it's really,

24  really significant because Your Honor knows this because you

25  sit as a district court judge.  They put in the record that

1   they were making no credibility determinations based on the

2   demeanor of the witnesses, Jane and plaintiff.  And they also

3   said they found every other witness to be generally credible.

4        So I believe, Your Honor, that the lens that you look

5   at with respect to procedural deficiencies -- and I'll

6   continue with the selective enforcement -- but the lens that

7   you look at is the evidence in the record and how they looked

8   at it because it's consistent with everything else they've

9   done.  It was biased.

10        THE COURT:  How about the no-contact orders regarding

11   the selective enforcement?

12        MR. FETTERMAN:  Absolutely, Your Honor.  That's a

13   great example.  Jane commits an intentional in-person

14   violation of the no-contact order.  Plaintiff reports it.

15   Says it made him uncomfortable.  They say no problem.

16   Plaintiff accidentally butt dials Jane once and doesn't even

17   speak with her and accidently likes a social media.  He's, you

18   know, sort of scrolling through.  I would submit, Your Honor,

19   thousands if not hundreds of thousands of Americans do that

20   accidentally and incidentally every day.  I've done it more

21   times than I'd like to admit.  I don't mean to like something

22   and I accidentally did it.  They investigate him and they give

23   him a dean's warning.

24        So you have that.  You have the fact that he reports

25   harassment, and they say, yeah, no problem.  We're not going

1    to do anything.  She reports her allegations and she doesn't

2    want to take any action.  And the university actually solicits

3    her to help them and to bring charges.

4        You have the way they handled the no contact.  And the

5    most significant, in my view, is the incredible one-sided

6    application biased -- gender-biased application of the

7    preponderance standard.  There was overwhelmingly evidence

8    that she committed acts of violence against him, with credible

9    witnesses.  They've been found credible, and they say, yeah,

10   but not enough there.  We're not even going to sanction her in

11   any way, shape, or form.  We fully exonerate her, and yet --

12   and I'll walk through all of her difficulties as a witness --

13   we find her to be very credible.  This case wouldn't even be

14   brought.  The case against ███ with a complaining witness

15   like this likely would never get brought in, you know, by a

16   district attorney or someone who's looking at who is the

17   complaining witness here.

18       So the plaintiff in final and selective treatment, Your

19   Honor, the plaintiff, a male, receives the harshest possible

20   sanction and Roe is exonerated.  And, you know, I would --

21   Your Honor cut me off at the end of my argument, but I just

22   wanted to make one point about the fact that they point to the

23   optics to the message that's going to be sent because we have

24   to show that plaintiff's selective application of -- is their

25   selective treatment and the other procedural deficiencies were

1    the result of gender bias.  And I would argue that on this

2    strong record it's basically res ipse loquitur.  But the fact

3    that what they point to is the message that's going to be sent

4    to their community, those are statements that I think can be

5    held against the university and show their motivation for how

6    they're acting here.

7         But beyond that, and as we put in our papers -- and I

8    don't need to go through it -- there's, you know, overwhelming

9    evidence that they were faulted for their handling of these

10   kinds of Title 9 cases and including May of 2019, Princeton

11   students protest Title 9 process demanding firing of the

12   administrator.  That's Reagan Crotty.  In a review of Chief

13   Officer Michelle Mitner, they were -- Crotty was responsible

14   for coaching and urging Jane to formalize her charges.  Ms.

15   Mitner was responsible for barring plaintiff from campus.

16   There's also that, Your Honor.

17        And then if I might quickly address the breach of

18   contract.  I mean --

19             THE COURT:  Please.

20             MR. FETTERMAN:  The breach of contract claim is

21   likely stronger than our very strong Title 9 claim.  You know,

22   they halfheartedly suggest that the policies and like can't be

23   recognized as a contract.  There's tremendous case law on

24   this.  We've cited to it in our papers, and I won't go through

25   it, but courts have rejected or reached an obligation of

1   contractual principles to university and student conflicts.

2   There have been a number of cases where -- and, in fact, I

3   think Your Honor has sustained a case where there was a breach

4   of contract.

5          And let me just say one last point, actually, if I

6   might, to jump back on the gender motivation.  Your Honor can

7   take judicial notice -- it's in our papers -- of the slew of

8   litigations that are coming out against Princeton.  Your Honor

9   has three of those before you, and you sustained the breach of

10  contract claim in one of those cases.

11          THE COURT:  A different stage of litigation, counsel.

12          MR. FETTERMAN:  Different stage.  I understand.  But

13  it shows a pattern here that I think Your Honor can -- can

14  take notice of.

15          But going back to the breach of contract, it's clear

16  that they breached the contract in their application of the

17  preponderance of the evidence standard, in our view, Judge.

18  It's clear that they provided plaintiff with a highly

19  conflicted advisor, and it was on the advisor to raise his

20  hand and say he had a conflict.  He served, you know, as a

21  student conduct disciplinary official.  He's actually part of

22  the gender-biased response by the university because he's the

23  person who doesn't encourage plaintiff to report Jane's

24  harassment, and he's the person who conducts the investigation

25  on the no contact, and he's the person who ultimately delivers

1   the dean's warning to the plaintiff.  He should not have been

2   plaintiff's advisor under any forum.  As a lawyer, he would

3   have been, you know, he would have been sanctioned by the Bar

4   and he --

5           THE COURT:  How did he come to be plaintiff's

6   advisor?

7           MR. FETTERMAN:  He came to be plaintiff's advisor

8   because plaintiff knew him and plaintiff asked him to be.  But

9   I don't think -- that doesn't take the burden off of him just

10  like when a potential client comes to a lawyer and says, can

11  you be my lawyer?  And the lawyer knows he has a conflict, he

12  has a duty to tell the potential client, can't represent you

13  because I have an actual or potential conflict.

14          The denial of the request for an extension is

15  laughable.  If Your Honor would just look at the two emails.

16  I sent one and my partner sent one, and we laid out the good

17  cause.  And if you look at what the standards are for cause,

18  including the complexity of the matter and the length of, you

19  know, of the record and the like, there was definitely good

20  cause.  We cited to their policy and we asked them for the

21  extension and they say we gave them no reason.

22          And then finally they provided him with the harshest of

23  penalties without giving any sort of analysis about the, you

24  know, the factors that went into that.

25          So, Your Honor, that, in essence, is the sum and

```
 1   substance.  We believe on -- that there were procedural
 2   irregularities.  We clearly have a likelihood of success on
 3   the merits on the fact that he was -- there was selective
 4   enforcement here.  For numerous different reasons, we have a
 5   likelihood of success on the merits.  And we have a likelihood
 6   of success on the merits for the breach of contract and the
 7   overwhelming harm to plaintiff, with almost no prejudice to
 8   Princeton, we submit, should allow the Court to just enter
 9   this really very benign request that we're making to the
10   university.
11            THE COURT:  I understand your argument.
12            MR. FETTERMAN:  Thank you, Your Honor.
13            THE COURT:  Thank you.  Counsel.
14            MR. KASTENBERG:  Thank you, Your Honor.  Stephen
15   Kastenberg.
16       I will try to adhere to the 15 minutes, but I hope the
17   Court will allow me a little over, given that we've been going
18   about a half hour so far.
19            THE COURT:  Sure.
20            MR. KASTENBERG:  Your Honor, I want to start by
21   talking about the merits and talking about the irreparable
22   harm and balance of the harms issue.  But, you know, as Your
23   Honor would be well aware, you don't reach these issues of
24   irreparable harm without ample harm.  Lastly, the likelihood
25   of success on the merits here.
```

1       I also want to start by just underscoring that what

2   we're talking about here is Doe was found responsible for very

3   serious sexual misconduct.  Multiple acts of violence against

4   Roe, who was his dating partner, including choking her on

5   three occasions.  And particularly, on the last occasion,

6   choking her so hard that the -- before she was not able to

7   breathe and thought it was a possibility she would die.  And

8   in that same incident, he then yanked her off of her bed,

9   punches her in the face repeatedly.  She gets a nose bleed.

10  And this is reported not only by -- by Jane Roe's testimony

11  and interviews with the investigatory panel, but by other

12  corroborative evidence.  I mean, there are pictures.  There is

13  video.  The pictures show a bloody nose, a cut and bloody lip,

14  bruised and scratched neck.  It shows Doe.  He has three

15  pictures or videos, including him speaking, him speaking in

16  his foreign language in which he is fluent.  And, you know, he

17  admits at first in the interview that it is him.  Later he

18  turns around and denies that it's him in a couple of the

19  videos.  But initially he's in all of them.  You know, he --

20  he denies that these are -- these time-stamped pictures and

21  videos must be manufactured.  Princeton -- the panel has an

22  expert look at that and concludes, based on the expert

23  analysis, that it is not true.  And, you know, admits that

24  there was no one else who was present at this time.  There are

25  corroborative emails and texts between Jane Roe and her

```
 1    friends, but also with Doe in which Jane was arguing by text

 2    and Doe -- Jane Roe says something -- says, I never made your

 3    nose bleed, to which Doe responds, I F'd up.  I know it's not

 4    okay.

 5         So besides her testimony, which is found to be very

 6    credible, besides the corroborative pictures and videos, there

 7    are emails and texts.  There's emails and texts with Doe.

 8    There's admissions by Doe.  There are other incredible

 9    statements by Doe, you know, including a statement

10    contradicted by his own friends who were witnesses.  He

11    denies, for example, that the relationship was contemptuous at

12    all, which was -- as it was described not only by Jane Roe but

13    by multiple of the witnesses, including friends of Doe.

14         THE COURT:  Where is this argument taking us?  To the

15    fact that based on this record, based on the standards that

16    this Court need to employ, there was not a reasonable

17    probability of success on the merits?  Or at least at this

18    point, I can't draw that conclusion.

19         MR. KASTENBERG:  You cannot draw that conclusion that

20    there is a reasonable possibility of success on the merits.

21    Your Honor, we don't get into that in the -- in the brief

22    because, in fact, you don't really have to reach that.  I

23    mean, you don't reach the analysis of the merits.  But, you

24    know, there's so much said about how it was an unfounded

25    conclusion.  You don't reach that analysis because there's
```

1    also no evidence of gender bias as the motive.  I mean, it is

2    clearer, right or left, under numerous cases that general, you

3    know, pressures that are -- a university has alleged with

4    respect to Title 9 process.  They're inadequate.  And there's

5    no specific allegations of bias here.  I mean, the only two

6    persons involved or mentioned anywhere in the briefing are

7    Crotty and Mitner, and they're not alleging anything that

8    presents bias.  What they alleged was that they were the

9    subject of protests a year ago, unrelated to this incident and

10   investigation, which they were not being sufficiently

11   understanding or receptive -- not to men -- but to victims.

