

Jewel K. Tewiah
jtewiah@glennagre.com

1185 Avenue of the Americas, 22nd Floor
New York, NY 10036
212.970.1620

August 15, 2023

By Electronic Filing

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court for the District of New Jersey
402 East State Street
Court Room 7W
Trenton, NJ 08608

Re:   *John Doe v. Princeton University*, Case No. 3:20-cv-04352-MAS-RLS

Dear Judge Singh:

The undersigned, as counsel for the respective parties in this action, submit this letter setting forth the status of discovery.

As a threshold matter, the parties request an extension of the current discovery deadlines by approximately two months to start and complete fact witness depositions. The parties have been unable to commence the depositions of Princeton's witnesses because there remain document production disputes that the parties would like Your Honor to resolve.[1] This proposed extension would extend the current fact discovery from August 31 to November 3. We have attached a proposed order setting forth the proposed schedule for fact and expert discovery. The parties were unable to resolve the below issues after exchanging correspondence and engaging in a meet and confer.

### I.   Doe's Position

#### Doe's First Set of Requests for Production

- Request for Production No. 29: Documents and communications concerning the single-investigator model in the Policy, including support and opposition, and any proposed or actual amendment or other change to that aspect of the Policy.
- Request for Production No. 31: Documents and communications concerning the provision in the Policy that live cross examination is not required, including support and opposition to that provision, and any proposed or actual amendment or other change to that aspect of the Policy.

---

[1] Princeton has agreed to search for, review, and produce additional documents after the parties' August 9, 2023 conference concerning Princeton's document production. This ensuing production is another reason why the parties need additional time for discovery.

Glenn Agre Bergman & Fuentes LLP
New York
San Francisco
glennagre.com

Honorable Rukhsanah L. Singh,
U.S.M.J.
August 15, 2023
Page 2 of 7



GLENN AGRE BERGMAN & FUENTES

- Request for Production No. 32: Documents and communications concerning the provision of the Policy that proposed cross-examination questions may be submitted to a University panel adjudicating a Title IX dispute or claim, including support and opposition to that provision, and any proposed or actual amendment or other change to that aspect of the Policy.
- Request for Production No. 33: All proposed and actual amendments to Princeton's Title IX policies and procedures in the Policy, including all documents and communications concerning any such amendment to the Policy and/or the reason, impetus or justification for such amendment.

For the foregoing four requests, Princeton has only produced a subset of responsive materials. Namely, versions of the student policy that were in effect between 2011-2019. Princeton has failed to produce documents and communications related to the amendment process including, but not limited to, documents and communications concerning deliberations regarding any potential amendment. Princeton objects to producing additional material despite the fact that the outstanding documents are relevant to Doe's Title IX Erroneous Outcome claim as they illuminate, among other things, whether Princeton formulated a Title IX adjudication process that deprived parties of due process safeguards needed to prevent wrong and inequitable decisions.

- Request for Production No. 51: All documents and communications referenced or relied upon in Your response to Doe's Interrogatories.

On July 20, 2023, Princeton amended its response to Doe's Interrogatories, including a chart that detailed Title IX adjudications between fall 2016 through spring 2020. Princeton, however, refuses to produce all documents and communications relied upon in creating its Title IX chart. Doe disagrees with Princeton's position. The Federal Rules of Civil Procedure allow for litigants to verify, and fact-check information received in discovery, especially when a summary document created in connection with litigation is at issue. Discovery does not allow a litigant to handicap its adversary by picking and choosing what material the adversary is entitled to.