12   Victims, of course, is not the protective category that we're

13   talking about here.

14        So we don't even get to that, Your Honor.  And, you

15   know, if you look at the outcomes analysis, if you look at the

16   selective enforcement analysis, the episodes that the

17   plaintiff talks about are nothing more than argument.  The

18   issue Your Honor asked about with the no-contact rule, for

19   example.  So on the very day that the rule was put into place,

20   Jane Roe did contact John Doe.  John Doe asked that she not be

21   adjudicated.  She was not adjudicated further.  Doe was told,

22   however, that future violations would lead to an adjudication

23   and potential penalty.  Nonetheless, when John Doe committed

24   an infraction of the no-contact rule, he also was not -- he

25   was not punished.  He was not warned.  There was no -- there

1    was no consequences.  It was only when there was a second

2    incident, which John Doe did self-report, that there was, you

3    know, a sanction only in the form of a dean's warning.  There

4    is simply nothing to that.

5        The issue of fair treatment or alleged gender-biased

6    treatment of any processes here, there's no evidence that the

7    plaintiff knew that -- Dean Crotty or anyone at Princeton

8    sought to induce the plaintiff -- excuse me, sought to induce

9    Jane Roe to go file a claim.  There's no evidence.  There's no

10   facts alleged.  There's no evidence presented on that.

11       Frankly, even if it were revealed that he had come to

12   the administration and says, I've been physically attacked and

13   punched, it would be a perfectly appropriate response to in

14   fact charge the claimant needs to come forward.  But there's

15   no evidence that that, in fact, happened here other than what

16   counsel's argued.

17       THE COURT:  Counsel, I understand this argument.

18   Talk to me about Haney, the finding of irreparable harm.  I

19   know we're going past where we are in this part of the

20   argument, but I think I've heard enough on this.  I understand

21   that Haney, ultimately the court did not grant the injunction.

22   But that being said, the finding of irreparable harm because

23   of a strikingly similar type situation.

24       MR. KASTENBERG:  Well, Your Honor, I absolutely

25   acknowledge, Your Honor, that there is case law on both sides

1   of the irreparable harm.  There are strikingly similar factual

2   circumstances in cases that we cite, in the Yale case, where

3   the court finds that there is no irreparable harm.  There are

4   other cases where the Court finds that an expulsion and

5   interruption of education can be irreparable harm.

6        I think that the -- the better analysis here, Your

7   Honor, is that it is not irreparable harm to start with for a

8   couple reasons.  One is that Doe acknowledges ███████████

9   ██████████████████████████  In response to our arguments on this

10  point, in the reply brief, Doe acknowledges that even if he's

11  granted the full measure of relief that he's seeking, it would

12  only reduce the irreparable harm.  So they're asking the Court

13  to enter an injunction that will not even have the effect of

14  avoiding so-called irreparable harm.  And what we are talking

15  about, and the emphasis has been on, ██████████████████████

16  ████████████████████████  Today counsel mentioned that

17  there might be classes involved in attending Princeton.  But

18  besides the fact that this student is ████████████████████

19  ████████████████████████  And I'll go to the point that

20  there is monetary relief if the plaintiff ultimately prevails

21  that could be involved and it is not irreparable harm.

22        And the fact is, Your Honor, that the idea that an

23  interruption in education will permanently harm someone,

24  people do take off from school for all kinds of reasons.  It

25  is not something that in our society is an immediate red flag

1    or scarlet letter, and particularly so during the current

2    COVID-19 emergency situation where people are subject to all

3    kinds of exigent circumstances, the idea of a small delay in

4    completing the education, when, in fact, ████████████████

5    ████████    Even if the Court granted the injunction, ████████

6    ██████████████████████████████████████████████████████████

7    ████████████████████████████████████

8         And then, Your Honor, the issue even is if there is

9    some irreparable harm, small as it may be -- and I say small

10   because, again, even if you viewed it as irreparable harm,

11   ████████████████████████████    With the balance of equities,

12   hence let's skip the Princeton thing.  This is a person who

13   underwent a thorough investigation, was found responsible for

14   very, very serious physical violence.  And I understand

15   there's not a physical camping at the moment.  But Your Honor,

16   the idea that the defendant can go free during the

17   postconviction, you know, phase because his counsel viewed it

18   as a prosecutor of the case, that doesn't happen.  We're not

19   in a criminal defense here.  I understand Princeton is a

20   private university.  We defend these cases about the deference

21   to -- in the academic setting all the time for a reason.

22   Princeton is acting not just for an individual, but Princeton

23   is acting on behalf of a community that it is charged with

24   looking out for and the well-being of.  And that includes a

25   person who at this point has been adjudged to be a victim of

1  violence in a relationship.  And it includes the rest of the

2  community.  And to readmit -- to readmit and reinstate because

3  that appears to be potential -- for something to ask for in a

4  hearing.  He's says, why not reinstate it?  It's about

5  community.  It is a real harm, and to dismiss the idea of

6  reinstating a person in this circumstance does not only, in

7  fact, send a very strong signal to the victim, it sends a

8  strong signal to the community that even after a thorough

9  investigation and determination and expulsion, a person can

10 put off an extension.  They can participate in the community,

11 even in some limited fashion, as Your Honor contemplates, is a

12 very, very bad message, in the university's view, Your Honor,

13 as far as to -- you understand my point.

14     THE COURT:  I understand the point, and I'm going to

15 give plaintiff five minutes.  And the reason is I have another

16 conference on a criminal matter that I'm starting, and my

17 concern is that they're going to dial in when we're in the

18 middle of our conference because we only have one number.

19     MR. KASTENBERG:  Your Honor, can I bring up one very

20 brief point?  Your Honor, if counsel for the plaintiff

21 mentions the plaintiff's name, there may be other things that

22 have been said in this call that are confidential.  I would

23 ask Your Honor's permission that we keep this transcript

24 initially confidential so the parties can review it and

25 propose any redactions.

1          THE COURT:  So ordered.

2          MR. FETTERMAN:  I would like just very quickly, Your

3   Honor -- I realize we have very little time.  But on these

4   issues that he went through about the evidence, I mean, this

5   proves exactly our point.  That the whole point about what

6   occurred in that room relies heavily on Jane Roe who is a

7   highly suspect witness for many, many reasons.  But the

8   choking occurred during a period when they were engaged in

9   consensual sexual acts of choking sex, admitted by both sides.

10  University officials showed up at the door, trained university

11  officials, and they saw nothing wrong with Jane Roe and her

12  face.  She says she ran to the bathroom and took pictures, but

13  the pictures show they weren't taken in the bathroom.  It goes

14  on and on.  He said there were texts that admit that I never

15  made your nose bleed.  That is not what those texts say.

16          I'm telling you, Your Honor, that when you look at the

17  preponderance standard on the record before the Court, it is

18  -- it would not pass scrutiny.  I just must say that on the

19  messaging, he said, you know, the message that a defendant

20  should go free from a conviction, this is exactly the point

21  and why this case is so important.  We are talking about Title

22  9 due process rights.  The plaintiff here is not a convicted

23  defendant.  They applied and misapplied a preponderance

24  standard.  We all know that when a target of an investigation

25  is indicted by a Grand Jury by the preponderance standard,

1    there's a presumption of innocence.  And for all those

2    reasons, we had a confidential proceeding with a confidential

3    outcome.  People should not know what the nature of the

4    allegations were and they shouldn't know what the university

5    found.  And the university despite, I would add, Your Honor,

6    two or three weeks of saying, we're not even going to consent

7    to using anonymous names has now all of a sudden wanted to

8    keep everything or as much as possible under seal.  What

9    they're worried about is the quote-unquote message and signal.

10   This boy will have his life ruined.  They will have charged

11   him with, you know, having been found guilty, as counsel put

12   it, of what they're describing as multiple acts of violence,

13   choking so hard she couldn't breathe.  Your Honor is going to

14   see these pictures.  This is a very delicate subject.  But the

15   pictures don't look like what counsel just described.  And

16   there's lots of other evidence here.  It wasn't applied.  The

17   standards were not applied fairly.