## Doe's Request for a Protective Order

Doe seeks a protective order prohibiting Princeton from reviewing his Princeton University Health Services records because it is an infringement of his privacy interests and a violation of protections afforded to him under HIIPA. During a meet and confer between the parties on August 9, 2023, Princeton requested Doe's consent to the disclosure of his records with Princeton University Health Services employee David Campell to Princeton's attorneys. Doe informed Princeton that he would consider its request. The next day, Princeton transmitted a HIPAA consent form that sought the disclosure of all of Doe's Princeton University Health

**Glenn Agre Bergman & Fuentes LLP**
New York
San Francisco
glennagre.com


**GLENN AGRE BERGMAN & FUENTES**

Services records, a disclosure broader than what was originally represented. Doe does not consent to Princeton's attorneys reviewing his entire Health Service file as the file contains, among other things, information not relevant for the claims and defense at issue in this action. Furthermore, Doe objects to third parties needlessly reviewing his private and sensitive health information. Accordingly, Doe seeks relief from the Court preventing this unwarranted intrusion into his privacy. Doe believes that the best way to protect his privacy and other interests with respect to his Health Services file is for him to request the file himself, review it, and produce any relevant materials contained therein.

### Princeton's Second Set of Interrogatories and Requests for Production

Princeton has improperly raised a "dispute" concerning Doe's response to Princeton's Interrogatory No. 18 and Request for Production Nos. 26 and 27. Before the drafting of this letter, Doe was unaware that a dispute existed. During the August 9, 2023 meet and confer, the parties discussed Princeton's discovery requests related to Doe's medical history, and Princeton represented that it would seek Doe's records from Princeton employee Dr. David Campbell, instead of seeking to force Doe to revise his responses to the requests.

In any event, the requests were improperly served on June 30. That date was a part of a discovery extension period granted solely to provide additional time to complete document disclosure and fact witness depositions. The parties' agreement did not contemplate further written discovery. Indeed, in the June 20 request to the Court for an extension, the parties represented that ""[a] sixty-five day extension is needed to enable the parties to complete document disclosure and fact witness depositions." Dkt. No. 118.

Moreover, Doe has already produced all relevant responsive materials in his possession for the Second Set of Requests. Doe has explained several times in response to Princeton's inquiries that Dr. Campbell is the only relevant practitioner that Doe has seen. Beyond Dr. Campbell, Doe has not seen any other practitioner for mental health issues. Since 2016, Doe has visited general practitioners for his annual physical, and such visits have no bearing on the claims and defenses in this lawsuit. Princeton is aware of this. Doe is not trying to withhold any responsive relevant information from Princeton, and other than to harass Doe and infringe on his privacy rights, Princeton has no good reason to seek discovery related to his annual physicals. Doe requests that the Court deny Princeton's request for an order compelling Doe to revise his responses to Princeton's Interrogatory No. 18 and Request for Production Nos. 26 and 27.

II.     **Princeton's Positions**

### Doe's First Set of Requests for Production

**Glenn Agre Bergman & Fuentes LLP**
New York
San Francisco
glennagre.com

Honorable Rukhsanah L. Singh,
U.S.M.J.
August 15, 2023
Page 4 of 7



**RFPs Nos. 29, 31, 32, and 33**: The only objection Princeton has raised to conducting a reasonable search and producing documents responsive to these requests is the attorney-client privilege.  In response to Doe's RFPs Nos. 29, 31, 32, and 33, Princeton produced all versions of the Title IX Policies in place from 2011-2020.  Such documents necessarily show any amendments or other changes to those policies.  Princeton also agreed to search for non-privileged communications regarding changes to the Title IX Policy dated between September 29, 2014 and April 15, 2020.  Accordingly, Princeton searched its custodians' files for non-privileged communications regarding changes to the policy and, to the extent they were found, produced them.  Not surprisingly, a number of responsive documents that were found were subject to the attorney-client privilege.  In accordance with the Federal Rules, Princeton also provided Doe with a privilege log listing all documents Princeton is withholding on the basis of privilege together with information sufficient to assess the basis of the claimed privilege.

**RFP No. 51**: Princeton initially objected to Doe's Interrogatories Nos. 3 and 18 seeking information about unrelated Title IX investigations by Princeton.  As part of the parties' meet and confer process, Princeton offered to produce a chart setting forth the information requested regarding other student-student Title IX investigations dated from Fall 2016 to Spring 2020 in summary form, but not provide further detail or documents relating to such investigations.  Doe committed to reviewing such a chart and assessing whether to pursue its requests any further, and Princeton produced the chart as part of its interrogatory responses.  The Chart identifies each claim and counterclaim, the gender of the claimant(s) and counterclaimant(s), the outcome of the investigation, the discipline imposed, if any, and the details of any appeals.  Having received the summary chart, Doe now seeks to use RFP No. 51 as a backdoor to require Princeton to produce documents relating to dozens of other Title IX investigations, based solely on the bald assertion above that plaintiff is entitled to "verify, and fact-check information received in discovery."