18        I don't need to, you know, reargue everything.  I just

19   wanted to go back finally to the real material harm.  He

20   believes the work that he's done today, that will all be lost.

21   It will be a gap in his education.  He may not ever be able to

22   make that up.  And there are real meaningful costs involved if

23   he has to redo his semester.

24        So we're asking, in effect, for him to anonymously be

25   provisionally -- it's really the status quo ante because we do

1  have, we believe, a strong likelihood of success on the merits

2  both with breach of contract claims, and I invite Your Honor

3  to look carefully at that as well as on the Title 9 claims.

4  And we have made the link, as I described in my prior

5  argument.

6        THE COURT:  Counsel, I understand your arguments.  I

7  also understand the emergent nature of this application.  This

8  decision will be out no later than noon tomorrow.  Anything

9  further?

10        MR. FETTERMAN:  Not from plaintiff, Your Honor.  We

11 appreciate it.

12        THE COURT:  Be safe.  Be well.

13        MR. FETTERMAN:  Thank you, Your Honor.

14        MR. KASTENBERG:  Thank you, Your Honor.

15        (Proceedings concluded at 1:15 p.m.)

16

17

18

19

20

21

22

23

24

25

1        <u>FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE</u>.

2            - - - - - - - - - - - - - - - - - - - - -

3

4      I certify that the foregoing is a correct transcript from

5   the record of proceedings in the above-entitled matter.

6

7

8      I

9

10

11  <u>**/S/ Megan McKay-Soule, RMR, CRR**</u>      <u>**May 14, 2020**</u>

12            Court Reporter                          Date

13

14

15

16

17

18

19

20

21

22

23

24

25

**/**

**/S** [1] - 30:11

**0**

**08002** [1] - 1:21

**1**

**10019** [1] - 1:15
**12:30** [1] - 1:9, 2:3, 2:14
**14** [1] - 30:11
**15** [2] - 3:11, 19:16
**163** [1] - 1:14
**1735** [1] - 1:17
**19103** [1] - 1:18
**1:15** [1] - 29:15

**2**

**2019** [1] - 16:10
**2020** [3] - 1:9, 2:3, 30:11
**21** [2] - 1:9, 2:3
**210** [1] - 1:20
**215** [1] - 1:24
**24** [1] - 4:20
**28-day** [1] - 8:22

**3**

**3:20-cv-04352** [1] - 1:4

**4**

**48** [1] - 4:20

**5**

**51st** [1] - 1:17

**7**

**779-6437** [1] - 1:24

**9**

**9** [7] - 10:9, 16:10, 16:11, 16:21, 22:4, 27:22, 29:3

**A**

**able** [4] - 9:15, 9:18, 20:6, 28:21
**above-entitled** [1] - 30:5
**absolutely** [2] - 14:12, 23:24
**abuse** [4] - 10:22,

12:24, 13:2, 13:7
**academic** [3] - 3:21, 5:25, 25:21
**accidentally** [3] - 14:16, 14:20, 14:22
**accidently** [1] - 14:17
**acknowledge** [1] - 23:25
**acknowledges** [2] - 24:8, 24:10
**acting** [3] - 16:6, 25:22, 25:23
**ACTION** [1] - 1:3
**action** [1] - 15:2
**acts** [4] - 15:8, 20:3, 27:9, 28:12
**actual** [1] - 18:13
**add** [1] - 28:5
**additional** [1] - 8:4
**address** [4] - 3:9, 4:2, 8:3, 16:17
**adhere** [1] - 19:16
**adjudged** [1] - 25:25
**adjudicated** [3] - 9:11, 22:21
**adjudication** [1] - 22:22
**administration** [1] - 23:12
**administrator** [1] - 16:12
**admissions** [1] - 21:8
**admit** [2] - 14:21, 27:14
**admits** [2] - 20:17, 20:23
**admitted** [1] - 27:9
**advisor** [6] - 5:20, 17:19, 18:2, 18:6, 18:7
**affairs** [1] - 2:20
**afternoon** [1] - 2:16
**ago** [2] - 8:12, 22:9
**ahead** [1] - 8:20
**aided** [1] - 1:25
**alcohol** [1] - 13:2
**allegations** [4] - 12:1, 15:1, 22:5, 28:4
**alleged** [7] - 10:22, 12:11, 12:24, 22:3, 22:8, 23:5, 23:10
**alleging** [2] - 13:7, 22:7
**allow** [3] - 7:11, 19:8, 19:17
**allowing** [1] - 6:24
**almost** [1] - 19:7
**Americans** [1] - 14:19
**amicably** [1] - 9:4
**ample** [1] - 19:24

**analysis** [7] - 18:23, 20:23, 21:23, 21:25, 22:15, 22:16, 24:6
**anonymous** [3] - 4:14, 7:6, 28:7
**anonymously** [1] - 28:24
**answer** [1] - 5:7
**ante** [1] - 28:25
**apologize** [1] - 8:12
**appearances** [1] - 2:25
**application** [7] - 3:13, 12:19, 15:6, 15:24, 17:16, 29:7
**applied** [3] - 27:23, 28:16, 28:17
**applying** [2] - 11:21, 12:5
**appointed** [1] - 10:1
**appreciate** [2] - 3:16, 29:11
**appropriate** [1] - 23:13
**April** [2] - 1:9, 2:3
**argue** [1] - 16:1
**argued** [2] - 9:20, 23:16
**argues** [1] - 8:21
**arguing** [3] - 3:1, 3:6, 21:1
**argument** [12] - 2:12, 8:3, 8:19, 8:24, 9:7, 15:21, 19:11, 21:14, 22:17, 23:17, 23:20, 29:5
**ARGUMENT** [1] - 1:5
**arguments** [4] - 3:25, 24:9, 29:6
**assertions** [1] - 4:11
**assuming** [1] - 7:23
**attacked** [1] - 23:12
**attending** [1] - 24:17
**attorney** [1] - 15:16
**avoiding** [1] - 24:14
**aware** [1] - 19:23

**B**

**backwards** [1] - 10:17
**bad** [3] - 9:20, 13:13, 26:12
**balance** [3] - 9:8, 19:22, 25:11
**BALLARD** [1] - 1:16, 1:19
**Ballard** [1] - 3:5
**Bar** [1] - 18:3
**barring** [1] - 16:15
**based** [4] - 14:1,

20:22, 21:15
**basis** [1] - 7:5
**bathroom** [2] - 27:12, 27:13
**bathtub** [1] - 6:20
**BECKER** [5] - 1:14, 2:6, 2:11, 2:15, 8:6
**Becker** [3] - 2:6, 3:3, 8:6
**bed** [1] - 20:8
**beep** [1] - 8:8
**began** [1] - 4:4
**begin** [1] - 4:4
**behalf** [5] - 2:12, 3:3, 3:16, 3:17, 25:23
**believes** [1] - 28:20
**benefit** [1] - 6:7
**benefits** [1] - 5:25
**benign** [1] - 19:9
**BENSON** [1] - 1:13
**Benson** [1] - 2:7
**bent** [1] - 10:17
**best** [1] - 8:16
**better** [1] - 24:6
**between** [1] - 20:25
**beyond** [1] - 16:7
**bias** [6] - 10:7, 10:9, 16:1, 22:1, 22:5, 22:8
**biased** [8] - 3:24, 9:11, 14:9, 15:6, 17:22, 23:5
**black** [2] - 12:8, 12:9
**blacking** [1] - 13:3
**bleed** [3] - 20:9, 21:3, 27:15
**bloody** [2] - 20:13
**boy** [3] - 13:11, 13:12, 28:10
**brain** [1] - 6:20
**breach** [8] - 10:10, 16:17, 16:20, 17:3, 17:9, 17:15, 19:6, 29:2
**breached** [1] - 17:16
**breakup** [1] - 12:4
**breathe** [2] - 20:7, 28:13
**BRIAN** [2] - 1:10, 2:2
**brief** [4] - 4:18, 21:21, 24:10, 26:20
**briefing** [1] - 22:6
**bring** [3] - 3:12, 15:3, 26:19
**Broadway** [1] - 1:14
**broke** [5] - 10:22, 10:24, 11:1, 12:23
**brought** [2] - 15:14, 15:15

**browning** [1] - 13:3
**bruised** [1] - 20:14
■ ■ ■
**burden** [1] - 18:9
**burdensome** [1] - 9:17
**butt** [1] - 14:16
**BY** [3] - 1:13, 1:17, 1:20

**C**

**callous** [1] - 3:25
**camping** [1] - 25:15
**campus** [1] - 16:15
**cannot** [1] - 21:19
**capable** [1] - 7:18
**carefully** [1] - 29:3
**case** [12] - 10:14, 11:11, 11:18, 15:13, 15:14, 16:23, 17:3, 23:25, 24:2, 25:6, 25:18, 27:21
**cases** [7] - 16:10, 17:2, 17:10, 22:2, 24:2, 24:4, 25:20
**cast** [1] - 10:7
**categories** [1] - 10:11
**category** [1] - 22:12
**certain** [1] - 4:19
**CERTIFICATE** [1] - 30:1
**certify** [1] - 30:4
**charge** [1] - 23:14
**charged** [2] - 25:23, 28:10
**charges** [2] - 15:3, 16:14
**cheated** [1] - 10:25
**Cherry** [1] - 1:21
**Chester** [1] - 5:23
**Chief** [1] - 16:12
**choking** [6] - 13:6, 20:4, 20:6, 27:8, 27:9, 28:13
**chose** [1] - 11:16
**chosen** [1] - 5:25
**Chris** [1] - 3:6
**CHRISTIAN** [1] - 1:14
**Christian** [3] - 2:6, 3:3, 8:6
**CHRISTOPHER** [1] - 1:20
**circumstance** [1] - 26:6
**circumstances** [3] - 3:20, 24:2, 25:3
**cite** [4] - 5:23, 13:8, 13:17, 24:2
**cited** [4] - 5:21, 10:14,