Princeton's production of the Chart more than amply provides plaintiff with any information to which he should be due.  These requests not only seeks irrelevant documents but are also disproportionate and unduly burdensome.  Doe seeks production of the disciplinary records of dozens of other former Princeton students who have nothing whatsoever to do with the allegations in this case.  The records of other Title IX investigations are thus irrelevant to Doe's claims about his proceeding.  Doe has not even identified any allegedly relevant information about these other proceedings that is not included in the summary chart.[2]

---

[2] In addition, these materials are extremely sensitive, FERPA-protected disciplinary records of unrelated students.  If Princeton were to produce these documents despite Doe's lack of justification, Princeton would have to redact from the documents all identifiable student information protected by FERPA.  To date, Princeton has redacted FERPA-protected information from more than 2,200 documents produced to Doe, at substantial expense.  Based on its past experience in this case, redacting the additional 140 documents now sought by plaintiff,



### Princeton's Second Set of Interrogatories and Requests for Production

Princeton's Second Sets of Interrogatories and RFPs consist of a singular interrogatory and two RFPs, which seek the following:

- **Interrogatory No. 18**: "For all medical or mental health care, services, or treatment received by You from September 1, 2016, Identify the physician, therapist, nurse, or other practitioner(s) who provided that medical or mental health care, services or treatment, including any company, firm, or practice that employs or contracts with said provider in connection with the provision of said care, services, or treatment."

- **RFP No. 26**: "All medical records for any medical or mental health care, services, or treatment received by You from September 1, 2016 to present."

- **RFP No. 27**: "Any Document cited in, reviewed in connection with responding to, or relied upon in responding to Defendant's second set of interrogatories."

Doe has refused to produce responsive documents and information, despite email exchanges and a meet and confer call prior to exchanging drafts of this letter. Doe interposed several objections to these requests and refused to produce any responsive documents or information. In a subsequent August 4 letter, Doe re-asserted some of his objections and then wrote "[i]n any event, Doe has produced all materials in his custody, control, or possession that are responsive to Princeton's belated served requests." Doe went on: "Dr. David Campbell was the only _relevant_ practitioner that he has received treatment from and he produced all responsive materials in his possession, custody, or control related to the treatment that he received from Dr. Campbell." (Emphasis added). When Princeton inquired whether there other health care practitioners from whom Doe sought treatment since September 1, 2016 that Doe has not disclosed in response to Interrogatory No. 18, Doe refused to clarify, instead responding "you know our position already." Only upon seeing Princeton's draft insert for this letter, did Doe finally disclose that he had seen other (unidentified) healthcare providers besides Dr. Campbell. Princeton requests that Doe be compelled to respond as all of his medical records from his matriculation at Princeton onward are relevant to his claims in this case. Doe argues that the requested documents and information are irrelevant to this action. But the requested medical records are probative of Doe's damages claims. In his Complaint, Doe avers that Princeton's conduct "already has damaged Plaintiff and his psychological well-being[.]" Compl. ¶ 151. Per his Initial Disclosures, Doe is claiming $1 million in damages for "impairment of quality of life, humiliation, disappointment, frustration, fear, anxiety, depression, psychological, and other injuries." Doe has additionally advised that he intends to put forward expert testimony in

---

consisting of 1350 pages, would cost over $25,000. Princeton therefore requests that, if the Court orders production of these student disciplinary materials, the Court require Doe to bear the cost of performing these additional redactions.