16:24, 18:20
**CIVIL** [1] - 1:3
**claim** [4] - 16:20,
16:21, 17:10, 23:9
**claimant** [1] - 23:14
**claims** [3] - 11:2, 29:2,
29:3
**class** [2] - 7:9, 24:9
**classes** [10] - 4:13,
4:18, 5:9, 6:11, 6:13,
6:21, 6:25, 7:4, 7:9,
24:17
**clear** [5] - 6:4, 10:21,
11:19, 17:15, 17:18
**clearer** - 22:2
**clearly** [2] - 3:23, 19:2
**client** [3] - 13:8, 18:10,
18:12
**closed** - 8:24
**club** [1] - 13:14
**coaching** [1] - 16:14
**coarse** - 4:12
**colleagues** [1] - 2:4
**college** [1] - 3:19
**coming** - 17:8
**Commencing** [1] - 1:9
**commits** - 14:13
**committed** [2] - 15:8,
22:23
**community** [6] - 16:4,
25:23, 26:2, 26:5,
26:8, 26:10
**comparator** [1] -
11:24
**complainant** [3] -
10:16, 12:15, 12:22
**complaining** [2] -
15:14, 15:17
**complaint** [1] - 9:24
**complete** [2] - 4:12,
9:13
**completed** [1] - 7:20
**completing** [1] - 25:4
**complexity** [1] - 18:18
**complicated** [1] - 6:21
**computer** [1] - 1:25
**computer-aided** [1] -
1:25
**concealed** [1] - 13:5
**concealing** [1] - 13:9
**concern** [5] - 7:1, 7:2,
7:14, 8:18, 26:17
**concerning** [1] - 3:25
**concluded** [1] - 29:15
**concludes** [1] - 20:22
**conclusion** [3] -
21:18, 21:19, 21:25
**conduct** [2] - 9:10,
17:21

conducted [2] - 2:19
**conducts** [1] - 17:24
**conference** [3] - 2:1,
26:16, 26:18
**confidential** [4] -
26:22, 26:24, 28:2
**confirm** [1] - 5:12
**conflict** [3] - 17:20,
18:11, 18:13
**conflicted** [1] - 17:19
**conflicts** [1] - 17:1
**connection** - 8:9
**consensual** [2] - 13:6,
27:9
**consent** [1] - 28:6
**consequences** [1] -
23:1
**consider** [2] - 4:9,
13:22
**consistent** [1] - 14:8
**consistently** [1] - 4:24
**contact** [7] - 14:10,
14:14, 15:4, 17:25,
22:18, 22:20, 22:24
**contemplates** [1] -
26:11
**contemporaneous** [1]
- 12:13
**contemptuous** [1] -
21:11
**continue** [2] - 8:3,
14:6
**continued** [1] - 5:18
**continuing** [1] - 5:17
**contract** [10] - 10:10,
16:18, 16:20, 16:23,
17:4, 17:10, 17:15,
17:16, 19:6, 29:2
**contractual** [1] - 17:1
**contradicted** [1] -
21:10
**contrary** [1] - 4:11
**conversely** [1] - 12:21
**convicted** [1] - 27:22
**conviction** [1] - 27:20
**Coronavirus** [2] - 9:1,
9:2
**correct** [1] - 30:4
**corroborative** [3] -
20:12, 20:25, 21:6
**costs** [1] - 28:22
**counsel** [14] - 2:4,
2:25, 5:15, 8:13,
10:1, 17:11, 19:13,
23:17, 24:16, 25:17,
26:20, 28:11, 28:15,
29:6
**counsel's** [1] - 23:16
**counseling** [1] - 12:3
**counterclaim** [1] -

9:24
**couple** [2] - 20:18,
24:8
**course** [1] - 22:12
**courses** [2] - 4:23, 6:5
**court** [4] - 2:21, 13:25,
23:21, 24:3
**Court** [20] - 1:23, 3:9,
3:13, 4:4, 5:12, 5:24,
7:3, 7:7, 8:2, 8:8,
8:17, 10:13, 19:8,
19:17, 21:16, 24:4,
24:12, 25:5, 27:17,
30:12
**COURT** [36] - 1:1, 1:8,
2:4, 2:10, 2:13, 2:16,
2:18, 3:4, 3:8, 4:17,
5:3, 5:6, 5:14, 6:10,
8:1, 8:11, 8:20, 9:22,
10:18, 11:4, 11:8,
13:19, 14:10, 16:19,
17:11, 18:5, 19:11,
19:13, 19:19, 21:14,
23:17, 26:14, 27:1,
29:6, 29:12, 30:1
**Court's** [1] - 4:3
**courts** [3] - 5:21, 8:24,
16:25
**COVID-19** [2] - 2:20,
25:2
**crazy** [1] - 12:13
**creation** [1] - 13:12
**credibility** [2] - 11:9,
14:1
**credible** [11] - 10:17,
11:17, 13:10, 13:15,
13:17, 13:18, 14:3,
15:8, 15:9, 15:13,
21:6
**criminal** [2] - 25:19,
26:16
**crisis** [1] - 8:23
**cross** [2] - 9:25, 11:20
**cross-examination** [1]
- 11:20
**cross-examine** [1] -
9:25
**Crotty** [4] - 16:12,
16:13, 22:7, 23:7
**CRR** [1] - 30:11
**current** [2] - 2:19,
3:20, 25:1
**cut** [2] - 15:21, 20:13

**D**

**damaged** [1] - 6:1
**Dan** [3] - 3:15, 5:16,
8:6
**DANIEL** [1] - 1:13

**Daniel** [1] - 3:2
**Date** [1] - 30:12
**date** [1] - 3:20
**dating** [1] - 20:4
**deal** [1] - 12:4
**dealing** [2] - 8:25, 9:2
**dealt** [1] - 7:17
**Dean** [1] - 23:7
**dean's** [3] - 14:23,
18:1, 23:3
**decide** [1] - 7:15
**decided** [2] - 6:15,
11:11
**decision** [1] - 29:8
**defend** [1] - 25:20
**Defendant** [2] - 1:18,
1:21
**defendant** [4] - 12:10,
25:16, 27:19, 27:23
**Defendants** [1] - 1:7
**defense** [1] - 25:19
**deference** [1] - 25:20
**deficiencies** [3] -
10:6, 14:5, 15:25
**deficiency** [1] - 11:15
**definitely** [1] - 18:19
**degree** [2] - 6:9, 7:22
**delay** [3] - 6:8, 8:22,
25:3
**delaying** [1] - 5:22
**deleted** [1] - 4:19
**delicate** [1] - 28:14
**delivers** [1] - 17:25
**demanding** [1] - 16:11
**demeanor** [1] - 14:2
**demonstrated** [1] -
13:1
**denial** [1] - 18:14
**denied** [1] - 5:24
**denies** [5] - 6:7, 9:10,
20:18, 20:20, 21:11
**denying** [2] - 5:22, 9:5
**described** [3] - 21:12,
28:15, 29:4
**describing** [1] - 28:12
**despite** [2] - 11:17,
28:5
**determination** [1] -
26:9
**determinations** [2] -
13:20, 14:1
**devised** [1] - 25:7
**dial** [1] - 26:17
**dialing** [1] - 2:8
**dialogue** [1] - 4:9
**dials** [1] - 14:16
**die** [1] - 20:7
**different** [3] - 17:11,
17:12, 19:4

**difficulties** [1] - 15:12
**diligently** [1] - 5:18
**directions** [1] - 12:1
**disciplinary** [3] - 3:20,
17:21
**disciplined** [1] - 9:10
**discovery** [1] - 11:11
**discussed** [1] - 9:12
**dismiss** [2] - 11:9,
26:5
**displaced** [1] - 9:2
**district** [2] - 13:25,
15:16
**DISTRICT** [3] - 1:1,
1:1, 1:11
**District** [2] - 2:2, 6:3
**DOE** [2] - 1:3, 2:17
**Doe** [23] - 2:8, 2:17,
3:3, 3:16, 3:17, 4:23,
13:18, 20:2, 20:14,
21:1, 21:2, 21:3,
21:7, 21:8, 21:9,
21:13, 22:20, 22:21,
22:23, 23:2, 24:8,
24:10
**done** [4] - 5:12, 14:9,
14:20, 28:20
**door** [1] - 27:10
**doubt** [1] - 10:7
**down** [2] - 3:22, 7:21
**draw** [2] - 21:18, 21:19
**Drive** [1] - 1:20
**drop** [1] - 8:7
**drug** [1] - 13:2
**due** [1] - 27:22
**during** [7] - 8:23, 9:1,
12:9, 13:3, 25:1,
25:16, 27:8
**duty** [1] - 18:12

**E**

**easily** [1] - 7:8
**East** [1] - 1:20
**eating** [1] - 13:14
**education** [6] - 5:22,
5:25, 24:5, 24:23,
25:4, 28:21
**effect** [3] - 6:16,
24:13, 28:24
**effectively** [1] - 9:1
**effort** [1] - 9:4
**elect** [1] - 8:24
**elected** [1] - 9:1
**electronic** [1] - 8:8
**Elliot** [1] - 3:7
**emails** [5] - 13:1,
18:15, 20:25, 21:7
**emergency** [1] - 25:2
**emergent** [1] - 29:7