**Glenn Agre Bergman & Fuentes LLP**
New York
San Francisco
glennagre.com



support of his emotional distress damages claims.  Princeton is entitled to discovery of Doe's medical records to determine Doe's mental state both before and after the Title IX investigation and his expulsion from Princeton, including any symptoms of anxiety, depression, psychological, and other injuries he has displayed.  *See e.g., Frazier v. Shinseki*, No. 2:12-cv-1035, 2014 U.S. Dist. LEXIS 55254, at *6 (W.D. Pa. Apr. 22, 2014) ("Defendant is entitled to discovery of information that could reasonably bear on [plaintiff's] claim for emotional distress damages, including any medical and psychotherapeutic treatment records.")  While Doe seems to consider only a mental health practitioner as relevant, that is false.  Any healthcare treatment records may reflect the presence or— explicitly or implicitly—the absence of mental health concerns aired by Doe or noted by the healthcare provider (even unbeknownst to Doe) before or after the Title IX investigation.  For example, it is common practice for any healthcare provider in a routine checkup to ask questions directed to assessing whether a teen or young adult patient is depressed.  Princeton therefore requests that Doe be compelled to respond to these requests.

### Doe's Medical Records

After Doe confirmed in his August 4 letter that he had "produced all materials in his custody, control, or possession that are responsive to Princeton's" Second Set of RFPs and Interrogatories, Princeton requested that Doe consent to disclosure of his medical records by Princeton University Health Services under HIPAA.  In a meet and confer, Princeton specifically referred to Doe's treatment by Dr. Campbell, given that he is the only treating healthcare practitioner Doe disclosed, however, Princeton has sought discovery of all of Doe's medical records dating from September 1, 2016.  If in response to Interrogatory No. 18 Doe discloses additional healthcare practitioners, not associated with Princeton, from whom he received treatment, Princeton may need to seek Doe's medical records from those practitioners as well.  Princeton therefore requests that the Court compel Doe to sign HIPAA consent forms allowing for disclosure of his medical records by any healthcare practitioner or practice he has visited since his matriculation at Princeton, including Princeton University Health Services.  As described above, all of these records are probative of Doe's damages claims.  Indeed, Doe is the one who put his mental and physical state in controversy and claims large damages based on it.  Princeton is entitled to discovery of all of Doe's medical records from Princeton University Health Services to determine Doe's mental state.  Doe now proposes that he request his file from Princeton University Health Services himself, review it, and produce any relevant materials contained therein.  This is not how civil discovery works under the Federal Rules.  Princeton is entitled to review the documents in its possession.  And, in any event, all of Doe's healthcare records while at Princeton are relevant to his claims.  Moreover, Doe has not explained which records he would deem "relevant materials."  Princeton is entitled to production of all of Doe's medical records, not just those Doe determines to be relevant.  Therefore, Princeton requests that the Court compel Doe to sign the HIPAA consent form allowing for disclosure of his medical records from University Health Services, and to sign other consent forms allowing for the disclosure of records for any other health practitioners Doe visited since Fall 2016.

**Glenn Agre Bergman & Fuentes LLP**
New York
San Francisco
glennagre.com



Dated:   August 15, 2023

**GLENN AGRE BERGMAN & FUENTES LLP**

By:  <u>s/  *Jewel K. Tewiah*</u>
      Jewel K. Tewiah
      Michael Paul Bowen (admitted *pro hac vice*)
      Edward E. Shapiro (admitted *pro hac vice*)
      1185 Avenue of the Americas, 22nd Fl
      New York, New York 10036
      mbowen@glennagre.com
      eshapiro@glennagre.com
      jtewiah@glennagre.com
      212 970-1620

*Attorneys for Plaintiff John Doe*

<u>s/  *Stephen J Katsenberg*</u>
Stephen J. Kastenberg (026001993)
Elizabeth V. Wingfield (admitted pro hac vice)
Elizabeth P. Weissert (admitted pro hac vice)
BALLARD SPAHR LLP
1735 Market Street
Philadelphia, PA 19103
Telephone: 215.665.8500
Facsimile: 215.864.8999

Monica T. Nugent (238252017)
BALLARD SPAHR LLP
700 East Gate Drive, Suite 300
Mount Laurel, New Jersey 08054
Telephone:  856.761.3400
Facsimile: 856.761.1020

*Attorneys for Princeton University*