**emphasis** [1] - 24:15
**employ** [1] - 21:16
**encourage** [1] - 17:23
**end** [2] - 15:21, 25:6
**ended** [1] - 4:4
**enforcement** [6] -
    10:8, 11:23, 14:6,
    14:11, 19:4, 22:16
**engage** [1] - 4:9
**engaged** [1] - 27:8
**engaging** [1] - 13:6
**enter** [3] - 6:10, 19:8,
    24:13
**entered** [1] - 2:22
**entitled** [1] - 30:5
**envelope** [4] - 7:12,
    7:21, 8:13, 9:14
**envelopes** [1] - 7:25
**episodes** [1] - 22:16
**equities** [2] - 9:8,
    25:11
**erroneous** [1] - 10:14
**ESQUIRE** [4] - 1:13,
    1:14, 1:17, 1:20
**essence** [1] - 18:25
**essentially** [2] - 9:20,
    24:19
**Europe** [2] - 11:5, 11:6
**evening** [1] - 4:8
**events** [1] - 13:3
**evidence** [16] - 11:15,
    12:6, 12:18, 13:9,
    14:7, 15:7, 16:9,
    17:17, 20:12, 22:1,
    23:6, 23:9, 23:10,
    23:15, 27:4, 28:16
**evidentiary** [1] - 10:6
**exactly** [4] - 11:14,
    11:15, 27:5, 27:20
**examination** [1] -
    11:20
**examine** [1] - 9:25
**example** [4] - 10:20,
    14:13, 21:11, 22:19
**exams** [3] - 6:25, 7:11,
    7:19
**excerpts** [1] - 10:24
**exchanged** [1] - 11:12
**excluded** [1] - 3:21
**excuse** [1] - 23:8
**excused** [1] - 10:15
**exigent** [1] - 25:3
**exonerate** [1] - 15:11
**exonerated** [1] - 15:20
**expect** [2] - 2:7, 2:8
**expel** [1] - 9:1
**expelled** [2] - 9:10,
    13:11
**expert** [2] - 20:22

**expulsion** [3] - 4:24,
    24:4, 26:9
**extension** [2] - 18:14,
    18:21, 26:10
**extent** [1] - 6:20
**extraordinary** [1] -
    3:18
**extremely** [1] - 9:17
**eye** [2] - 12:8, 12:9

**F**

**F'd** [1] - 21:3
**face** [3] - 3:22, 20:9,
    27:12
**fact** [18] - 7:5, 10:21,
    10:23, 11:17, 13:9,
    14:24, 15:22, 16:2,
    17:2, 19:3, 21:15,
    21:22, 23:14, 23:15,
    24:18, 24:22, 25:4,
    26:7
**factors** [1] - 18:24
**facts** [3] - 11:18,
    12:23, 23:10
**factual** [2] - 13:21,
    24:1
**fail** [1] - 7:14
**fair** [1] - 23:5
**fairly** [1] - 28:17
**fallout** [1] - 8:25
**false** [1] - 11:2
**family** [2] - 3:19, 9:16
**far** [3] - 5:4, 19:18,
    26:13
**fashion** [1] - 26:11
**faulted** [1] - 16:9
**favor** [1] - 9:9
**favorably** [1] - 12:5
**FEDERAL** [1] - 30:1
**federal** [1] - 12:17
**FETTERMAN** [21] -
    1:13, 3:2, 3:15, 5:16,
    6:17, 8:2, 8:15, 8:21,
    10:2, 10:20, 11:6,
    11:13, 13:21, 14:12,
    16:20, 17:12, 18:7,
    19:12, 27:2, 29:10,
    29:13
**Fetterman** [4] - 2:11,
    3:2, 3:16, 5:17
**few** [1] - 2:23
**file** [1] - 23:9
**filed** [2] - 4:8, 9:4
**final** [2] - 5:10, 15:18
**finally** [2] - 18:22,
    28:19
**finish** [2] - 5:19, 6:23
**finishing** [2] - 7:18,
    7:19

**firing** [1] - 16:11
**first** [6] - 3:14, 3:18,
    7:1, 8:21, 12:2,
    14:13
**five** [4] - 4:23, 4:24,
    4:25, 26:15
**flag** [1] - 24:25
**Floor** [1] - 1:17
**fluent** [1] - 20:16
**footnote** [1] - 9:24
**FOR** [1] - 1:1
**foregoing** [1] - 30:4
**foreign** [1] - 20:16
**forever** [2] - 4:19, 6:6
**form** [2] - 15:11, 23:3
**formalize** [1] - 16:14
**forum** [1] - 18:2
**forward** [2] - 6:13,
    23:14
**foul** [2] - 7:24, 8:14
**frankly** [1] - 23:11
**free** [2] - 25:16, 27:20
**Friday** [1] - 4:7
**friends** [3] - 21:1,
    21:10, 21:13
**full** [2] - 24:11, 24:18
**fully** [1] - 15:11
**fundamental** [1] -
    12:22
**future** [1] - 22:22

**G**

**game** [1] - 6:22
**gap** [1] - 28:21
**gender** [10] - 3:24,
    9:11, 10:7, 10:8,
    15:6, 16:1, 17:6,
    17:22, 22:1, 23:5
**gender-biased** [5] -
    3:24, 9:11, 15:6,
    17:22, 23:5
**general** [1] - 22:2
**generally** [1] - 14:3
**generation** [1] - 3:18
**given** [1] - 19:17
**goal** [1] - 6:8
**governmental** [1] -
    2:21
**graded** [2] - 7:12, 9:14
**grades** [1] - 7:13
**graduate** [3] - 24:9,
    25:4, 25:6
**graduating** [1] - 25:11
**graduation** [1] - 9:12
**Grand** [1] - 27:25
**grant** [1] - 23:21
**granted** [2] - 24:11,
    25:5
**great** [3] - 6:17, 10:2,

14:13
**greater** [1] - 6:20
**ground** [1] - 2:23
**guess** [1] - 6:3
**guilty** [3] - 13:16,
    13:17, 28:11

**H**

**half** [1] - 19:18
**halfheartedly** [1] -
    16:22
**hand** [1] - 17:20
**handled** [1] - 15:4
**handling** [1] - 16:9
**Haney** [3] - 5:23,
    23:18, 23:21
**happy** [1] - 8:3
**harassing** [1] - 11:2
**harassment** [2] -
    14:25, 17:24
**hard** [2] - 20:6, 28:13
**harm** [26] - 3:23, 4:1,
    4:6, 5:22, 6:2, 6:5,
    7:24, 8:14, 8:22,
    9:19, 19:7, 19:22,
    19:24, 23:18, 23:22,
    24:1, 24:3, 24:5,
    24:7, 24:12, 24:14,
    24:21, 24:23, 25:9,
    25:10, 26:5, 28:19
**harms** [1] - 19:22
**harshest** [2] - 15:19,
    18:22
**head** [1] - 6:22
**hear** [3] - 3:13, 5:14,
    8:9
**heard** [4] - 3:17, 8:6,
    8:15, 23:20
**hearing** [3] - 4:4, 5:8,
    26:4
**heavily** [2] - 9:9, 27:6
**HELD** [1] - 1:8
**held** [5] - 2:1, 5:22,
    5:24, 6:4, 16:5
**help** [1] - 15:3
**hence** [1] - 25:12
**highlight** [1] - 3:12
**highly** [3] - 9:11,
    17:18, 27:7
**Hill** [1] - 1:21
**hitting** [1] - 12:15
**homes** [1] - 9:3
**Honor** [55] - 2:6, 3:2,
    3:15, 4:21, 5:5, 5:16,
    5:21, 6:17, 8:4, 8:5,
    8:19, 9:8, 10:3,
    11:13, 12:7, 12:17,
    13:23, 13:24, 14:4,
    14:12, 14:18, 15:9,

15:21, 16:16, 17:3,
    17:6, 17:8, 17:13,
    18:15, 18:25, 19:12,
    19:14, 19:20, 19:23,
    21:21, 22:14, 22:18,
    23:24, 23:25, 24:7,
    24:22, 25:8, 25:15,
    26:11, 26:12, 26:19,
    26:20, 27:3, 27:16,
    28:5, 28:13, 29:2,
    29:10, 29:13, 29:14
**Honor's** [1] - 26:23
**HONORABLE** [1] -
    1:10
**Honorable** [1] - 2:2
**hope** [2] - 8:15, 19:16
**hour** [1] - 19:18
**hours** [2] - 4:20
**hundreds** [1] - 14:19
**hurdle** [1] - 25:7

**I**

**idea** [4] - 24:22, 25:3,
    25:16, 26:5
**ignore** [1] - 11:16
**ignored** [2] - 11:14,
    11:16
**immediate** [1] - 24:25
**important** [1] - 27:21
**importantly** [1] - 9:8
**in-person** [1] - 14:13
**inadequate** [1] - 22:4
**incident** [3] - 20:8,
    22:9, 23:2
**incidentally** [1] -
    14:20
**incidents** [1] - 12:11
**includes** [2] - 25:24,
    26:1
**including** [7] - 13:3,
    16:10, 18:18, 20:4,
    20:15, 21:9, 21:13
**inconsistent** [1] -
    10:15
**incredible** [2] - 15:5,
    21:8
**indicated** [1] - 8:8
**indicted** [1] - 27:25
**indictment** [1] - 12:18
**individual** [2] - 5:2,
    25:22
**induce** [2] - 23:8
**infraction** [1] - 22:24
**injunction** [3] - 23:21,
    24:13, 25:5
**innocence** [1] - 28:1
**intense** [1] - 11:25
**intentional** [1] - 14:13
**interacting** [1] - 4:12

interruption [2] - 24:5, 24:23
interview [2] - 13:8, 20:17
interviews [1] - 20:11
investigate [1] - 14:22
investigation [5] - 17:24, 22:10, 25:13, 26:9, 27:24
investigator [1] - 10:21
investigators [1] - 13:6
investigatory [1] - 20:11
invite [1] - 29:2
involved [4] - 22:6, 24:17, 24:21, 28:22
ipse [1] - 16:2
irregularities [1] - 19:2
irreparable [20] - 3:23, 4:1, 4:6, 5:22, 6:2, 6:4, 8:22, 19:21, 19:24, 23:18, 23:22, 24:1, 24:3, 24:5, 24:7, 24:12, 24:14, 24:21, 25:9, 25:10
issue [5] - 3:11, 19:22, 22:18, 23:5, 25:8
issues [4] - 11:9, 11:11, 19:23, 27:4

### J

Jane [20] - 3:24, 10:17, 10:20, 11:24, 12:6, 12:12, 13:17, 14:2, 14:13, 14:16, 16:14, 20:10, 20:25, 21:1, 21:2, 21:12, 22:20, 23:9, 27:6, 27:11
Jane's [1] - 17:23
JERSEY [1] - 1:1
job [4] - 9:15, 9:18, 9:19, 24:15
JOHN [1] - 1:3
John [9] - 2:8, 2:17, 3:3, 3:16, 3:17, 22:20, 22:23, 23:2
judge [1] - 13:25
Judge [3] - 2:2, 8:11, 17:17
JUDGE [1] - 1:11
judicial [1] - 17:7
jump [1] - 17:6
June [1] - 11:7
Jury [1] - 27:25

### K

Kasowitz [1] - 2:7
KASOWITZ [1] - 1:13
Kastenberg [3] - 3:5, 4:21, 19:15
KASTENBERG [12] - 1:17, 3:5, 4:16, 4:21, 5:4, 5:11, 19:14, 19:20, 21:19, 23:24, 26:19, 29:14
keep [4] - 9:15, 9:18, 26:23, 28:8
KELLY [1] - 1:20
kicked [1] - 8:11
kind [1] - 13:7
kinds [3] - 16:10, 24:24, 25:3
knows [4] - 7:14, 9:3, 13:24, 18:11

### L

laid [1] - 18:16
Lake [1] - 1:20
language [1] - 20:16
last [3] - 4:4, 17:5, 20:5
lastly [1] - 19:24
laughable [1] - 18:15
law [1] - 16:23, 23:25
lawyer [4] - 18:2, 18:10, 18:11
lawyers [1] - 8:25
lead [1] - 22:22
least [1] - 21:17
leaves [1] - 7:3
left [1] - 22:2
length [1] - 18:18
lens [2] - 14:4, 14:6
lesser [1] - 6:20
letter [1] - 25:1
lie [2] - 11:19, 12:25
lied [5] - 10:20, 11:18, 12:21, 12:22, 13:4
life [3] - 3:21, 7:22, 28:10
lifetime [1] - 3:23
likelihood [10] - 4:2, 9:22, 10:5, 10:10, 10:12, 19:2, 19:5, 19:24, 29:1
likely [2] - 15:15, 16:21
limited [1] - 26:11
line [1] - 2:9
link [1] - 29:4
lip [1] - 20:13
literally [2] - 9:2, 10:16
litigation [4] - 5:10,

6:15, 9:5, 17:11
litigations [1] - 17:8
LLP [1] - 1:16, 1:19
look [12] - 13:19, 13:21, 14:4, 14:7, 18:15, 18:17, 20:22, 22:15, 27:16, 28:15, 29:3
looked [1] - 14:7
looking [2] - 15:16, 25:24
loquitur [1] - 16:2
lost [3] - 8:9, 24:16, 28:20
lucrative [1] - 9:19

### M

maintain [1] - 6:11
maintained [2] - 5:5, 5:9
male [1] - 15:19
man [1] - 3:18
manufactured [1] - 20:21
Market [1] - 1:17
Martinotti [1] - 8:11
MARTINOTTI [2] - 1:10, 2:2
material [3] - 11:18, 13:9, 28:19
materials [1] - 6:21
matter [4] - 2:18, 18:18, 26:16, 30:5
McKay [2] - 1:23, 30:11
McKay-Soule [2] - 1:23, 30:11
mean [8] - 11:20, 14:21, 16:18, 20:12, 21:23, 22:1, 22:5, 27:4
meaningful [2] - 11:20, 28:22
means [1] - 9:17
measure [1] - 24:11
mechanical [1] - 1:25
mechanism [2] - 5:6, 5:8
media [2] - 13:10, 14:17
Megan [2] - 1:23, 30:11
megansoule430@gmail.com [1] - 1:23
men [1] - 22:11
mentioned [2] - 22:6, 24:16
mentions [1] - 26:21
merit [1] - 9:7

merits [15] - 4:3, 6:15, 9:23, 10:10, 10:12, 11:10, 19:3, 19:5, 19:6, 19:21, 19:25, 21:17, 21:20, 21:23, 29:1
message [5] - 15:23, 16:3, 26:12, 27:19, 28:9
messaging [1] - 27:19
Michelle [1] - 16:13
microphones [1] - 2:24
middle [1] - 26:18
might [3] - 16:17, 17:6, 24:17
minimal [1] - 9:17
minute [1] - 2:13
minutes [3] - 3:11, 8:12, 19:16, 26:15
misapplied [1] - 27:23
misconduct [1] - 20:3
mitigate [1] - 4:6
Mitner [3] - 16:13, 16:15, 22:7
moment [1] - 25:15
Monday [1] - 4:23
monetary [1] - 24:20
months [3] - 6:24, 9:12
most [3] - 11:18, 12:22, 15:5
mother [1] - 12:8
motion [1] - 11:9
motivated [2] - 10:7, 10:8
motivation [2] - 16:5, 17:6
motive [3] - 11:19, 12:24, 22:1
move [1] - 7:15
moves [1] - 7:22
moving [1] - 6:13
MR [35] - 2:6, 2:11, 2:15, 3:2, 3:5, 3:15, 4:16, 4:21, 5:4, 5:11, 5:16, 6:17, 8:2, 8:6, 8:15, 8:21, 10:2, 10:20, 11:6, 11:13, 13:21, 14:12, 16:20, 17:12, 18:7, 19:12, 19:14, 19:20, 21:19, 23:24, 26:19, 27:2, 29:10, 29:13, 29:14
multiple [3] - 20:3, 21:13, 28:12
must [2] - 20:21, 27:18
muted [1] - 2:24

### N

name [1] - 26:21
names [1] - 28:7
national [1] - 8:23
nature [2] - 28:3, 29:7
necessarily [1] - 6:8
necessary [1] - 7:6
neck [1] - 20:14
need [5] - 3:12, 11:11, 16:8, 21:16, 28:18
needs [1] - 23:14
never [3] - 15:15, 21:2, 27:14
NEW [1] - 1:1
New [3] - 1:15, 6:3, 9:15
nine [1] - 6:24
NJ [1] - 1:21
no-contact [4] - 14:10, 14:14, 22:18, 22:24
none [1] - 12:16
nonetheless [1] - 22:23
noon [1] - 29:8
nose [4] - 20:9, 20:13, 21:3, 27:15
note [1] - 4:17
nothing [4] - 7:22, 22:17, 23:4, 27:11
notice [2] - 17:7, 17:14
NUMBER [1] - 1:3
number [2] - 17:2, 26:18
numerous [2] - 19:4, 22:2
NY [1] - 1:15

### O

objection [1] - 4:16
obligation [1] - 16:25
occasion [1] - 20:5
occasions [1] - 20:5
occur [1] - 4:13
occurred [3] - 9:25, 27:6, 27:8
OF [1] - 1:1
Officer [1] - 16:13
offices [1] - 9:3
OFFICIAL [1] - 30:1
official [1] - 17:21
Official [1] - 1:23
officials [2] - 27:10, 27:11
omitted [1] - 13:5
once [1] - 14:16
one [21] - 4:25, 5:1, 6:19, 7:2, 7:10, 9:5,

9:17, 10:5, 11:18, 12:10, 13:14, 15:5, 15:22, 17:5, 17:10, 18:16, 20:24, 24:8, 26:18, 26:19
**one-sided** [1] - 15:5
**opportunity** [2] - 3:17, 9:25
**optics** [2] - 9:20, 15:23
**ORAL** [1] - 1:5
**order** [5] - 6:10, 7:3, 7:8, 10:4, 14:14
**ordered** [1] - 27:1
**orders** [2] - 2:21, 14:10
**outcome** [3] - 10:7, 10:14, 28:3
**outcomes** [1] - 22:15
**outstanding** [1] - 3:21
**overwhelming** [4] - 4:2, 10:4, 16:8, 19:7
**overwhelmingly** [2] - 5:21, 15:7
**own** [2] - 13:12, 21:10

**P**

**p.m** [3] - 1:9, 2:3, 29:15
**PA** [1] - 1:18
**pandemic** [1] - 2:20
**panel** [2] - 20:11, 20:21
**papers** [7] - 3:10, 4:8, 4:11, 5:24, 16:7, 16:24, 17:7
**part** [2] - 17:21, 23:19
**participate** [1] - 26:10
**participated** [2] - 6:12, 6:14
**particularly** [3] - 2:20, 20:5, 25:1
**parties** [1] - 26:24
**partner** [2] - 18:16, 20:4
**pass** [2] - 7:13, 27:18
**pass/fail** [1] - 7:13
**passes** [1] - 7:23
**past** [1] - 23:19
**pattern** [1] - 17:13
**penalties** [1] - 18:23
**penalty** [1] - 22:23
**pending** [1] - 5:9
**people** [6] - 9:19, 13:13, 24:24, 25:2, 28:3
**perfect** [1] - 11:24
**perfectly** [1] - 23:13
**performed** [1] - 6:7

**perhaps** [1] - 11:9
**period** [2] - 12:9, 27:8
**permanently** [1] - 24:23
**permission** [2] - 4:3, 26:23
**person** [8] - 14:13, 17:23, 17:24, 17:25, 25:12, 25:25, 26:6, 26:9
**persons** [1] - 22:6
**phase** [1] - 25:17
**Philadelphia** [1] - 1:18
**phones** [1] - 2:23
**photo** [1] - 12:7
**photos** [1] - 13:5
**physical** [2] - 25:14, 25:15
**physically** [1] - 23:12
**pictures** [9] - 20:12, 20:13, 20:15, 20:20, 21:6, 27:12, 27:13, 28:14, 28:15
**place** [1] - 22:19
**Plaintiff** [1] - 1:15
**plaintiff** [41] - 2:5, 2:7, 2:8, 2:12, 3:24, 4:6, 4:7, 4:12, 5:18, 6:12, 6:13, 9:3, 9:9, 10:22, 11:25, 12:7, 12:12, 12:14, 13:14, 14:2, 14:14, 14:16, 15:18, 15:19, 16:15, 17:18, 17:23, 18:1, 18:8, 19:7, 22:17, 23:7, 23:8, 24:20, 26:15, 26:20, 27:22, 29:10
**plaintiff's** [9] - 3:13, 4:2, 5:14, 9:5, 15:24, 18:2, 18:5, 18:7, 26:21
**Plaintiffs** [1] - 1:4
**pleadings** [1] - 11:10
**point** [17] - 4:19, 11:24, 13:20, 15:22, 16:3, 17:5, 21:18, 24:10, 24:19, 25:25, 26:13, 26:14, 26:20, 27:5, 27:20
**policies** [2] - 12:2, 16:22
**policy** [1] - 18:20
**possibility** [2] - 20:7, 21:20
**possible** [5] - 5:13, 7:5, 12:23, 15:19, 28:8
**possibly** [1] - 3:3
**postconviction** [1] - 25:17

**posted** [1] - 13:10
**potential** [5] - 18:10, 18:12, 18:13, 22:23, 26:3
**practical** [1] - 4:5
**prejudice** [1] - 19:7
**preponderance** [8] - 11:22, 12:6, 12:19, 15:7, 17:17, 27:17, 27:23, 27:25
**present** [1] - 20:24
**presented** [1] - 23:10
**presents** [1] - 22:8
**preserve** [1] - 6:16
**pressures** [1] - 22:3
**presumption** [1] - 28:1
**prevail** [1] - 7:21
**prevails** [9] - 9:15, 24:20
**PRINCETON** [1] - 1:6
**Princeton** [26] - 3:6, 4:7, 4:8, 4:17, 4:20, 6:11, 7:8, 7:15, 8:21, 8:23, 9:3, 9:5, 9:19, 10:16, 12:4, 16:10, 17:8, 19:8, 20:21, 23:7, 24:17, 24:19, 25:12, 25:19, 25:22
**Princeton's** [2] - 3:23, 4:11
**principles** [1] - 17:1
**private** [1] - 25:20
**probability** [1] - 21:17
**probable** [1] - 12:17
**problem** [2] - 14:15, 14:25
**problems** [3] - 13:2, 13:11, 13:12
**procedural** [5] - 10:6, 11:15, 14:5, 15:25, 19:1
**proceed** [4] - 5:2, 8:5, 8:16, 8:19
**proceeding** [1] - 28:2
**Proceedings** [2] - 1:25, 29:15
**proceedings** [1] - 30:5
**PROCEEDINGS** [1] - 2:1
**process** [4] - 9:11, 16:11, 22:4, 27:22
**processes** [1] - 23:6
**produced** [1] - 1:25
**professional** [1] - 6:1
**professor** [3] - 5:2, 7:13, 7:15
**professors** [1] - 7:3
**progresses** [1] - 5:8
**propose** [1] - 26:25

**prosecutor** [2] - 12:17, 25:18
**protective** [1] - 22:12
**protest** [1] - 16:11
**protests** [1] - 22:9
**proves** [1] - 5:7
**provide** [1] - 11:19
**provided** [2] - 17:18, 18:22
**provisionally** [3] - 7:4, 7:11, 28:25
**punched** [1] - 23:13
**punches** [1] - 20:9
**punished** [1] - 22:25
**put** [9] - 7:12, 7:20, 9:13, 9:14, 13:25, 16:7, 22:19, 26:10, 28:11

**Q**

**questions** [2] - 8:4, 8:18
**quickly** [4] - 10:13, 11:22, 16:17, 27:2
**quite** [1] - 3:18
**quo** [2] - 6:16, 28:25
**quote** [2] - 11:17, 28:9
**quote-unquote** [1] - 28:9

**R**

**raise** [1] - 17:19
**raised** [1] - 13:8
**ran** [1] - 27:12
**reach** [4] - 19:23, 21:22, 21:23, 21:25
**reached** [2] - 4:7, 16:25
**read** [1] - 7:13
**readmit** [1] - 26:2
**Reagan** [1] - 16:12
**real** [4] - 9:19, 26:5, 28:19, 28:22
**realize** [1] - 27:3
**really** [9] - 12:7, 12:12, 13:12, 13:23, 13:24, 19:9, 21:22, 28:25
**reargue** [1] - 28:18
**reason** [3] - 18:21, 25:21, 26:15
**reasonable** [3] - 4:5, 21:16, 21:20
**reasons** [6] - 6:18, 19:4, 24:8, 24:24, 27:7, 28:2
**receives** [1] - 15:19
**recently** [2] - 6:3, 6:4
**receptive** [1] - 22:11

**recognized** [1] - 16:23
**record** [16] - 3:20, 3:21, 7:7, 7:8, 10:21, 10:24, 11:14, 11:16, 13:22, 13:25, 14:7, 16:2, 18:19, 21:15, 27:17, 30:5
**recorded** [1] - 1:25
**recordings** [5] - 1:25, 4:14, 4:18, 4:25, 5:1, 5:9, 6:12, 6:25, 7:5
**recordings** [1] - 5:5
**red** [1] - 24:25
**redactions** [1] - 26:25
**redo** [1] - 28:23
**reduce** [1] - 24:12
**refused** [1] - 4:8
**regarding** [1] - 14:10
**regardless** [2] - 25:5, 25:11
**reinstate** [2] - 26:2, 26:4
**reinstated** [1] - 7:4
**reinstating** [1] - 26:6
**rejected** [1] - 16:25
**relationship** [3] - 11:25, 21:11, 26:1
**relevant** [1] - 12:9
**relief** [3] - 9:6, 24:11, 24:20
**relies** [1] - 27:6
**repeat** [2] - 6:5, 9:16
**repeatedly** [1] - 20:9
**reply** [1] - 24:10
**report** [5] - 5:12, 10:15, 13:1, 17:23, 23:2
**reported** [3] - 11:3, 12:2, 20:10
**Reporter** [1] - 1:23, 30:12
**REPORTER'S** [1] - 30:1
**reports** [3] - 14:14, 14:24, 15:1
**represent** [1] - 18:12
**reputation** [1] - 6:1
**request** [4] - 8:16, 9:6, 18:14, 19:9
**required** [1] - 6:5
**requirements** [1] - 6:9
**res** [1] - 16:2
**resolution** [2] - 4:9, 5:10
**resolve** [1] - 9:4
**respect** [3] - 11:21, 14:5, 22:4
**responds** [1] - 21:3
**response** [5] - 2:19, 2:22, 17:22, 23:13, 24:9

responses [1] - 2:21
responsible [4] - 16:13, 16:15, 20:2, 25:13
rest [1] - 26:1
result [2] - 3:23, 16:1
retained [1] - 10:1
returned [1] - 12:18
revealed [1] - 23:11
revengeful [1] - 12:25
review [2] - 16:12, 26:24
reviewed [1] - 3:10
reviewing [2] - 4:13, 7:10
ride [1] - 24:18
rights [1] - 27:22
RMR [1] - 30:11
Roe [10] - 3:24, 15:20, 20:4, 20:25, 21:2, 21:12, 22:20, 23:9, 27:6, 27:11
Roe's [1] - 20:10
Rollins [1] - 10:14
room [1] - 27:6
roommate [1] - 12:14
ruined [1] - 28:10
rule [3] - 22:18, 22:19, 22:24
rules [1] - 2:23

## S

sabbatical [1] - 7:16
safe [1] - 29:12
sanction [3] - 15:10, 15:20, 23:3
sanctioned [1] - 18:3
saw [3] - 12:8, 12:10, 27:11
scarlet [1] - 25:1
school [2] - 5:25, 24:24
scratched [1] - 20:14
scratches [1] - 12:10
scratching [1] - 12:15
scrolling [1] - 14:18
scrutiny [1] - 27:18
seal [1] - 28:8
sealed [5] - 7:12, 7:20, 7:24, 8:13, 9:14
second [3] - 7:2, 7:14, 23:1
see [2] - 6:24, 28:14
seek [1] - 9:6
seeking [1] - 24:11
selective [9] - 10:8, 11:23, 14:6, 14:11, 15:18, 15:24, 15:25, 19:3, 22:16

self [1] - 23:2
self-report [1] - 23:2
semester [4] - 6:8, 9:14, 9:16, 28:23
send [1] - 26:7
sends [1] - 26:7
sent [5] - 13:13, 15:23, 16:3, 18:16
serious [2] - 20:3, 25:14
served [1] - 17:20
setting [1] - 25:21
severe [1] - 3:22
sex [2] - 13:7, 27:9
sexual [2] - 20:3, 27:9
shall [1] - 6:11
shape [1] - 15:11
shocking [1] - 8:23
show [8] - 7:6, 7:15, 10:5, 10:9, 15:24, 16:5, 20:13, 27:13
showed [1] - 27:10
showing [1] - 4:14
shows [2] - 17:13, 20:14
side [1] - 3:11
sided [1] - 15:5
sides [2] - 23:25, 27:9
signal [3] - 26:7, 26:8, 28:9
significant [2] - 13:23, 13:24, 15:5
similar [2] - 23:23, 24:1
simply [1] - 23:4
single [1] - 13:16
sit [1] - 13:25
situation [2] - 23:23, 25:2
six [2] - 6:23, 6:25
skip [1] - 25:12
slew [1] - 17:7
small [3] - 25:3, 25:9
so-called [1] - 24:14
social [2] - 13:10, 14:17
society [1] - 24:25
solicits [1] - 15:2
solution [2] - 4:5, 4:10
solved [1] - 13:11
someone [3] - 5:8, 15:16, 24:23
sometimes [1] - 4:25
soon [2] - 5:13, 25:7
sorry [1] - 5:5
sort [3] - 8:7, 14:18, 18:23
sought [2] - 23:8
Soule [2] - 1:23, 30:11

sounded [1] - 8:7
Southern [1] - 6:3
SPAHR [2] - 1:16, 1:19
Spahr [1] - 3:6
speaker [1] - 2:23
speaking [2] - 20:15
specific [1] - 22:5
specification [1] - 13:16
specious [1] - 3:25
speed [1] - 6:23
stage [3] - 11:9, 17:11, 17:12
stamped [1] - 20:20
standard [8] - 11:22, 12:6, 12:20, 15:7, 17:17, 27:17, 27:24, 27:25
standards [3] - 18:17, 21:15, 28:17
standing [1] - 2:21
start [4] - 2:14, 19:20, 20:1, 24:7
started [1] - 2:18
starting [1] - 26:16
state [1] - 2:20
statement [1] - 21:9
statements [3] - 10:16, 16:4, 21:9
States [1] - 2:2
STATES [2] - 1:1, 1:11
status [2] - 6:16, 28:25
stenography [1] - 1:25
Stephen [3] - 3:5, 4:21, 19:14
STEPHEN [1] - 1:17
still [2] - 2:13, 9:13
Street [1] - 1:17
strikingly [2] - 23:23, 24:1
strong [6] - 12:7, 16:2, 16:21, 26:7, 26:8, 29:1
stronger [1] - 16:21
student [8] - 4:15, 5:24, 6:5, 7:6, 12:10, 17:1, 17:21, 24:18
students [2] - 4:13, 16:11
subject [3] - 22:9, 25:2, 28:14
submit [2] - 14:18, 19:8
substance [1] - 19:1
success [12] - 4:3, 9:23, 10:5, 10:10, 10:12, 19:2, 19:5, 19:6, 19:25, 21:17, 21:20, 29:1

sudden [1] - 28:7
suffer [2] - 4:1, 4:7
sufficient [1] - 12:16
sufficiently [1] - 22:10
suggest [1] - 16:22
suggested [1] - 7:8
sum [1] - 18:25
suspect [1] - 27:7
suspension [1] - 6:6
sustained [2] - 17:3, 17:9

## T

talks [1] - 22:17
tapes [1] - 10:23
target [1] - 27:24
team [1] - 8:25
telephone [1] - 2:19
testified [1] - 12:8
testimony [2] - 12:9, 20:10, 21:5
text [1] - 21:1
texts [8] - 12:13, 13:1, 13:13, 20:25, 21:7, 27:14, 27:15
THE [35] - 1:1, 1:10, 2:4, 2:10, 2:13, 2:16, 2:18, 3:4, 3:8, 4:17, 5:3, 5:6, 5:14, 6:10, 8:1, 8:11, 8:20, 9:22, 10:18, 11:4, 11:8, 13:19, 14:10, 16:19, 17:11, 18:5, 19:11, 19:13, 19:19, 21:14, 23:17, 26:14, 27:1, 29:6, 29:12
thereto [1] - 2:22
thesis [4] - 5:19, 5:20, 7:19
they've [2] - 14:8, 15:9
thorough [2] - 25:13, 26:8
thousands [2] - 14:19
three [6] - 4:24, 8:12, 17:9, 20:5, 20:14, 28:6
throw [1] - 7:24
time-stamped [1] - 20:20
Title [7] - 10:9, 16:10, 16:11, 16:21, 22:4, 27:21, 29:3
today [3] - 3:17, 24:16, 28:20
tomorrow [1] - 29:8
took [1] - 27:12
Torres [1] - 2:7
TORRES [1] - 1:13
totally [1] - 9:7

trained [1] - 27:10
transcribed [1] - 10:24
transcript [3] - 1:25, 26:33, 30:4
transcription [1] - 1:25
treated [1] - 12:2, 12:4
treatment [5] - 3:24, 15:18, 15:25, 23:5, 23:6
tremendous [1] - 16:23
trip [1] - 11:4
TRO [2] - 4:5, 9:20
true [1] - 20:23
truth [1] - 10:23
try [1] - 19:16
turn [1] - 12:4
turned [1] - 3:22
turning [1] - 11:23
turns [1] - 20:18
two [6] - 6:18, 9:12, 10:5, 18:15, 22:5, 28:6
type [1] - 23:23

## U

ultimate [1] - 6:8
ultimately [3] - 17:25, 23:21, 24:20
unblemished [1] - 3:19
uncomfortable [1] - 14:15
under [4] - 10:9, 18:2, 22:2, 28:8
undermines [1] - 8:22
underscoring [1] - 20:1
underwent [1] - 25:13
unfounded [1] - 21:24
United [1] - 2:2
UNITED [2] - 1:1, 1:11
universities [1] - 10:15
University [2] - 3:6, 5:23
university [13] - 12:1, 13:2, 15:2, 16:5, 17:1, 17:22, 19:10, 22:3, 25:20, 27:10, 28:4, 28:5
UNIVERSITY [1] - 1:6
university's [1] - 26:12
unless [2] - 2:24, 8:17
unquote [1] - 28:9
unrelated [1] - 22:9
up [16] - 4:14, 5:1,

6:23, 7:6, 7:15, 7:19,
7:21, 10:22, 10:25,
11:1, 12:23, 21:3,
26:19, 27:10, 28:22
**updated** [1] - 4:22
**upset** [1] - 11:1
**upside** [1] - 3:22
**urging** [1] - 16:14

---

## V

**various** [1] - 2:21
**version** [1] - 9:6
**VIA** [1] - 1:8
**via** [1] - 2:1
**victim** [2] - 25:25, 26:7
**victims** [2] - 22:11,
22:12
**video** [2] - 2:1, 20:13
**VIDEOCONFERENC
E** [1] - 1:8
**videos** [4] - 20:15,
20:19, 20:21, 21:6
**view** [5] - 6:14, 7:9,
15:5, 17:17, 26:12
**viewed** [2] - 25:10,
25:17
**vindictive** [1] - 12:25
**violation** [1] - 14:14
**violations** [2] - 12:1,
22:22
**violence** [5] - 15:8,
20:3, 25:14, 26:1,
28:12

---

## W

**walk** [3] - 10:13,
11:20, 15:12
**warned** [1] - 22:25
**warning** [3] - 14:23,
18:1, 23:3
**watch** [1] - 7:4
**ways** [1] - 13:19
**week** [2] - 9:5, 12:19
**weekend** [1] - 4:23
**weeks** [1] - 28:6
**weighs** [1] - 9:9
**well-being** [1] - 25:24
**West** [1] - 5:23
**whole** [1] - 27:5
**witness** [15] - 12:21,
12:22, 12:24, 13:2,
13:4, 13:5, 13:10,
13:13, 13:17, 13:18,
14:3, 15:12, 15:14,
15:17, 27:7
**witnesses** [4] - 14:2,
15:9, 21:10, 21:13
**world** [1] - 9:19

---

**worried** [1] - 28:9

---

## Y

**Yale** [1] - 24:2
**yanked** [1] - 20:8
**year** [1] - 22:9
**York** [3] - 1:15, 6:3,
9:16
**young** [1] - 3:18

---

## Z

**Zoom** [1] - 4:14